LAW OFFICES OF DALE K. GALIPO
Dale K. Galipo (Bar No. 144074)
dalekgalipo@yahoo.com
Eric Valenzuela (Bar No. 284500)
evalenzuela@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, California  91367
Telephone:   (818) 347-3333
Facsimile:    (818) 347-4118

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAOLA FRENCH; and RUSSELL FRENCH,<br><br>    Plaintiffs,<br><br>    vs.<br><br>CITY OF LOS ANGELES; SALVADOR SANCHEZ ; and DOES 1-10, inclusive,<br><br>    Defendants. | Case No. 2:20-cv-1996<br><br>**COMPLAINT FOR DAMAGES**<br><br>1. Unreasonable Search and Seizure—Excessive Force (42 U.S.C. § 1983)<br>2. Unreasonable Search and Seizure—Denial of Medical Care (42 U.S.C. § 1983)<br>3. Battery (Including Wrongful Death)<br>4. Negligence (Including Wrongful Death)<br>5. Negligent Infliction of Emotional Distress<br>6. Intentional Infliction of Emotional Distress<br>7. Violation of Bane Act (Cal. Civil Code § 52.1)<br><br>**DEMAND FOR JURY TRIAL** |

## COMPLAINT FOR DAMAGES

  Plaintiffs Paola French and Russell French, for their Complaint against Defendants City of Los Angeles, Salvador Sanchez and Does 1-10, inclusive, allege as follows:

**INTRODUCTION**

1.     This civil action seeks compensatory damages and punitive damages for violating various rights under federal and state law in connection with the fatal police shooting of the decedent, Kenneth French and the officer involved shooting of Paola French and Russell French.

**PARTIES**

2.     At all relevant times, decedent Kenneth French ("DECEDENT") was the biological son of PAOLA FRENCH and RUSSELL FRENCH.

3.     Plaintiff PAOLA FRENCH is the natural mother of  DECEDENT. PAOLA FRENCH sues both in her individual capacity as the mother of DECEDENT and in a representative capacity as a successor-in-interest to DECEDENT.  PAOLA FRENCH also sues in her individual capacity as an injured party, who suffered both severe physical and emotional injuries as a result of this incident.  PAOLA FRENCH seeks compensatory, survival and wrongful death damageS.

4.     Plaintiff RUSSELL FRENCH is an individual residing in County of Riverside, California, and is the natural father of DECEDENT.  RUSSELL FRENCH sues both in his individual capacity as the father of DECEDENT and in a representative capacity as a successor-in-interest to DECEDENT.  RUSSELL FRENCH also sues in his individual capacity as an injured party, who suffered both severe physical and emotional injuries as a result of this incident.  RUSSELL FRENCH seeks compensatory, survival and wrongful death damages.

5.     At all relevant times, Defendant CITY OF LOS ANGELES ("CITY") is and was a duly organized public entity, form unknown, existing under the laws of the State of California.  At all relevant times, CITY was the employer of Defendants SALVADOR SANCHEZ, DOES 1-10, who were CITY's Police Department's supervisorial officers, and DOES 11-10, who were managerial, supervisorial, and

COMPLAINT FOR DAMAGES

policymaking employees of the CITY Police Department.  SALVADOR SANCHEZ and DOES 1-10 are sued in their individual capacity for damages only.

6.     At all relevant times, Defendants SALVADOR SANCHEZ and DOES 1-10 were duly authorized employees and agents of CITY, who were acting under color of law and within the course and scope of their respective duties as police officers and with the complete authority and ratification of their principal, Defendant CITY.

7.     At all relevant times, Defendants SALVADOR SANCHEZ and DOES 1-10 were duly appointed officers and/or employees or agents of CITY, subject to oversight and supervision by CITY's elected and non-elected officials.

8.     In doing the acts and failing and omitting to act as hereinafter described, Defendants SALVADOR SANCHEZ and DOES 1-10 were acting on the implied and actual permission and consent of CITY.

9.     At all times mentioned herein, each and every CITY defendant was the agent of each and every other CITY defendant and had the legal duty to oversee and supervise the hiring, conduct and employment of each and every CITY defendant.

10.    The true names of defendants DOES 1 through 10, inclusive, are unknown to Plaintiffs, who therefore sue these defendants by such fictitious names. Plaintiffs will seek leave to amend this complaint to show the true names and capacities of these defendants when they have been ascertained.  Each of the fictitious named defendants is responsible in some manner for the conduct and liabilities alleged herein.

11.    On August 23, 2019, Plaintiffs served their claims for damages with CITY pursuant to applicable sections of the California Government Code.

12.    On August 30, 2019, CITY rejected Plaintiffs' claims for damages.

**JURISDICTION AND VENUE**

13.    This civil action is brought for compensatory, wrongful death and survival damages suffered by Plaintiffs and DECENENT due to the unlawful killing of DECEDENT and the unlawful shooting of Plaintiffs by Defendants.

14.    Venue is proper in this Court because this incident occurred in Riverside County and the Plaintiffs both reside in Riverside County.

15.    This civil action is brought for the redress of alleged deprivations of constitutional rights as protected by 42 U.S.C. §§ 1983, 1985, 1986, 1988, and the Fourth Amendment of the United States Constitution.  Jurisdiction is founded on 28 U.S.C. §§ 1331, 1343, and 1367.

**FACTS COMMON TO ALL CLAIMS FOR RELIEF**

16.    Plaintiffs repeat and reallege each and every allegation in paragraphs 1 through 15 of this Complaint with the same force and effect as if fully set forth herein.

17.    On or about June 14, 2019, DECEDENT and his parents PAOLA FRENCH and RUSSELL FRENCH went to the local Costco Wholesale to do some shopping.

18.    While inside the Costco SALVADOR SANCHEZ, a police officer for the Los Angeles Police Department ("LAPD"), opened fire and discharged approximately ten (10) rounds at PAOLA FRENCH, RUSSELL FRENCH and DECEDENT, striking all three of them, including shots to the back.  As a result of the gunshot wounds sustained by PAOLA FRENCH and RUSSELL FRENCH, they both suffered serious physical injuries that will require medical attention and care for the remainder of their lives.  PAOLA FRENCH and RUSSELL FRENCH also suffered severe emotional injuries and distress as a result of being shot, witnessing each other get shot, and witnessing their son, DECEDENT, being shot and killed. Further, DECEDENT suffered serious physical injury, pre-death pain and suffering, and death as a result of the gunshot wounds he sustained.  DECEDENT was only 32

years old at the time of his death.  Moreover, DECEDENT was PAOLA FRENCH and RUSSELL FRENCH's first born child and their only surviving child is Kevin French, DECEDENT's brother.

19.    PAOLA FRENCH, RUSSELL FRENCH and DECEDENT were all moving away from SALVADOR SANCHEZ at the time of the shooting, which is consistent with the multiple gunshot wounds to the back and were not an immediate threat of death or serious bodily injury to Officer Sanchez or to anyone else. Further, both PAOLA FRENCH and RUSSELL FRENCH were in between SALVADOR SANCHEZ and DECEDENT at the time of the shooting, pleading with SALVADOR SANCHEZ not to shoot their son.  Moreover, SALVADOR SANCHEZ was put on notice that DECEDENT suffered from mental illness, prior to the gunshots.

20.    SALVADOR SANCHEZ announced and identified himself as being a police officer prior to the shooting and continued to identify himself as being a member of law enforcement after the shooting, including to Costco shoppers, employees, vendors and the responding police officers, from the Corona Police Department.  SALVADOR SANCHEZ was acting in his capacity as a police officer at the time of the incident.

21.    On information and belief, the weapon used by SALVADOR SANCHEZ to shoot DECEDENT and Plaintiffs was provided by his employer, the City of Los Angeles.   Further, on information and belief, the service weapon that SALVADOR SANCHEZ used to shoot DECEDENT and Plaintiffs, is the same gun that he uses during his employment as a LAPD officer.

22.    SALVADOR SANCHEZ' employer, LAPD, authorized him to carry a concealed weapon, including while off-duty.  If SALVADOR SANCHEZ was not a police officer, he would not have been authorized to carry a concealed weapon in his waistband inside of the Costco.  Further, SALVADOR SANCHEZ fired based on his training as a LAPD officer with the City of Los Angeles with respect to the use

of deadly force, which the Plaintiffs claim was totally inadequate.  SALVADOR SANCHEZ was also attempting to detain and arrest the DECEDENT and the Plaintiffs based on his training as an LAPD officer.

23.     On information and belief, SALVADOR SANCHEZ intentionally shot PAOLA FRENCH, RUSSELL FRENCH and DECEDENT.  Further, SALVADOR SANCHEZ disregarded the high probability of death or serious bodily injury that would occur if he discharged his firearm at DECEDENT, while his parents were standing nearby DECEDENT and while they were standing in between DECEDENT and SALVADOR SANCHEZ.  Moreover, on information and belief, PAOLA FRENCH and RUSSELL FRENCH were both shot before DECEDENT was struck by the gunfire.

24.     Before, during and after the shooting, PAOLA FRENCH, RUSSELL FRENCH and DECEDENT were all visibly unarmed.

25.     At the time of the shooting PAOLA FRENCH, RUSSELL FRENCH DECEDENT posed no immediate threat of death or serious physical injury to SALVADOR SANCHEZ or any other person, especially since they were visibly unarmed and moving away from SALVADOR SANCHEZ when the shooting began, including multiple shots to the back.

26.     DECEDENT was not in physical contact with SALVADOR SANCHEZ at time of the shooting and there was substantial distance between SALVADOR SANCHEZ and DECEDENT at the time of the shooting.  In other words, DECEDENT was not punching or pushing SALVADOR SANCHEZ at the time of the shooting, and DECEDENT was not trying to assault or attack the officer during the shooting or immediately before the shooting.

27.     DECEDENT did not cause serious physical injury to anyone, including to SALVADOR SANCHEZ, prior to the shooting or at any point.  Officer Sanchez removed a concealed weapon from his waistband, identified himself as a police officer, then aimed at and successfully shot three (3) different people who were

1  moving away from him and visibly unarmed.  Out of the ten shots fired, it is

2  believed that six shots total struck the Plaintiffs and DECEDENT.

3       28.    In addition to the use of excessive force, when Defendant announced

4  himself as a police officer and pointed his gun at the Plaintiffs and DECEDENT, the

5  Defendant was using his authority as a police officer to detain them without

6  reasonable suspicion and was trying to arrest them without probable cause.

7       29.    Plaintiffs and DECEDENT never verbally threatened anyone prior to

8  being fatally shot by SALVADOR SANCHEZ.

9       30.     SALVADOR SANCHEZ did not show a reverence for human life.

10  Further, this was not an immediate defense of life situation and he is responsible for

11  every single shot he fired.

12       31.    After shooting PAOLA FRENCH, RUSSELL FRENCH and

13  DECEDENT, SALVADOR SANCHEZ did not provide or summons timely medical

14  attention for them, despite them bleeding profusely and having obvious serious

15  injuries.

16       32.    After the shooting SALVADOR SANCHEZ continued to identify

17  himself as being a police officer, which is why those individuals inside of the

18  Costco never attempted to disarm, apprehend, or to physically detain or remove him

19  from the premises.  Instead, because SALVADOR SANCHEZ continued to identify

20  himself as being a police officer, those inside of the Costco never attempted to

21  interfere or intervene before or after the incident, he was allowed to remained armed

22  with his police-issued concealed weapon on the premises, and was allowed to make

23  phone calls, including to his employer LAPD (City of Los Angeles), after the

24  shooting.  In other words, SALVADOR SANCHEZ identified himself as being a

25  member of law enforcement to alter and/or influence the behavior of the bystanders,

26  including so that they did not come to the aid of PAOLA FRENCH, RUSSELL

27  FRENCH and DECEDENT and so that the bystanders did not interfere

28  SALVADOR SANCHEZ' use of force, both before and after the shooting.  The

1  bystanders were deterred by SALVADOR SANCHEZ after he identified himself as

2  being law enforcement and the crowd refrained from attempting to aid DECEDENT

3  and Plaintiffs and they refrained from attempting to detain, arrest—including a

4  citizen's arrest—apprehend, disarm or physically remove SALVADOR SANCHEZ

5  from the premises because he identified himself as being a police officer.  Clearly,

6  anyone who did not identify themselves as being a police officer would have been

7  treated in a dramatically different fashion, especially immediately following the

8  shooting.

9         33.    After SALVADOR SANCHEZ identified himself as being law

10  enforcement, the bystanders perceived him as being law enforcement thereby

11  influencing and controlling their behavior.  The bystanders' and the Plaintiffs'

12  behavior was impacted by SALVADOR SANCHEZ' assertions that he was law

13  enforcement.  SALVADOR SANCHEZ invoked his governmental status to

14  influence the behavior of those around him and thereby used the badge of his

15  authority to deprive DECEDENT and Plaintiffs of their individual rights.

16  SALVADOR SANCHEZ' actions of identifying himself as being a police officer

17  throughout the incident, including both before and after the shooting, was done with

18  the purpose and effect of influencing the behavior of bystanders, the Plaintiffs and

19  eyewitnesses.

20         34.    After the shooting inside of the Costco, the local law enforcement

21  agencies, including Corona PD, responded to the scene to investigate the shooting.

22  SALVADOR SANCHEZ identified himself as being a police officer to the

23  responding law enforcement agencies.  As a result of identifying himself as being a

24  police officer, the responding law enforcement officers did not detain and/or arrest

25  SALVADOR SANCHEZ nor did they take him to jail.  Instead he was freely

26  released without even being ticketed or cited for any crime.  Undoubtedly, if

27  SALVADOR SANCHEZ did not identify himself as being a police officer, the

28  responding law enforcement officers would have immediately arrested him and

transported him to jail.  In other words, if any other person, who was not a member of law enforcement, had shot three (3) people inside of a crowded Costco with a concealed weapon they were carrying, there is no doubt that they would  have been immediately arrested and taken to jail and criminally charged.

35.     On information and belief, after the shooting, LAPD/CITY provided SALVADOR SANCHEZ with an attorney which they paid for.

36.     On information and belief, after the shooting, SALVADOR SANCHEZ was allowed to review any surveillance footage from inside of the Costco, prior to being interviewed by any local law enforcement agency, including by Corona PD. If SALVADOR SANCHEZA was not a member of law enforcement, he would never have been allowed to review any surveillance footage prior to being interviewed.  In other words, if any other person, who was not a member of law enforcement, had shot three (3) people (including one fatally), they would not have been afforded the opportunity to review any surveillance footage prior to being interviewed.  Further, on information and belief, shortly after the shooting SALVADOR SANCHEZ and his attorney were provided with surveillance footage from inside the Costco which captured the incident.  If SALVADOR SANCHEZ was not a member of law enforcement, he would not have been provided with a copy of the surveillance footage shortly after the incident, especially since he had not been charged with any crime and there had been no subpoena or warrant issued to provide SALVADOR SANCHEZ and/or his attorney with a copy of the surveillance footage.

37.     After the shooting SALVADOR SANCHEZ was also interviewed by investigators from LAPD/CITY.  LAPD treated this incident as if it were an officer involved shooting which occurred during the course and scope of his employment as an LAPD officer.  For example, on information and belief, LAPD investigators allowed SALVADOR SANCHEZ to review the surveillance footage prior to interviewing him, which is standard LAPD protocol for officer involved shootings.

1    If this was a shooting which occurred outside the course and scope of his

2    employment as an LAPD officer, then LAPD would not have allowed him to review

3    the surveillance footage prior to interviewing him.  In fact, LAPD itself would not

4    even be in possession of the surveillance footage so shortly after the shooting if the

5    incident did not involve an officer involved shooting.  Further, on information and

6    belief, SALVADOR SANCHEZ was considered "on-duty" and/or "on-the-clock"

7    for LAPD during the time he spent being interviewed by LAPD investigators, which

8    is also standard protocol for officer involved shootings which occur during the

9    course and scope of their employment as members of LAPD.

10          38.    On information and belief, a few days after the shooting, SALVADOR

11   SANCHEZ and investigators from LAPD, went to the Costco and did a walk-

12   through so SALAVADOR SANCHEZ could explain to investigators how the

13   shooting occurred.  This is also standard protocol for officer involved shootings

14   which occur during the course and scope of their employment as LAPD members.

15   On information and belief, SALVADOR SANCHEZ was ordered on-duty by his

16   LAPD supervisors to conduct walk through and to be interviewed about incident and

17   was in fact paid by LAPD for that time, including travel.  This is standard protocol

18   for LAPD officer involved shooting which occur during the course and scope of

19   their employment.  LAPD does not conduct walk-throughs with shooting suspects

20   who are not members of LAPD and LAPD does not normally conduct walk-

21   throughs regarding the actions of their employees which occurred outside the course

22   and scope of their employment.  On information and belief, Costco closed parts and

23   sections of their store so that SALVADOR SANCHEZ and LAPD investigators

24   could conduct there walk-through.  Costco would not have closed parts/sections of

25   the store and allowed SALVADOR SANCHEZ and investigators from LAPD to

26   conduct a walk-through as part of their investigation if they were not a member of

27   law enforcement.

28

COMPLAINT FOR DAMAGES

39.     LAPD/CITY also interviewed and/or participated in the interviews of witnesses to the shooting, including Costco customers, employees and vendors. This is standard LAPD/CITY protocol for officer involved shootings which occurred during the course and scope of their employment.  LAPD would not have been able to participate in the interview of the witnesses to the shooting if SALVADOR SANCHEZ was not a member of law enforcement.

40.     Pursuant to LAPD's Personal Conduct Policy, section 230.10, Responsibility of Off-Duty Officers, under California law, both on-and off-duty officers have peace officer authority as to any public offense committed or which there is probable cause to believe has been committed in his presence and with respect to which there is immediate danger to person or property, or the escape of the perpetrator of such offense.  Accordingly, pursuant to LAPD's own personal conduct policy regarding off-duty officers, SALVADOR SANCHEZ was acting was with peace officer authority as a City of Los Angeles police officer when he shot PAOLA FRENCH, RUSSELL FRENCH and DECEDENT, after he was *allegedly* struck/pushed by DECEDENT.

41.     Under California law, including, but not limited to, California Penal Code ("PC") section 830.1, the authority of police officers extends to any place in the state as to any public offense committed in the police officers presence.  The California legislature has clearly empowered police officers to make arrests while off duty.  Accordingly, under state law, SALVADOR SANCHEZ was acting pursuant his authority as a police officer for LAPD/CITY and under the course and scope of his employment with the City of Los Angeles, at the time he shot, seized, and prevented the escape of PAOLA FRENCH, RUSSELL FRENCH and DECEDENT, after he was *allegedly* struck/pushed by DECEDENT.

42.     SALVADOR SANCHEZ was only authorized to be in possession of his concealed handgun, which was issued from his employer LAPD, because of his status as a law enforcement official, including, but not limited to, pursuant to PC

COMPLAINT FOR DAMAGES

1  section 25450.  If Salvador Sanchez was not a police officer, he would not have

2  been authorized go inside the Costco with a concealed handgun in his waistband.

3      43.    When SALVADOR SANCHEZ shot PAOLA FRENCH, RUSSELL

4  FRENCH and DECEDENT, including but not limited to, for the purposes of seizing

5  them, preventing their escape and in claimed self-defense or in response to allegedly

6  being assaulted by DECEDENT, he was acting, in the performance of his official

7  duties as a LAPD police officer.  In the alternative, when SALVADOR SANCHEZ

8  shot  PAOLA FRENCH, RUSSELL FRENCH and DECEDENT, he was purporting

9  or pretending to act in the performance of his official duties as a LAPD police

10 officer with the City of Los Angeles.

11     44.    In pulling out his police issued handgun, taking aim and then

12 deliberately firing rounds in the direction of PAOLA FRENCH, RUSSELL

13 FRENCH and DECEDENT, and successfully striking all three of his moving

14 targets, SALVADOR SANCHEZ acted as an officer is trained to act whether he is

15 on duty or off duty.  In other words, SALVADOR SANCHEZ used LAPD police

16 tactics and training when he used deadly force against PAOLA FRENCH,

17 RUSSELL FRENCH and DECEDENT.  Private citizens certainly would not have

18 accomplished the seizure/shooting in the same way SALVADOR SANCHEZ did,

19 including using police issued gear and tactics to accomplish his goals.

20     45.    SALVADOR SANCHEZ used deadly force, in part, in response to

21 allegedly being attacked by DECEDENT and to prevent the escape of DECEDENT,

22 who was moving away from him during the shooting, including when the shooting

23 began.  Using deadly force to prevent an escape or in claimed self-defense is within

24 the official duties of a police officer, even an off duty one.  By shooting

25 DECEDENT and his parents, PAOLA FRENCH and RUSSELL FRENCH,

26 SALVADOR SANCHEZ unquestionably seized them and prevented them from

27 moving away and getting away from him, which is consistent with having acted

28 under color of law.  SALVADOR SANCHEZ' actions were related in some

COMPLAINT FOR DAMAGES

meaningful way to the performance of his duties as an LAPD police officer and/or his police officer status.  For example, SALVADOR SANCHEZ engaged in the type of behavior that police officers are generally known for, such using force to protect one's self and using force to prevent the escape of suspects, including alleged assault suspects.

46.   SALVADOR SANCHEZ announced and identified himself as a police officer, both before and after the shooting, PAOLA FRENCH and RUSSELL FRENCH knew he was police officer, and on information and belief, DECEDENT knew he was a police officer before being fatally shot, and the bystanders believed he was a police officer.  Further, SALVADOR SANCHEZ identified himself as being a police officer throughout the encounter.  These identifications helped SALVADOR SANCHEZ accomplish his seizure of PLAINTIFFS and DECEDENT and his use of deadly force, including, but not limited to, by preventing others from interfering/intervening in the altercation both before and after the shooting.

47.   Even if SALVADOR SANCEZ was acting in a personal capacity, he purported or pretended to act as a police officer in order to accomplish his objectives of shooting PAOLA FRENCH, RUSSELL FRENCH and DECEDENT without immediate serious /consequences/ramifications, including physical harm, detainment/arrest, physical removal and imprisonment.  It is not difficult to imagine someone who opens fire inside of a crowded Costco, striking three (3) people, being seriously injured in retaliation by one or more of the many people inside or nearby of the store, including numerous security guards and employees.  Especially in today's age of mass shooting which frequently occur in crowded places.  In other words, SALVADOR SANCHEZ invoked his law enforcement status to influence the behavior of those around him and to discourage anyone from intervening.

48.   SALVADOR SANCHEZ used his training and experience as a police officer to seize Plaintiffs and DECEDENT whom he allegedly suspected of assaulting him and utilized his police handgun to accomplish his seizure.

-13-

1  Accordingly, SALVADOR SANCHEZ acted under color of law and within the

2  scope of his employment with the City of Los Angeles in seizing DECEDENT and

3  PLAINTIFFS as suspects just as he would seize any suspect he encountered while

4  off-duty.

5          49.    As a LAPD officer, SALVADOR SANCHEZ had the authority to

6  make a valid seizure on the Plaintiffs and DECEDENT if he believed what occurred

7  between them constituted an assault on a police officer.  It is in Officer's employer's

8  (LAPD) interest to arrest a person who has assaulted a police officer or anyone else.

9          50.    On information and belief, SALVADOR SANCHEZ believed

10  DECEDENT, and to some extent Plaintiffs, committed a crime in front of him and

11  allegedly followed his training as a LAPD officer in response.  Police officers are

12  considered on duty 24 hours a day precisely because they might have to perform an

13  official duty including executing a seizure even when they are not officially on the

14  clock.

15          51.    SALVADOR SANCHEZ asserted authority over the area preventing

16  witnesses from providing care to Plaintiffs and DECEDENT and he did not attempt

17  to render aid himself.  SALVADOR SANCHEZ then worked in concert with local

18  law enforcement investigators, including Corona PD, to distort the facts and come

19  up with a false narrative to facilitate the cover-up of events that culminated with the

20  unlawful killing of DECEDENT and seriously injuring Plaintiffs, including

21  falsification of the account of the incident, witness tampering, and evidence

22  tampering.  Further, from the time officer invoked his law enforcement status going

23  forward, he was purporting or pretending to act in the performance of his official

24  duties and within the course and scope of his employment, including the false

25  narrative that he went unconscious and was being shot at.

26          52.    On information and belief, Corona PD personnel responding to the

27  scene coordinated with SALVADOR SANCHEZ and his employer, City of Los

28

COMPLAINT FOR DAMAGES

1   Angeles, in the aftermath of the incident, further showing that his conduct was

2   within the scope of his employment.

3       53.     SALVADOR SANCHEZ' conduct was related to his status and

4   performance of duties as law enforcement officer.  On information and belief,

5   SALVADOR SANCHEZ claims he was the victim of an assault before he shot and

6   killed DECEDENT and wounded Plaintiffs.  Invoking law enforcement status,

7   drawing firearm, directing others to get down, indicates he conveyed the impression

8   he sought to detain or arrest someone as permitted by the California penal code,

9   including PC 830.1.

10                      **FIRST CLAIM FOR RELIEF**

11   **Unreasonable Search and Seizure—Excessive Force (42 U.S.C. § 1983)**

12              (By all Plaintiffs against Defendant SALVADOR SANCHEZ)

13       54.     Plaintiffs repeat and reallege each and every allegation in paragraphs 1

14   through 53 of this Complaint with the same force and effect as if fully set forth

15   herein.

16       55.     SALVADOR SANCHEZ, a police officer for the CITY Police

17   Department, was acting under color of law when he used unreasonable force and

18   intentionally shot DECEDENT, including multiple shots to DECEDENT's back and

19   a shot to his buttocks.  SALVADOR SANCHEZ opened fire inside of the crowded

20   Costco and shot approximately ten (10) rounds.  DECEDENT was not in physical

21   contact with SALVADOR SANCHEZ at any point during the shooting.  Further,

22   DECEDENT was not assaulting or attacking SALVADOR SANCHEZ at the time

23   of the shooting and he was not attempting to assault or attack SALVADOR

24   SANCHEZ during the shooting.  Instead, DECEDENT was several feet away from

25   SALVADOR SANCHEZ and was moving away from SALVADOR SANCHEZ,

26   when the shooting began.  SALVADOR SANCHEZ also shot PAOLA FRENCH

27   and RUSSELL FRENCH, including a shot to PAOLA FRENCH's back.  PAOLA

28   FRENCH and RUSSELL FRENCH were also several feet away from SALVADOR

1  SANCHEZ and were moving away from SALVADOR SANCHEZ when the

2  shooting began.

3       56.    SALVADOR SANCHEZ was on notice that DECEDENT suffered

4  from a mental illness, prior to the shooting and Plaintiffs pleaded with SALVADOR

5  SANCHEZ to not shoot their son, before the shooting.

6       57.    PAOLA FRENCH and RUSSELL FRENCH were standing in between

7  SALVADOR SANCHEZ and DECEDENT when the shooting began.  On

8  information and belief, PAOLA FRENCH and RUSSELL FRENCH were both

9  struck by the gunfire prior to DECEDENT being fatally shot.

10       58.    SALVADOR SANCHEZ's unjustified shooting deprived DECEDENT,

11  PAOLA FRENCH and RUSSELL FRENCH of their right to be secure in their

12  persons against unreasonable searches and seizures as guaranteed to DECEDENT,

13  PAOLA FRENCH and RUSSELL FRENCH under the Fourth Amendment to the

14  United States Constitution and applied to state actors by the Fourteenth Amendment.

15       59.    The unreasonable use of force by Defendant SALVADOR SANCHEZ

16  deprived the DECEDENT, PAOLA FRENCH and RUSSELL FRENCH of their

17  right to be secure in their person against unreasonable searches and seizures as

18  guaranteed to DECEDENT, PAOLA FRENCH and RUSSELL FRENCH under the

19  Fourth Amendment to the United States Constitution and applied to state actors by

20  the Fourteenth Amendment.

21       60.    As a result, DECEDENT suffered extreme mental and physical pain

22  and suffering, loss of enjoyment of life and eventually suffered a loss of life and of

23  earning capacity.  Further, as a result of the actions of SALVADOR SANCHEZ,

24  PAOLA FRENCH and RUSSELL FRENCH suffered past and future pain and

25  suffering, mental anguish, emotional distress, medical expenses, loss of earnings

26  capacity and loss of income.

27       61.    PAOLA FRENCH and RUSSELL FRENCH suffered severe pain and

28  suffering, including physical injuries that will require medical attention and care for

COMPLAINT FOR DAMAGES

the rest of their natural lives and a loss of earnings capacity.   PAOLA FRENCH
and RUSSELL FRENCH have also been deprived of the life-long love,
companionship, comfort, support, society, care, and sustenance of DECEDENT, and
will continue to be so deprived for the remainder of their natural lives.  Plaintiffs are
also claiming funeral and burial expenses and a loss of financial support.

62.     This use of deadly force was excessive and unreasonable under the
circumstances, especially since DECEDENT was unarmed, DECEDENT was not in
physical contact and was not physically assaulting SALVADOR SANCHEZ at the
time of the shooting, DECEDENT, PAOLA FRENCH and RUSSELL FRENCH
were all moving away from SALVADOR SANCHEZ when the shooting began and
they were several feet away from SALVADOR SANCHEZ at the time of the
shooting.  Defendant SALVADOR SANCHEZ's actions thus deprived
DECEDENT, PAOLA FRENCH and RUSSELL FRENCH of their right to be free
from unreasonable searches and seizures under the Fourth Amendment and applied
to state actors by the Fourteenth Amendment.

63.     The conduct of SALVADOR SANCHEZ was willful, wanton,
malicious, and done with reckless disregard for the rights and safety of
DECEDENT, PAOLA FRENCH and RUSSELL FRENCH and therefore warrants
the imposition of exemplary and punitive damages as to Defendant SALVADOR
SANCHEZ.

64.     Plaintiffs bring this claim individually, and as successors-in-interest to
the DECEDENT, and seek both survival and wrongful death damages for the
violation of DECEDENT's rights, as well as damages for the violation of PAOLA
FRENCH and RUSSELL FRENCH's rights.  Plaintiffs also seek past and future
pain, suffering, emotional distress, loss of earnings and medical expenses.

65.     Plaintiffs also seek attorney fees under this claim.

## SECOND CLAIM FOR DAMAGES

### Unreasonable Search and Seizure—Denial of Medical Care (42 U.S.C. § 1983)

(By All Plaintiffs against Defendant SALVADOR SANCHEZ)

66.     Plaintiffs repeat and reallege each and every allegation in paragraphs 1 through 65 of this Complaint with the same force and effect as if fully set forth herein.

67.     The denial of medical care by Defendant SALVADOR SANCHEZ deprived DECEDENT, PAOLA FRENCH and RUSSELL FRENCH of thier rights to be secure in their person against unreasonable searches and seizures as guaranteed to them under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

68.     As a result, DECEDENT suffered extreme mental and physical pain and suffering and eventually suffered a loss of life.  Further, as PAOLA FRENCH and RUSSELL FRENCH suffered extreme mental and physical pain and suffering. PAOLA FRENCH and RUSSELL FRENCH have also been deprived of the life-long love, companionship, comfort, support, society, care, and sustenance of DECEDENT, and will continue to be so deprived for the remainder of their natural lives.  Plaintiffs are also claiming funeral and burial expenses and a loss of financial support.

69.     SALVADOR SANCHEZ knew that failure to provide timely medical treatment to DECEDENT, PAOLA FRENCH and RUSSELL FRENCH could result in further significant injury or the unnecessary and wanton infliction of pain, but disregarded that serious medical need, causing DECEDENT, PAOLA FRENCH and RUSSELL FRENCH great bodily harm and causing DECEDENT death.

70.     After shooting DECEDENT, PAOLA FRENCH and RUSSELL FRENCH multiple times, SALAVADOR SANCHEZ did not timely summons medical attention for DECEDENT, PAOLA FRENCH and RUSSELL FRENCH

-18-

1  who were all on the floor bleeding profusely and had obvious serious injuries, and

2  SALVADOR SANCHEZ also did not allow and prevented responding medical

3  personnel on-scene to timely render medical aid/assistance to DECEDENT, PAOLA

4  FRENCH and RUSSELL FRENCH.

5      71.   The conduct of SALVADOR SANCHEZ was willful, wanton,

6  malicious, and done with reckless disregard for the rights and safety of

7  DECEDENT, PAOLA FRENCH and RUSSELL FRENCH and therefore warrants

8  the imposition of exemplary and punitive damages as to Defendant SALVADOR

9  SANCHEZ.

10     72.   Plaintiffs bring this claim individually and as a successors-in-interest to

11  DECEDENT, and seek both survival and wrongful death damages for the violation

12  of DECEDENT's rights, and damages for the violation of PAOLA FRENCH and

13  RUSSELL FRENCH rights.

14     73.   Plaintiffs also seek attorney's fees under this claim.

16              **THIRD CLAIM FOR RELIEF**

17            **Battery (Cal. Govt. Code § 820)**

18                (Including Wrongful Death)

19   (By all Plaintiffs against Defendants Officer SALVADOR SANCHEZ and CITY of

20                    LOS ANGELES)

21     74.   Plaintiffs repeat and reallege each and every allegation in paragraphs 1

22  through 73 of this Complaint with the same force and effect as if fully set forth

23  herein.

24     75.   SALVADOR SANCHEZ, a police officer for the CITY Police

25  Department, was acting within the course and scope of his duties as an LAPD police

26  officer with the City of Los Angeles, when he used unreasonable force and

27  intentionally shot DECEDENT, including multiple shots to DECEDENT's back and

28  a shot to his buttocks.  SALVADOR SANCHEZ opened fire inside of the crowded

Costco and shot approximately ten (10) rounds.  DECEDENT was not in physical contact with SALVADOR SANCHEZ at any point during the shooting.  Further, DECEDENT was not assaulting or attacking SALVADOR SANCHEZ at the time of the shooting and he was not attempting to assault or attack SALVADOR SANCHEZ during the shooting.  Instead, DECEDENT was several feet away from SALVADOR SANCHEZ and was moving away from SALVADOR SANCHEZ, when the shooting began.  SALVADOR SANCHEZ also shot PAOLA FRENCH and RUSSELL FRENCH, including a shot to PAOLA FRENCH's back.  PAOLA FRENCH and RUSSELL FRENCH were also several feet away from SALVADOR SANCHEZ and were moving away from SALVADOR SANCHEZ when the shooting began.

76.    Neither Plaintiffs nor DECEDENT consented to the use of force by SALVADOR SANCHEZ.

77.    SALVADOR SANCHEZ was on notice that DECEDENT suffered from a mental illness, prior to the shooting and Plaintiffs pleaded with SALVADOR SANCHEZ to not shoot their son, before the shooting.

78.    PAOLA FRENCH and RUSSELL FRENCH were standing in between SALVADOR SANCHEZ and DECEDENT when the shooting began.  On information and belief, PAOLA FRENCH and RUSSELL FRENCH were both struck by the gunfire prior to DECEDENT being fatally shot.

79.    As a result of the actions of SALVADOR SANCHEZ, DECEDENT suffered severe pain and suffering and ultimately died from his injuries.  Further, as a result of the actions of SALVADOR SANCHEZ, PAOLA FRENCH and RUSSELL FRENCH suffered past and future pain and suffering, mental anguish, emotional distress, medical expenses, loss of earnings capacity and loss of income. Further, Plaintiffs suffered severe pain and suffering, including physical injuries that will require medical attention and care for the rest of their natural lives and a loss of earnings capacity.  SALVADOR SANCHEZ had no legal justification for using

COMPLAINT FOR DAMAGES

1   lethal force against DECEDENT, PAOLA FRENCH and RUSSELL FRENCH and

2   said Defendant's use of force, while carrying out his police duties, was an

3   unreasonable use of force.

4        80.   As a direct and proximate result of Defendant's conduct as alleged

5   above, Plaintiffs PAOLA FRENCH and RUISSELL FRENCH suffered extreme and

6   severe mental anguish and pain and have been injured in mind and body.  Plaintiffs

7   PAOLA FRENCH and RUISSELL FRENCH have also been deprived of the life-

8   long love, companionship, comfort, support, society, care and sustenance of

9   DECEDENT, and will continue to be so deprived for the remainder of their natural

10  lives.  Plaintiffs PAOLA FRENCH and RUISSELL FRENCH are also claiming

11  funeral and burial expenses and a loss of earnings capacity.

12       81.   CITY is vicariously liable for the wrongful acts of SALVADOR

13  SANCHEZ pursuant to section 815.2 of the California Government Code, which

14  provides that a public entity is liable for the injuries caused by its employees within

15  the scope of the employment if the employee's act would subject him or her to

16  liability.

17       82.   The conduct of  SALVADOR SANCHEZ was malicious, wanton,

18  oppressive, and accomplished with a conscious disregard for the rights of Plaintiffs

19  and DECEDENT, entitling Plaintiffs individually and as successors in interest to

20  DECEDENT, to an award of exemplary and punitive damages.

21       83.   Plaintiffs are seeking wrongful death damages and survival damages

22  under this claim.  Further, Plaintiffs are claiming damages for injuries and damages

23  they sustained when they were shot by the involved Defendant officer.

24

25

26

27

28

1

**FOURTH CLAIM FOR RELIEF**

2

**Negligence (Cal. Govt. Code § 820)**

3

(Including Wrongful Death)

4

(Against All Defendants)

5

84.    Plaintiffs repeat and reallege each and every allegation in paragraphs 1

6

through 83 of this Complaint with the same force and effect as if fully set forth

7

herein.

8

85.    The actions and inactions of the Defendants were negligent and

9

reckless, including but not limited to:

10

        (a)    the failure to properly and adequately train employees,

11

              including SALVADOR SANCHEZ, with regards to the use

12

              of force, including deadly force;

13

        (b)    the failure to properly and adequately assess the need to

14

              detain, arrest, and use force, including deadly force against

15

              DECEDENT and Plaintiffs;

16

        (c)    the negligent tactics and handling of the situation with

17

              DECEDENT and Plaintiffs, including pre-shooting

18

              negligence;

19

        (d)    the negligent detention, arrest, and use of force, including

20

              deadly force, against DECEDENT and Plaintiffs;

21

        (e)    the negligent discharge of a firearm in a crowded and public

22

              place;

23

        (f)    the failure to properly and adequately train employees,

24

              including SALVADOR SANCHEZ, with regards to self-

25

              defense;

26

        (g)    Failure to properly train officers how to act, including while

27

              off-duty;

28

-22-

(h)    the failure to properly and adequately train employees, including SALVADOR SANCHEZ, with regards to dealing with individuals suffering from mental illness;

(i)    the failure to properly and adequately interact with individuals suffering from mental illness, including DECEDENT;

(j)    the failure to provide prompt medical care to DECEDENT and to Plaintiffs;

(k)    the failure to properly train and supervise employees, both professional and non-professional, including SALVADOR SANCHEZ;

(l)    the failure to ensure that adequate numbers of employees with appropriate education and training were available to meet the needs of and protect the rights of DECEDENT and Plaintiffs; and

(m)    the negligent handling of evidence and witnesses.

86.    As a direct and proximate result of Defendants' conduct as alleged above, and other undiscovered negligent conduct, DECEDENT was caused to suffer severe pain and suffering and ultimately died.  Further, as a direct and proximate result of Defendants' conduct, PAOLA FRENCH and RUSSELL FRENCH were seriously injured.

87.    Also as a direct and proximate result of Defendants' conduct as alleged above causing DECEDENT's death, Plaintiffs PAOLA FRENCH and RUSSELL FRENCH have also been deprived of the life-long love, companionship, comfort, society, and care of DECEDENT, and will continue to be so deprived for the remainder of their natural lives.

88.    CITY is vicariously liable for the wrongful acts of SALVADOR SANCHEZ pursuant to section 815.2 (a) of the California Government Code, which

1   provides that a public entity is liable for the injuries caused by its employees within

2   the scope of the employment if the employee's act would subject him or her to

3   liability.

4        89.     PLAINTIFFS are seeking wrongful death damages and survival

5   damages under this claim.  Further, PAOLA FRENCH and RUSSELL FRENCH are

6   also claiming damages for the injuries they sustained during this incident.

7   ## **FIFTH CLAIM FOR RELIEF**

8   ### **Negligent Infliction of Emotional Distress**

9   ### **(Cal. Govt. Code § 829 and California Common Law)**

10   (By Plaintiffs against all Defendants)

11        90.     Plaintiffs repeat and re-allege each and every allegation in paragraphs

12   1-89 of this Complaint with the same force and effect as if fully set forth herein.

13        91.     SALVADOR SANCHEZ negligently caused physical injury and death

14   to DECEDENT when he discharged his firearm at DECEDENT, striking him

15   multiple times and eventually killing him.  The use of deadly force by SALVADOR

16   SANCHEZ was excessive, unreasonable and he was negligent in discharging his

17   firearm at DECEDENT, including pre-shooting negligent conduct, actions, inactions

18   and tactics.

19        92.     PAOLA FRENCH and RUSSELL FRENCH suffered serious

20   emotional distress as a result of perceiving their son, DECEDENT, being shot

21   multiple times, which caused serious physical injury and eventually death of

22   DECEDENT.

23        93.     PAOLA FRENCH was present at the scene, which was inside of the

24   Costco, when SALVADOR SANCHEZ fatally discharged his firearm at

25   DECEDENT and PAOLA FRENCH was aware that DECEDENT was being injured

26   by SALVADOR SANCHEZ' gunfire.

27        94.     RUSSELL FRENCH was present at the scene, which was inside of the

28   Costco, when SALVADOR SANCHEZ fatally discharged his firearm at

1  DECEDENT and RUSSELL FRENCH was aware that DECEDENT was being

2  injured by SALVADOR SANCHEZ' gunfire.

3       95.    As a result of being present at the scene and perceiving her eldest son,

4  DECEDENT, being fatally shot by SALVADOR SANCHEZ, PAOLA FRENCH

5  suffered serious emotional distress, including but not limited to, suffering mental

6  anguish, fright, horror, nervousness, grief, anxiety, worry, shock and humiliation.

7  Further, an ordinary reasonable person would be unable to cope with the emotional

8  distress of seeing their son being fatally shot multiple times.  Especially since she

9  pleaded with SALVADOR SANCHEZ not to shoot her son.

10       96.    As a result of being present at the scene and perceiving his eldest son,

11  DECEDENT, being fatally shot by SALVADOR SANCHEZ, RUSSELL FRENCH

12  suffered serious emotional distress, including but not limited to, suffering mental

13  anguish, fright, horror, nervousness, grief, anxiety, worry, shock, and humiliation.

14  Further, an ordinary reasonable person would be unable to cope with the emotional

15  distress of seeing their son being fatally shot multiple times.  Especially since he

16  pleaded with SALVADOR SANCHEZ not to shoot his son.

17       97.    CITY is vicariously liable for the wrongful acts of Defendant

18  SALVADOR SANCHEZ pursuant to section 815.2(a) of the California Government

19  Code, which provides that a public entity is liable for the injuries caused by its

20  employees within the scope of the employment if the employee's act would subject

21  him or her to liability.

22       98.    PAOLA FRENCH and RUSSELL FRENCH bring this claim

23  individually and seek damages under this claim as individuals.

24

25

26

27

28

1

**SIXTH CLAIM FOR RELIEF**

2

**Intentional Infliction of Emotional Distress**

3

**(Cal. Govt. Code § 829 and California Common Law)**

4

(By Plaintiffs PAOLA FRENCH and RUSSELL FRENCH against Defendants

5

SALVADOR SANCHEZ and CITY OF LOS ANGELES)

6

    99.    Plaintiffs repeat and reallege each and every allegation in paragraphs 1

7

through 98 of this Complaint with the same force and effect as if fully set forth

8

herein.

9

    100.   During this incident, SALVADOR SANCHEZ' conduct was

10

outrageous, including, but not limited to, taking a loaded concealed weapon inside

11

of Costco go shopping, opening fire and shooting approximately ten (10) rounds in a

12

crowded marked, and intentionally shooting different three (3) people, including one

13

(1) fatally.  Clearly, SALVADOR SANCHEZ' conduct was outrageous.  Especially

14

since DECEDENT and Plaintiffs were not in physical contact with SALVADOR

15

SANCHEZ at any point during the shooting, DECEDENT and Plaintiffs were

16

moving away from SALVADOR SANCHEZ when the shooting began and were

17

visibly unarmed and begging him not to shoot their son, including multiple gunshots

18

wounds to DECEDENT's back, a gunshot to DECEDENT's buttocks and a gunshot

19

to PAOLA FRENCH's back.

20

    101.   On information and belief, SALVADOR SANCHEZ intentionally shot

21

PAOLA FRENCH and RUSSELL FRENCH and he intended to cause PAOLA

22

FRENCH and RUSSELL FRENCH emotional distress.  In the alternative,

23

SALVADOR SANCHEZ acted with reckless disregard of the probability that

24

PAOLA FRENCH and RUSSELL FRENCH would suffer emotional distress,

25

knowing that they were present and standing nearby DECEDENT and in between

26

DECEDENT and SALVADOR SANCHEZ, when the shooting occurred.

27

    102.   PAOLA FRENCH and RUSSELL FRENCH both suffered severe

28

emotional distress as a result of being shot by SALVADOR SANCHEZ.  Further,

1 | SALVADOR SANCHEZ' conduct was a substantial factor in causing PAOLA
2 | FRENCH and RUSSELL FRENCH's severe emotional distress.

3 | 103.   SALVADOR SANCHEZ' outrageous conduct, including, but not
4 | limited to, opening fire and shooting approximately ten (10) rounds in a crowded
5 | public super market and shooting three (3) people, including one fatally, was so so
6 | extreme that it goes beyond all possible bounds of decency.  Further, any reasonable
7 | person would regard SALVADOR SANCHEZ' conduct as intolerable in a civilized
8 | community.  SALVADOR SANCHEZ' outrageous conduct does not include
9 | trivialities such as indignities, annoyances, hurt feelings, or bad manners which a
10 | reasonable person would be expected to endure.

11 | 104.   In shooting DECEDENT and Plaintiffs, SALVADOR SANCHEZ
12 | abused his position of authority as a police officer for LAPD.  SALVADOR
13 | SANCHEZ knew that PAOLA FRENCH and RUSSELL FRENCH were
14 | particularly vulnerable to emotional distress because they pleaded with
15 | SALVADOR SANCHEZ not to shoot their son prior to the shooting.  Further, in
16 | shooting DECEDENT, PAOLA FRENCH and RUSSEL FRENCH, SALVADOR
17 | SANCHEZ knew that his conduct would likely result in harm due to mental distress.

18 | 105.   SALVADOR SANCHEZ acted with reckless disregard in causing
19 | PAOLA FRENCH and RUSSELL FRENCH emotional distress because he knew
20 | that emotional distress would probably result from his conduct and/or SALVADOR
21 | SANCHEZ gave little or no thought to the probable effects of his conduct.

22 | 106.   CITY is vicariously liable for the wrongful acts of Defendant
23 | SALVADOR SANCHEZ, pursuant to section 815.2(a) of the California
24 | Government Code, which provides that a public entity is liable for the injuries
25 | caused by its employees within the scope of the employment if the employee's act
26 | would subject him or her to liability.

27 | 107.   PAOLA FRENCH and RUSSELL FRENCH bring this claim
28 | individually and seek damages under this claim as individuals.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## SEVENTH CLAIM FOR DAMAGES

### Violation of Bane Act (Cal. Civil Code § 52.1)

(Against All Defendants)

108.   Plaintiffs repeat and reallege each and every allegation in paragraphs 1 through 107 of this Complaint with the same force and effect as if fully set forth herein.

109.   California Civil Code, Section 52.1 (the Bane Act), prohibits any person from interfering with another person's exercise or enjoyment of his constitutional rights by threats, intimidation, or coercion (or by the use of unconstitutionally excessive force).

110.   Conduct that violates the Fourth Amendment violates the California Bane Act when there is an intent to violate the civil rights of others.

111.   Defendant SALVADOR SANCHEZ use of deadly force against DECEDENT and Plaintiffs was excessive and unreasonable under the circumstances, especially since DECEDENT and Plaintiffs were unarmed while inside of a crowded public super market, DECEDENT and Plaintiffs were not in physical contact with SALVADOR SANCHEZ at any point during the shooting, DECEDENT and Plaintiffs were moving away from SALVADOR SANCHEZ when the shooting began, PAOLA FRENCH and RUSSELL FRENCH were standing in between DECEDENT and SALVADOR SANCHEZ when the shooting began, including multiple gunshots to the back of DECEDENT, a shot to DECEDENT's buttocks and a shot to PAOLA FRENCH's back.  Further, SALVADOR SANCHEZ did not give a verbal warning or any commands prior to fatally shooting DECEDENT and shooting Plaintiffs, despite being feasible to do so.  Defendant's actions thus deprived DECEDENT and Plaintiffs of their right to be free from unreasonable searches and seizures under the Fourth Amendment and applied to state actors by the Fourteenth Amendment.

112.   The DECEDENT and Plaintiffs were attempted to be detained without reasonable suspicion and SALVADOR SANCHEZ attempted to arrest DECEDENT and Plaintiffs without probable cause.  Defendant's actions thus deprived DECEDENT and Plaintiffs of their right to be free from unreasonable searches and seizures under the Fourth Amendment and applied to state actors by the Fourteenth Amendment.

113.   SALVADOR SANCHEZ intentionally violated  DECEDENT's and Plaintiffs' rights under § 1983 by detaining DECEDENT and Plaintiffs without reasonable suspicion, by attempting to arrest DECEDENT and Plaintiffs without probable cause, and by using excessive deadly force against DECEDENT and Plaintiffs, including but not limited to, shooting the unarmed DECEDENT and Plaintiffs without warning, including shots to the back and shots from behind. Further, these acts by SALVADOR SANCHEZ demonstrate that he had a reckless disregard for DECEDENT's and Plaintiffs' constitutional rights, thereby intentionally violating the constitutional rights of the Plaintiffs and DECEDENT.

114.   At the time of the shooting DECEDENT and/or Plaintiffs did not pose an immediate threat of death or serious bodily injury to anyone, including SALVADOR SANCHEZ.  Further, DECEDENT and Plaintiffs never verbally threatened anyone prior to the shooting.  There is direct and circumstantial evidence that SALVADOR SANCHEZ intentionally violated DECEDENT's and Plaintiffs' rights under § 1983 by unlawfully detaining them, by attempting to unlawfully arrest them and by fatally shooting DECEDENT multiple times and by shooting each of the Plaintiffs, including shots to the back, to the buttocks, shots from behind, and shots while they were moving away from SALVADOR SANCHEZ.

115.   SALVADOR SANCHEZ, a police officers for the CITY Police Department, was acting within the course and scope of his duties, interfered with or attempted to interfere with the rights of DECEDENT and Plaintiffs to be free from unreasonable searches and seizures, to equal protection of the laws, to access to the

courts, and to be free from state actions that shock the conscience, by threatening or committing acts involving violence, threats, coercion, or intimidation.

116. DECEDENT was caused to suffer extreme mental and physical pain and suffering and eventually suffered a loss of life. Plaintiffs PAOLA FRENCH and RUSSELL FRENCH have also been deprived of the life-long love, companionship, comfort, support, society, care, and sustenance of DECEDENT, and will continue to be so deprived for the remainder of their natural lives. Plaintiffs are also claiming funeral and burial expenses.

117. PAOLA FRENCH and RUSSELL FRENCH were also caused to suffer extreme mental and physical pain and suffering as a result of SALVADOR SANCHEZ' actions and inactions.

118. The conduct of SALVADOR SANCHEZ was a substantial factor in causing the harms, losses, injuries, and damages of DECEDENT and Plaintiffs.

119. CITY is vicariously liable for the wrongful acts of SALVADOR SANCHEZ TERRENCE pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

120. The conduct of SALVADOR SANCHEZ was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of DECEDENT and Plaintiffs, entitling Plaintiffs to an award of exemplary and punitive damages.

121. Plaintiffs bring this claim as successors-in-interest to the DECEDENT, and seek both survival and wrongful death damages for the violation of DECEDENT's rights.

122. Plaintiffs PAOLA FRENCH and RUSSELL FRENCH bring this claim individually for violations of their rights and seek compensatory damages as permitted by law.

COMPLAINT FOR DAMAGES

123.   The Plaintiffs also seek statutory attorney fees, a multiplier and treble damages under this claim.

COMPLAINT FOR DAMAGES

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request entry of judgment in their favor and against Defendants Salvador Sanchez, the City of Los Angeles, and Does 1-10, inclusive, as follows:

          A.    For compensatory damages, including both survival damages and wrongful death damages under federal and state law, in the amount to be proven at trial, including pre-death pain and suffering, loss of life and loss of enjoyment of life;

          B.    For pain and suffering, both past and future;

          C.    Severe emotional distress, both past and future;

          D.    For medical care and expenses, both past and future;

          E.    For loss of income and earnings capacity, both past and future;

          F.    For funeral and burial expenses;

          G.    For punitive damages against the individual defendant in an amount to be proven at trial;

          H.    For interest;

          I.    For reasonable costs of this suit and attorneys' fees;

          J.    For treble damages; and

          J.    For such further other relief as the Court may deem just, proper, and appropriate.

DATED:  February 28, 2020       LAW OFFICES OF DALE K. GALIPO


By_____
    Dale K. Galipo
    Eric Valenzuela
    Attorneys for Plaintiffs

COMPLAINT FOR DAMAGES

1

## <u>DEMAND FOR JURY TRIAL</u>

2

Plaintiffs hereby demand a trial by jury.

3

4    DATED:  February 28, 2020          LAW OFFICES OF DALE K. GALIPO

5

6                                        By_____
7                                            Dale K. Galipo
                                             Eric Valenzuela
8                                            Attorneys for Plaintiffs

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DAMAGES