1  LAW OFFICES OF DALE K. GALIPO
   Dale K. Galipo (Bar No. 144074)
2  dalekgalipo@yahoo.com
   Eric Valenzuela (Bar No. 284500)
3  evalenzuela@galipolaw.com
   Renee V. Masongsong (Bar No. 281819)
4  rvalentine@galipolaw.com
   21800 Burbank Boulevard, Suite 310
5  Woodland Hills, California 91367
   Telephone:   (818) 347-3333
6  Facsimile:   (818) 347-4118

7  *Attorneys for Plaintiffs*

8              **UNITED STATES DISTRICT COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10

11 | PAOLA FRENCH and RUSSELL       | Case No. 5:20-cv-00416-JGB-SP
12 | FRENCH, in each case individually and |
   | as a successor-in-interest to Kenneth | *Hon. Jesus G. Bernal*
13 | French, deceased,              |
   |              Plaintiffs,       | **THIRD AMENDED COMPLAINT**
14 |                                | **FOR DAMAGES**
15 |           vs.                  |
   |                                | 1. Unreasonable Search and Seizure—
16 | CITY OF LOS ANGELES;           |    Unlawful Detention and Arrest (42
17 | SALVADOR SANCHEZ, in his official |    U.S.C. § 1983)
   | capacity and in his individual capacity; | 2. Unreasonable Search and Seizure—
18 | and DOES 1-10, inclusive,      |    Excessive Force (42 U.S.C. § 1983)
   |              Defendants.       | 3. Unreasonable Search and Seizure—
19 |                                |    Denial of Medical Care (42 U.S.C.
20 |                                |    § 1983)
21 |                                | 4. Substantive Due Process,
   |                                |    Interference with Familial
22 |                                |    Relationship (Fourteenth
23 |                                |    Amendment) (42 U.S.C. § 1983)
24 |                                | 5. Municipal Liability—
   |                                |    Unconstitutional Policy (42 U.S.C.
25 |                                |    § 1983)
26 |                                | 6. False Arrest/False Imprisonment
   |                                | 7. Battery (Including Wrongful
27 |                                |    Death)
28 |                                | 8. Negligence (Including Wrongful

|  |  |
|---|---|
| 1 | Death) |
| 2 | 9.  Negligent Infliction of Emotional Distress |
| 3 | 10. Violation of Bane Act (Cal. Civil Code § 52.1) |
| 4 | 11. Negligent Hiring, Training and Retention |
| 5 | 12. Loss of Consortium |
| 6 | |
| 7 | **DEMAND FOR JURY TRIAL** |

### **THIRD AMENDED COMPLAINT FOR DAMAGES**

Come now Plaintiffs Paola French and Russell French, in each case individually and as a successor-in-interest to Kenneth French, deceased, for their Third Amended Complaint against Defendants City of Los Angeles, Salvador Sanchez (in his official capacity and in his individual capacity) and Does 1-10, inclusive, and hereby allege as follows:

### **INTRODUCTION**

1.     This civil rights action seeks compensatory damages for violating various rights under federal and state law in connection with the fatal police shooting of the decedent, Kenneth French, and the officer-involved shooting of Paola French and Russell French.

### **PARTIES**

2.     Kenneth French ("DECEDENT") was the biological son of PAOLA FRENCH and RUSSELL FRENCH.

3.     Plaintiff PAOLA FRENCH is an individual residing in the County of Riverside, California, and is the natural mother of DECEDENT.  PAOLA FRENCH sues both in her individual capacity as the mother of DECEDENT and in a

1 | representative capacity as a successor-in-interest to DECEDENT.  PAOLA
2 | FRENCH also sues in her individual capacity as an injured party, who suffered
3 | severe physical and emotional injuries as a result of this incident.  PAOLA
4 | FRENCH seeks compensatory, survival and wrongful death damages under federal
5 | and state law.

6 |     4.    Plaintiff RUSSELL FRENCH is an individual residing in the County of
7 | Riverside, California, and is the natural father of DECEDENT.  RUSSELL
8 | FRENCH sues both in his individual capacity as the father of DECEDENT and in a
9 | representative capacity as a successor-in-interest to DECEDENT.  RUSSELL
10 | FRENCH also sues in his individual capacity as an injured party, who suffered
11 | severe physical and emotional injuries as a result of this incident.  RUSSELL
12 | FRENCH seeks compensatory, survival and wrongful death damages under federal
13 | and state law.

14 |     5.    At all relevant times, Defendant CITY OF LOS ANGELES ("CITY")
15 | is and was a duly organized public entity, form unknown, existing under the laws of
16 | the State of California.  At all relevant times, CITY was the employer of Defendants
17 | SALVADOR SANCHEZ, DOES 1-5 (who were CITY's Police Department's
18 | supervisorial officers), and DOES 6-10 (who were managerial, supervisorial, and
19 | policymaking employees of the CITY Police Department ("LAPD")).

20 |     6.    At all relevant times, Defendant SALVADOR SANCHEZ was a duly
21 | authorized employee and agent of Defendant CITY.  At all relevant times,
22 | SANCHEZ was acting under color of law and within the course and scope of his
23 | duties as a police officer and his employment with the CITY/LAPD.  At all relevant
24 | times, SANCHEZ was acting with the complete authority and ratification of his
25 | principal, Defendant CITY.  Further, at all relevant times, SALVADOR SANCHEZ
26 | was acting in his official capacity as a police officer with the CITY/LAPD.
27 | SANCHEZ is sued in both his official capacity and individual capacity.  The
28 |

THIRD AMENDED COMPLAINT FOR DAMAGES

1   LAPD/CITY was a moving force behind SANCHEZ's violations of the Plaintiffs'
2   and the DECEDENT's constitutional rights.

3        7.     At all relevant times, Defendants SALVADOR SANCHEZ and DOES
4   1-10 were duly appointed officers and/or employees or agents of CITY, subject to
5   oversight and supervision by the CITY's elected and non-elected officials.

6        8.     In doing the acts and failing and omitting to act as hereinafter
7   described, Defendants SALVADOR SANCHEZ and DOES 1-10 were acting on the
8   implied and actual permission and consent of CITY.

9        9.     At all times mentioned herein, each and every CITY defendant was the
10  agent of each and every other CITY defendant and had the legal duty to oversee and
11  supervise the hiring, conduct and employment of each and every CITY defendant.

12       10.     The true names of defendants DOES 1 through 10, inclusive, are
13  unknown to Plaintiffs, who therefore sue these defendants by such fictitious names.
14  Plaintiffs will seek leave to amend this complaint to show the true names and
15  capacities of these defendants when they have been ascertained.  Each of the
16  fictitiously-named defendants is responsible in some manner for the conduct and
17  liabilities alleged herein.  DOES 1 through 10 are sued in their individual capacities.

18

19       **JURISDICTION AND VENUE**

20       11.     Jurisdiction is founded on 28 U.S.C. §§ 1331, 1343, and 1367.  This
21  civil action is brought for the redress of alleged deprivations of constitutional rights
22  as protected by 42 U.S.C. §§ 1983, 1985, 1986, 1988, and the Fourth Amendment of
23  the United States Constitution.

24       12.     Venue is proper in this Court because this incident occurred in
25  Riverside County and the Plaintiffs both reside in Riverside County.

26       //

27       //

28       //

## **FACTS COMMON TO ALL CLAIMS FOR RELIEF**

13.     Plaintiffs repeat and reallege each and every allegation in paragraphs 1 through 12 of this First Amended Complaint with the same force and effect as if fully set forth herein.

14.     On June 14, 2019, 32-year old DECEDENT and his parents, PAOLA FRENCH and RUSSELL FRENCH, went to the local Costco Wholesale to do some shopping.

15.     While inside of the Costco, SALVADOR SANCHEZ, a police officer for the Los Angeles Police Department ("LAPD"), removed a concealed handgun from his waistband, announced himself as a police officer, and, using his LAPD training on the use of force and his LAPD training on detentions and arrests, attempted to arrest Plaintiffs and DECEDENT and discharged approximately ten (10) rounds at PAOLA FRENCH, RUSSELL FRENCH and DECEDENT, striking all three of them, including shots to the back.  SALVADOR SANCHEZ intentionally fired each shot.  Out of the ten shots fired, it is believed that six (6) shots total struck Plaintiffs and DECEDENT.

16.     The shooting was excessive and unreasonable, including because PAOLA FRENCH, RUSSELL FRENCH and DECEDENT were all visibly unarmed and posed no immediate threat of death or serious bodily injury to any person, including SANCHEZ, at the time of the shooting.  Further, PAOLA FRENCH, RUSSELL FRENCH and DECEDENT were all moving away from SANCHEZ at the time of the shooting, which is consistent with the multiple gunshot wounds to the back.  Both PAOLA FRENCH and RUSSELL FRENCH were in between SALVADOR SANCHEZ and DECEDENT at the time of the shooting.  Plaintiffs pled with SALVADOR SANCHEZ not to shoot their son (DECEDENT) and told SALVADOR SANCHEZ that DECEDENT was sick.  On information and belief, PAOLA FRENCH and RUSSELL FRENCH were both struck by the gunfire prior to DECEDENT being fatally shot.

17.     After shooting, SALVADOR SANCHEZ did not provide or summon timely medical attention for DECEDENT and Plaintiffs, despite them bleeding profusely and having obvious serious injuries.

18.     At the time of this incident, SANCHEZ was acting in his official capacity and was acting under color of state law.  When SANCHEZ detained, arrested or attempted to arrest, and shot DECEDENT and Plaintiffs, he exercised power possessed by virtue of state law and made possible only because SANCHEZ was clothed with the authority of state law.  SANCHEZ was employed by the state and abused the position given to him by the state; thus, he acted under color of state law.  Further, SANCHEZ'S actions, including detaining, arresting, and shooting DECEDENT and Plaintiffs, were performed while SANCHEZ was acting, purporting to act, or pretending to act in the performance of his official duties as a police officer for the CITY/LAPD.  Additionally, SANCHEZ'S pretense of acting in the performance of his official duties had the purpose and effect of influencing the behavior of Plaintiffs, DECEDENT, bystanders in the Costco, the responding Corona PD officers, investigators for the LAPD Force Investigation Division, and SANCHEZ'S employer, the CITY/LAPD.  Third, SANCHEZ'S conduct—including detaining, arresting, and shooting DECEDENT and Plaintiffs in response to what SANCHEZ perceived what he believed to be the commission of a public offense and protecting himself as an LAPD officer—was related in a meaningful way to SANCHEZ'S status as a police officer for the CITY/LAPD and performance of his duties as a police officer for the CITY/LAPD.

19.     The LAPD/CITY was a moving force behind SANCHEZ's violations of the Plaintiffs' and the DECEDENT's constitutional rights.

20.     Also at the time of this incident, SANCHEZ was acting in the course and scope of his duties and employment as a police officer for the CITY/LAPD.  During this incident, including when he detained, arrested or attempted to arrest, and shot DECEDENT and Plaintiffs, SANCHEZ was engaged in work that the

1   CITY/LAPD employed him to perform.  Further, SANCHEZ'S conduct was

2   incident to his duties as a police officer and was performed for the benefit of the

3   CITY/LAPD as opposed to serving his own purposes or convenience, as

4   demonstrated by the fact that SANCHEZ had never seen DECEDENT or Plaintiffs

5   before.  It is in the interest of SANCHEZ'S employer, the CITY/LAPD, for

6   SANCHEZ to protect himself as an LAPD officer, to detain and arrest or attempt to

7   arrest a person whom he perceives has committed a public offense (especially in the

8   presence of the officer), to prevent the escape of an alleged assault and battery

9   suspect, and to act in self-defense or defense of others.  In other words, SANCHEZ

10  was on duty at the time of the incident.

11      21.   SALVADOR SANCHEZ announced himself as a police officer prior to

12  the shooting and then continued to identify himself as being a member of law

13  enforcement throughout the encounter and after the shooting, including to Costco

14  shoppers, employees, vendors and the responding police officers from the Corona

15  Police Department ("Corona PD").  PAOLA FRENCH and RUSSELL FRENCH

16  knew that SANCHEZ was a police officer, and on information and belief,

17  DECEDENT knew that SANCHEZ was a police officer before DECEDENT was

18  fatally shot.  These identifications helped SALVADOR SANCHEZ accomplish his

19  detention and shooting of Plaintiffs and DECEDENT, including but not limited to

20  by preventing others from interfering/intervening in the incident both before and

21  after the shooting.

22      22.   On information and belief, the weapon used by SALVADOR

23  SANCHEZ to shoot DECEDENT and Plaintiffs was provided by his employer, the

24  CITY/LAPD.  Further, on information and belief, the service weapon that

25  SALVADOR SANCHEZ used to shoot DECEDENT and Plaintiffs is the same gun

26  that he uses during his employment as a LAPD officer.  Pursuant to LAPD Policy

27  Manual §§ 610.10, 610.11, and 610.70, every LAPD officer shall possess an

28  authorized firearm, and officers who carry a concealed handgun pursuant to their

THIRD AMENDED COMPLAINT FOR DAMAGES

employment as an LAPD officer shall only carry handguns that have been approved by the LAPD.

23.     SALVADOR SANCHEZ was only authorized to be in possession of his concealed handgun, which was issued by his employer, the CITY/LAPD, because of his status as a law enforcement official, including pursuant to California Penal Code ("PC") § 25450 and LAPD Policy Manual § 610 *et seq*.  If SALVADOR SANCHEZ was not a police officer, then he would not have been authorized to enter the Costco with a concealed handgun in his waistband.  Thus, SANCHEZ'S employment with the CITY/LAPD predictably created a risk that SANCHEZ would be involved in a shooting incident.

24.     Pursuant to California Penal Code § 830.1 and LAPD Policy Manual § 230.10, the authority of police officers extends to any place in the state as to any public offense committed in the police officer's presence.  Under California PC § 836.5(a), peace officers may make warrantless arrests whenever the officer or employee has reasonable cause to believe that the person to be arrested has committed a misdemeanor in the presence of the officer or employee that is a violation of a statute or ordinance that the officer or employee has the duty to enforce.  When SANCHEZ announced himself as a police officer, drew a CITY-issued firearm, and directed others to get down, he conveyed to DECEDENT, Plaintiffs, and bystanders that he sought to detain or arrest someone as permitted by California PC § 830.1.

25.     SANCHEZ contends that he detained, arrested or attempted to arrest and shot PAOLA FRENCH, RUSSELL FRENCH and DECEDENT to prevent the escape of DECEDENT, to protect the public, and to stop what SANCHEZ perceived to be the commission of a criminal offense in his presence inside the Costco.  Thus, SANCHEZ acted in the course and scope of his employment with the CITY/LAPD.

26.     When SANCHEZ detained and shot PAOLA FRENCH, RUSSELL FRENCH and DECEDENT, he used his LAPD training with respect to police

tactics detentions, arrests, and the use of deadly force—training that Plaintiffs claim was totally inadequate.  In drawing his concealed police-issued handgun in a public place, taking aim and then deliberately firing rounds in the direction of PAOLA FRENCH, RUSSELL FRENCH and DECEDENT, and successfully striking all three of his moving targets, SALVADOR SANCHEZ acted as an LAPD police officer is trained to act.  A private citizen would not have accomplished the detention and shooting in the same way that SALVADOR SANCHEZ, a trained police officer, did.

27.   After the shooting, SALVADOR SANCHEZ continued to identify himself as a police officer.  SANCHEZ asserted authority over the area, which prevented witnesses from providing care to Plaintiffs and DECEDENT.  SANCHEZ did not attempt to render medical aid himself.

28.   SANCHEZ identified himself as a member of law enforcement to alter, control and/or influence the behavior of the bystanders, including so that the bystanders would not interfere with SALVADOR SANCHEZ'S use of force and so that no person would come to the aid of PAOLA FRENCH, RUSSELL FRENCH and DECEDENT.  After SANCHEZ identified himself as a police officer, the bystanders were deterred by SALVADOR SANCHEZ.  As a result, the crowd refrained from attempting to aid DECEDENT and Plaintiffs, and the crowd also refrained from attempting to detain, arrest (including a citizen's arrest) apprehend, disarm or physically remove SALVADOR SANCHEZ from the premises.  Clearly, had SANCHEZ not identified himself as a police officer, then he would have been treated in a dramatically different fashion immediately following the shooting, including being arrested and being brought to trial.

29.   After the shooting, SANCHEZ was allowed to remain armed with his police-issued concealed weapon on the premises and make phone calls, including to his employer, the CITY/LAPD.

30.     After the shooting, SANCHEZ alleged that he believed that he had been shot by DECEDENT, that there was an "active shooter" situation occurring inside of the Costco, and that SANCHEZ had used deadly force to protect himself and others and to stop the "active shooter" who had opened fire inside of the Costco. This further supports that SANCHEZ was acting within his official capacity and in the performance of his official duties as a police officer for CITY/LAPD, and the CITY/LAPD was a moving force behind the constitutional violations, including the use of excessive force under the Fourth Amendment.

31.     Also after the shooting, local law enforcement agencies, including the Corona PD, responded to the scene to investigate the shooting.  SALVADOR SANCHEZ identified himself as being a police officer to the responding law enforcement agencies, and as a result, the responding law enforcement officers did not detain and/or arrest SALVADOR SANCHEZ.  Instead, SANCHEZ was released without even being ticketed or cited for any crime.  Undoubtedly, if SALVADOR SANCHEZ had not identified himself as a police officer, then the responding law enforcement officers would have immediately arrested him and transported him to jail.  In other words, if any person who was not a member of law enforcement had shot three (3) people inside of a crowded Costco with a concealed weapon he was carrying, there is no doubt that civilian would have been immediately arrested.

32.     In the aftermath of the incident, the Corona PD personnel who responded to the scene coordinated with SALVADOR SANCHEZ and his employer, the CITY/LAPD, further showing that SANCHEZ'S conduct was within the course and scope of his employment.

33.     The CITY/LAPD treated this incident as if it were an officer-involved shooting that had occurred during the course and scope of SANCHEZ'S employment as an LAPD officer.  For example, prior to SANCHEZ being interviewed by any local law enforcement agency, including the Corona PD and the Force Investigation Division of the LAPD, the LAPD permitted SANCHEZ to

review surveillance footage from inside of the Costco.  If SALVADOR SANCHEZ were not a member of law enforcement, then he would never have been allowed to review surveillance footage prior to being interviewed.  However, allowing the shooting officer to review the surveillance footage prior to giving his interview is standard LAPD protocol for officer-involved shootings.  In fact, LAPD would not have been in possession of the surveillance footage so shortly after the shooting if the shooting incident had not involved a police officer.  Further, on information and belief, SALVADOR SANCHEZ was considered "on duty" and/or "on the clock" with the LAPD, and was paid by LAPD, during the time he spent being interviewed by LAPD investigators, which is also standard protocol for officer-involved shootings that occur during the course and scope of an officer's employment as a member of the LAPD.

34.    On information and belief, after the shooting, SANCHEZ was provided with an attorney because he was law enforcement.  Also on information and belief, SALVADOR SANCHEZ and his attorney were provided with a copy of the Costco surveillance footage capturing the shooting incident.  If SALVADOR SANCHEZ was not a member of law enforcement, then he would not have been provided with a copy of the surveillance footage shortly after the incident, especially because he had not been charged with any crime and there had been no subpoena or warrant issued to provide SALVADOR SANCHEZ and/or his attorney with a copy of the surveillance footage.

35.    On information and belief, approximately a few days after the shooting, SALVADOR SANCHEZ and investigators from LAPD did a walk-through at the Costco so that SALAVADOR SANCHEZ could explain to LAPD investigators how the shooting occurred.  This is standard protocol for officer-involved shootings that occur during the course and scope of an officer's employment with the LAPD.  On information and belief, SALVADOR SANCHEZ was ordered to be "on duty" by his LAPD supervisors to conduct a walk through and was paid by the LAPD for that

THIRD AMENDED COMPLAINT FOR DAMAGES

time, including travel.  This is also standard protocol for LAPD officer-involved shootings that occur during the course and scope of an officer's employment.  The LAPD does not conduct walk-throughs with shooting suspects who are not members of the LAPD, and the LAPD does not conduct walk-throughs regarding the actions of their employees when such actions occur outside the course and scope of the officer's employment.

36.     On information and belief, Costco closed sections of their store so that SALVADOR SANCHEZ and LAPD investigators could conduct their walk-through.  Costco would not have closed sections of the store and allowed SALVADOR SANCHEZ and LAPD investigators to conduct a walk-through as part of their investigation if SANCHEZ was not a member of law enforcement.

37.     The LAPD also interviewed and/or participated in the interviews of witnesses to the shooting, including Costco customers, employees and vendors. This is standard LAPD protocol for shootings that occur during the course and scope of an officer's employment.  The LAPD would not have been permitted to participate in the interviews of witnesses to the shooting if SALVADOR SANCHEZ were not a member of law enforcement.

38.     After the shooting, SANCHEZ worked in concert with local law enforcement investigators, including from the Corona PD, to distort the facts and develop a false narrative to facilitate the cover-up of events that culminated with the unlawful killing of DECEDENT and serious injury to Plaintiffs, including falsification of the account of the incident, witness tampering, and evidence tampering.

39.     SANCHEZ was not indicted for any crime relative to the detention and shooting of PAOLA FRENCH, RUSSELL FRENCH, and KENNETH FRENCH. Certainly, if SANCHEZ were not a police officer, then he would have been prosecuted for shooting three (3) visibly unarmed individuals, including one (1)

1  fatally, in a Costco when there was no immediate threat of death or serious bodily
2  injury to any person.

3       40.    SANCHEZ'S misuse of power as described above, possessed by virtue
4  of state law and made possible only because SANCHEZ was clothed with the
5  authority of state law by announcing himself as a police officer, is action taken
6  under the color of state law.  Indeed, a defendant in a 42 U.S.C. section 1983 lawsuit
7  acts under color of state law when he abuses the position given to him by the State.

8       41.    As a result of the gunshot wounds sustained by PAOLA FRENCH and
9  RUSSELL FRENCH, they both suffered serious physical injuries that will require
10  medical attention and care for the remainder of their lives.  PAOLA FRENCH and
11  RUSSELL FRENCH also suffered severe emotional injuries and distress as a result
12  of being shot, witnessing each other being shot and seriously injured, and witnessing
13  their son, DECEDENT, being shot and killed.  Further, DECEDENT suffered
14  serious physical injury, pre-death pain and suffering, and death as a result of the
15  gunshot wounds he sustained.  DECEDENT was PAOLA FRENCH's and
16  RUSSELL FRENCH's first-born child and their only surviving child is Kevin
17  French, DECEDENT's brother.

18       42.    On August 23, 2019, Plaintiffs served their claims for damages with the
19  CITY pursuant to applicable sections of the California Government Code.

20       43.    On August 30, 2019, the CITY rejected Plaintiffs' claims for damages.

21
22  //
23
24  //
25
26  //
27
28  //

-13-

# FIRST CLAIM FOR RELIEF

## Fourth Amendment—Detention and Arrest (42 U.S.C. § 1983)

(By Plaintiffs PAOLA FRENCH and RUSSELL FRENCH in their individual capacities only, against Defendants CITY and SALVADOR SANCHEZ, in both his official capacity and in his individual capacity)

44.     Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 43 of this Complaint with the same force and effect as if fully set forth herein.

45.     The Fourth Amendment to the United States Constitution guarantees all persons the right to be free from unreasonable searches and seizures.  42 U.S.C. § 1983 provides a private right of action for conduct that violates this right.

46.     At all relevant times, Defendant SANCHEZ was acting under color of state law.  Further, at all relevant times, SANCHEZ was acting within his official capacity, and the CITY/LAPD was a moving force behind SANCHEZ'S violation of the Plaintiffs' constitutional right to be free from unlawful seizures.  When SANCHEZ detained and arrested Plaintiffs, he exercised power possessed by virtue of state law and made possible only because SANCHEZ was clothed with the authority of state law.  SANCHEZ was employed by the state and abused the position given to him by the state; thus, he acted under color of state law.  Further, SANCHEZ'S actions, including detaining, arresting or attempting to arrest, and shooting Plaintiffs, were performed while SANCHEZ was acting, purporting to act, or pretending to act in the performance of his official duties as a police officer for the CITY/LAPD.  Additionally, SANCHEZ'S pretense of acting in the performance of his official duties had the purpose and effect of influencing the behavior of Plaintiffs, DECEDENT, bystanders in the Costco, the responding Corona PD officers, investigators for the LAPD Force Investigation Division, and SANCHEZ'S employer, the CITY/LAPD.  Third, SANCHEZ'S conduct—including detaining, arresting or attempting to arrest, and shooting Plaintiffs in response to what

-14-

SANCHEZ perceived what he believed to be the commission of a public offense and protecting himself as an LAPD officer—was related in a meaningful way to SANCHEZ'S status as a police officer for the CITY/LAPD and performance of his duties as a police officer for the CITY/LAPD.  SANCHEZ is sued in both his official and individual capacity on this claim.

47.     SANCHEZ detained PAOLA FRENCH and RUSSELL FRENCH without reasonable suspicion and arrested them without probable cause.  Plaintiffs were unarmed at all times.  Not only was the detention itself unreasonable, but the scope and manner of the detention was also unreasonable.  When SANCHEZ pointed his CITY-issued weapon at PAOLA FRENCH and RUSSELL FRENCH and then shot them, he violated their rights to be secure in their persons against unreasonable searches and seizures as guaranteed to them under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.  Further, SANCHEZ forced PAOLA FRENCH and RUSSELL FRENCH to stay in place, thereby delaying their receipt of medical attention.

48.     As a direct and proximate result of the aforementioned conduct, PAOLA FRENCH and RUSSELL FRENCH suffered damages, including physical injuries, disfigurement, emotional and mental injuries and distress, pain and suffering, humiliation, anguish, reduced earning capacity, lost wages, medical expenses, and other economic expenses.

49.     Plaintiffs bring this claim individually and seek damages for the violations of their rights, including for their serious physical injuries and disfigurement, their past and future pain and suffering, their past and future emotional distress, their past and future loss of earnings and their past and future medical expenses.

50.     Plaintiffs also seek attorneys' fees and reasonable costs under this claim.

1

## SECOND CLAIM FOR RELIEF

### Unreasonable Search and Seizure—Excessive Force (42 U.S.C. § 1983)

(By Plaintiffs PAOLA FRENCH and RUSSELL FRENCH, individually and as

successors-in-interest to DECEDENT, against Defendants CITY and SALVADOR

SANCHEZ, in both his official capacity and in his individual capacity)

51.     Plaintiffs repeat and reallege each and every allegation in paragraphs 1

through 50 of this Complaint with the same force and effect as if fully set forth

herein.

52.     SALVADOR SANCHEZ, a police officer for the LAPD, was acting

under color of state law when he intentionally shot DECEDENT, PAOLA FRENCH

and RUSSELL FRENCH.  Further, at all relevant times, SANCHEZ was acting

within his official capacity, and the CITY/LAPD was a moving force behind the

violations of Plaintiffs' and DECEDENT's constitutional rights, including their right

to be free from the use of excessive force under the Fourth Amendment.  When

SANCHEZ shot DECEDENT and Plaintiffs, he exercised power possessed by virtue

of state law and made possible only because SANCHEZ was clothed with the

authority of state law.  SANCHEZ was employed by the state and abused the

position given to him by the state; thus, he acted under color of state law.  Further,

SANCHEZ'S actions, including detaining, arresting or attempting to arrest, and

shooting DECEDENT and Plaintiffs, were performed while SANCHEZ was acting,

purporting to act, or pretending to act in the performance of his official duties as a

police officer for the CITY/LAPD.  Additionally, SANCHEZ'S pretense of acting in

the performance of his official duties had the purpose and effect of influencing the

behavior of Plaintiffs, DECEDENT, bystanders in the Costco, the responding

Corona PD officers, investigators for the LAPD Force Investigation Division, and

SANCHEZ'S employer, the CITY/LAPD.  Third, SANCHEZ'S conduct—including

detaining, arresting, and shooting DECEDENT and Plaintiffs in response to what

SANCHEZ perceived what he believed to be the commission of a public offense

THIRD AMENDED COMPLAINT FOR DAMAGES

and protecting himself as an LAPD officer—was related in a meaningful way to SANCHEZ'S status as a police officer for the CITY/LAPD and performance of his duties as a police officer for the CITY/LAPD.  SANCHEZ is sued in both his official capacity and his individual capacity on this claim.

53.     While inside of a Costco on June 14, 2019, SALVADOR SANCHEZ removed a concealed handgun from his waistband, announced himself as a police officer, and, using his LAPD training on the use of force, discharged approximately ten (10) rounds at PAOLA FRENCH, RUSSELL FRENCH and DECEDENT, striking all three of them, including shots to the back.  SALVADOR SANCHEZ intentionally fired each shot.  Out of the ten shots fired, it is believed that six (6) shots total struck Plaintiffs and DECEDENT.

54.     The shooting was excessive and unreasonable, including because DECEDENT, PAOLA FRENCH and RUSSELL FRENCH were all visibly unarmed and there was no immediate threat of death or serious bodily injury to any person at the time of the shooting.  DECEDENT and Plaintiffs were several feet away from SALVADOR SANCHEZ and were moving away from SALVADOR SANCHEZ when the shooting began.  PAOLA FRENCH and RUSSELL FRENCH were standing in between SALVADOR SANCHEZ and DECEDENT when the shooting began.  SANCHEZ fired multiple shots, including shots to DECEDENT's backside and a shot to PAOLA FRENCH's back.  On information and belief, PAOLA FRENCH and RUSSELL FRENCH were both struck by the gunfire prior to DECEDENT being fatally shot.

55.     Prior to the shooting, SALVADOR SANCHEZ was on notice that DECEDENT suffered from a mental illness or disability.  Plaintiffs told SANCHEZ that DECEDENT was sick and pleaded with SALVADOR SANCHEZ to not shoot their son (DECEDENT) before the shooting.

56.     SALVADOR SANCHEZ'S unjustified shooting deprived DECEDENT, PAOLA FRENCH and RUSSELL FRENCH of their rights to be

-17-

secure in their persons against unreasonable searches and seizures as guaranteed to DECEDENT, PAOLA FRENCH and RUSSELL FRENCH under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

57.    As a result of the shooting, DECEDENT suffered extreme mental and physical pain and suffering, loss of enjoyment of life, the loss of his life, and the loss of his of earning capacity.

58.    Also as a result of the shooting, PAOLA FRENCH and RUSSELL FRENCH suffered serious physical injuries and disfigurement, past and future pain and suffering, past and future emotional distress, past and future loss of earnings, earning capacity, and income, and past and future medical expenses.  PAOLA FRENCH and RUSSELL FRENCH will require medical attention and care for the rest of their natural lives.  PAOLA FRENCH and RUSSELL FRENCH have also been deprived of the life-long love, companionship, comfort, support, society, and care of DECEDENT, and will continue to be so deprived for the remainder of their natural lives.

59.    Plaintiffs bring this claim as successors-in-interest to DECEDENT and seek survival damages for the violation of DECEDENT's rights.  Plaintiffs also bring this claim individually and seek damages for the violations of their rights, including for their serious physical injuries and disfigurement, their past and future pain and suffering, their past and future emotional distress, their past and future loss of earnings and their past and future medical expenses.

60.    Plaintiffs also seek attorneys' fees and costs under this claim.

//

//

//

**THIRD CLAIM FOR RELIEF**

**Unreasonable Search and Seizure—Denial of Medical Care (42 U.S.C. § 1983)**

(By Plaintiffs PAOLA FRENCH and RUSSELL FRENCH, individually and as successors-in-interest to DECEDENT, against Defendants CITY and SALVADOR SANCHEZ, in both his official capacity and in his individual capacity)

61.     Plaintiffs repeat and reallege each and every allegation in paragraphs 1 through 60 of this Complaint with the same force and effect as if fully set forth herein.

62.     At all relevant times, SANCHEZ was acting under color of state law. Further, at all relevant times, SANCHEZ was acting within his official capacity, and the CITY/LAPD was a moving force behind the violations of Plaintiffs' and DECEDENT's constitutional rights, including their right to timely medical care under the Fourth Amendment.  When SANCHEZ shot DECEDENT and Plaintiffs and then denied them timely medical care, he exercised power possessed by virtue of state law and made possible only because SANCHEZ was clothed with the authority of state law.  SANCHEZ was employed by the state and abused the position given to him by the state; thus, he acted under color of state law.  Further, SANCHEZ'S actions—including detaining, arresting, and shooting DECEDENT and Plaintiffs and then denying Plaintiffs and DECEDENT timely medical care— were performed while SANCHEZ was acting, purporting to act, or pretending to act in the performance of his official duties as a police officer for the CITY/LAPD. Additionally, SANCHEZ'S pretense of acting in the performance of his official duties had the purpose and effect of influencing the behavior of Plaintiffs, DECEDENT, bystanders in the Costco, the responding Corona PD officers, investigators for the LAPD Force Investigation Division, and SANCHEZ'S employer, the CITY/LAPD.  Third, SANCHEZ'S conduct—including detaining, arresting, and shooting DECEDENT and Plaintiffs in response to what SANCHEZ perceived what he believed to be the commission of a public offense and protecting

himself as an LAPD officer, and then denying Plaintiffs and DECEDENT timely medical care—was related in a meaningful way to SANCHEZ'S status as a police officer for the CITY/LAPD and performance of his duties as a police officer for the CITY/LAPD.  SANCHEZ is sued in both his official capacity and his individual capacity on this claim.

63.   After shooting DECEDENT, PAOLA FRENCH and RUSSELL FRENCH multiple times, SALAVADOR SANCHEZ did not timely summon medical attention for DECEDENT, PAOLA FRENCH and RUSSELL FRENCH, who were all on the floor bleeding profusely and had obvious serious injuries. SALVADOR SANCHEZ also prevented medical personnel from timely rendering medical aid/assistance to DECEDENT, PAOLA FRENCH and RUSSELL FRENCH.  SANCHEZ also did not attempt to render medical aid himself.

64.   The denial of medical care by Defendant SALVADOR SANCHEZ deprived DECEDENT, PAOLA FRENCH and RUSSELL FRENCH of their rights to be secure in their persons against unreasonable searches and seizures as guaranteed to them under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

65.   SALVADOR SANCHEZ knew that the failure to provide timely medical treatment to DECEDENT, PAOLA FRENCH and RUSSELL FRENCH could result in further significant injury or the unnecessary and wanton infliction of pain, but disregarded that serious medical need, causing DECEDENT, PAOLA FRENCH and RUSSELL FRENCH great bodily harm and causing DECEDENT's death.

66.   As a result of the denial of medical care, DECEDENT suffered extreme mental and physical pain and suffering, loss of enjoyment of life, the loss of his life, and the loss of his of earning capacity.

67.   Also as a result of the denial of medical care, PAOLA FRENCH and RUSSELL FRENCH suffered serious physical injuries and disfigurement, past and

future pain and suffering, past and future emotional distress, past and future loss of earnings, earning capacity, and income, and past and future medical expenses. PAOLA FRENCH and RUSSELL FRENCH will require medical attention and care for the rest of their natural lives.  PAOLA FRENCH and RUSSELL FRENCH have also been deprived of the life-long love, companionship, comfort, support, society, and care of DECEDENT, and will continue to be so deprived for the remainder of their natural lives.

68.     Plaintiffs bring this claim as successors-in-interest to DECEDENT and seek survival damages for the violation of DECEDENT's rights.  Plaintiffs also bring this claim individually and seek damages for the violations of their rights, including for their serious physical injuries and disfigurement, their past and future pain and suffering, their past and future emotional distress, their past and future loss of earnings and their past and future medical expenses.

69.     Plaintiffs also seek attorneys' fees and costs under this claim.

**FOURTH CLAIM FOR RELIEF**

**Fourteenth Amendment—Substantive Due Process, Interference with Familial Relations (42 U.S.C. § 1983)**

(By Plaintiffs PAOLA FRENCH and RUSSELL FRENCH in their individual capacities only, against Defendants CITY and SALVADOR SANCHEZ, in both his official capacity and in his individual capacity)

70.     Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 69 of this Complaint with the same force and effect as if fully set forth herein.

71.     At all relevant times, SANCHEZ was acting under color of state law. Further, at all relevant times, SANCHEZ was acting within his official capacity, and the CITY/LAPD was a moving force behind the violations of Plaintiffs' and

-21-

DECEDENT's constitutional rights.  When SANCHEZ detained, arrested or attempted to arrest, and shot DECEDENT and Plaintiffs, he exercised power possessed by virtue of state law and made possible only because SANCHEZ was clothed with the authority of state law.  SANCHEZ was employed by the state and abused the position given to him by the state; thus, he acted under color of state law. Further, SANCHEZ'S actions, including detaining, arresting or attempting to arrest, and shooting DECEDENT and Plaintiffs, were performed while SANCHEZ was acting, purporting to act, or pretending to act in the performance of his official duties as a police officer for the CITY/LAPD.  Additionally, SANCHEZ'S pretense of acting in the performance of his official duties had the purpose and effect of influencing the behavior of Plaintiffs, DECEDENT, bystanders in the Costco, the responding Corona PD officers, investigators for the LAPD Force Investigation Division, and SANCHEZ'S employer, the CITY/LAPD.  Third, SANCHEZ'S conduct—including detaining, arresting, and shooting DECEDENT and Plaintiffs in response to what SANCHEZ perceived what he believed to be the commission of a public offense and protecting himself as an LAPD officer—was related in a meaningful way to SANCHEZ'S status as a police officer for the CITY/LAPD and performance of his duties as a police officer for the CITY/LAPD.  SANCHEZ is sued in both his official capacity and his individual capacity on this claim.

72.    Plaintiffs PAOLA FRENCH and RUSSELL FRENCH had a cognizable interest under the Due Process Clause of the Fourteenth Amendment to the United States Constitution to be free from state actions that deprive them of life, liberty, or property in such a manner as to shock the conscience, including but not limited to unwarranted state interference in their familial relationship with their son, DECEDENT.

73.    The aforementioned actions of SANCHEZ, including the shooting and denial of medical care, along with other undiscovered conduct, shock the

1   conscience, in that SANCHEZ acted with deliberate indifference to the

2   constitutional rights of DECEDENT and Plaintiffs

3       74.    SALVADOR SANCHEZ thus violated the substantive due process

4   rights of Plaintiffs to be free from unwarranted interference with their familial

5   relationship with DECEDENT, their son.

6       75.    Also as a direct and proximate result of the aforementioned conduct,

7   PAOLA FRENCH and RUSSELL FRENCH have been deprived of the life-long

8   love, companionship, comfort, support, society, and care of DECEDENT, and will

9   continue to be so deprived for the remainder of their natural lives.

10      76.    Plaintiffs PAOLA FRENCH and RUSSELL FRENCH bring this claim

11  individually for the interference with their relationship with their son, DECEDENT.

12  Plaintiffs seek wrongful death damages, reasonable costs and attorney's fees under

13  42 U.S.C. § 1988 on this claim.

14

15              **<u>FIFTH CLAIM FOR RELIEF</u>**

16          **Unconstitutional Policy (42 U.S.C. § 1983 and *Monell*)**

17      (By Plaintiffs PAOLA FRENCH and RUSSELL FRENCH, individually and as

18      successors-in-interest to DECEDENT, against Defendants SANCHEZ (in his

19                  official capacity), CITY and DOES 1-10)

20      77.    Plaintiffs repeat and re-allege each and every allegation in paragraphs 1

21  through 76 of this Complaint with the same force and effect as if fully set forth

22  herein, including but not limited to paragraphs 22 through 26.

23      78.    The acts of Defendant SALVADOR SANCHEZ deprived Plaintiffs and

24  DECEDENT of their rights under the United States Constitution.

25      79.    At all relevant times, Defendant SALVADOR SANCHEZ was acting

26  under color of state law.  Further, at all relevant times, SANCHEZ was acting within

27  his official capacity, and the CITY/LAPD was a moving force behind the violations

28  of Plaintiffs' and DECEDENT's constitutional rights.  When SANCHEZ detained,

arrested, and shot DECEDENT and Plaintiffs, he exercised power possessed by virtue of state law and made possible only because SANCHEZ was clothed with the authority of state law.  SANCHEZ was employed by the state and abused the position given to him by the state; thus, he acted under color of state law.  Further, SANCHEZ'S actions, including detaining, arresting, and shooting DECEDENT and Plaintiffs, were performed while SANCHEZ was acting, purporting to act, or pretending to act in the performance of his official duties as a police officer for the CITY/LAPD.  Additionally, SANCHEZ'S pretense of acting in the performance of his official duties had the purpose and effect of influencing the behavior of Plaintiffs, DECEDENT, bystanders in the Costco, the responding Corona PD officers, investigators for the LAPD Force Investigation Division, and SANCHEZ'S employer, the CITY/LAPD.  Third, SANCHEZ'S conduct—including detaining, arresting, and shooting DECEDENT and Plaintiffs in response to what SANCHEZ perceived what he believed to be the commission of a public offense and protecting himself as an LAPD officer—was related in a meaningful way to SANCHEZ'S status as a police officer for the CITY/LAPD and performance of his duties as a police officer for the CITY/LAPD.

80.   During this incident, SALVADOR SANCHEZ acted pursuant to an expressly adopted official policy of the CITY/LAPD.

81.   On information and belief, SALVADOR SANCHEZ was not disciplined, reprimanded, retrained, suspended, or otherwise penalized for any of his conduct during this incident, including the unreasonable detention and arrest, the use of excessive force, and the denial of medical care.

82.   Defendants CITY and DOES 6-10, as policymakers and supervisors, maintained, *inter alia*, the following unconstitutional policies:

     a)  Authorizing and/or encouraging off-duty officers, including SANCHEZ, to carry a concealed firearm (*see* LAPD Policy Nos. 252.15, 610.90, 610.11, 610.90) while failing to adequately train or

discipline LAPD officers regarding the use of deadly force while off-duty, despite the obvious need for more and better training on the subject and clear notice of such deficiencies based on prior incidents;

b) Authorizing off-duty officers, including SANCHEZ, to have peace officer authority as to any public offense committed in the off-duty officer's presence (*see* LAPD Policy No. 230.10), while failing to adequately train or discipline them regarding such authority;

c) Mandating training programs, such as "warrior training," that foster an irrational fear among both on-and off-duty police officers that everyone is out to kill the police officer and that unexpected danger lurks around every corner, which the CITY knew would lead its police officers to overreact and use excessive deadly force, including while off-duty;

d) Covering up any potential wrongdoing of off-duty officers and assisting off-duty officers in avoiding liability and criminal prosecution, including by allowing off-duty officers involved in shootings and other misconduct to review relevant materials such as surveillance videos prior to giving any statement, asking leading questions of and intimidating civilian witnesses, and gathering all other evidence before interviewing the involved officer with leading questions, as well as by advising the off-duty officer to declare bankruptcy and discharge any liability;

e) Employing and retaining as officers and other personnel, including SALVADOR SANCHEZ, whom Defendants CITY and DOES 6-10, at all times material herein, knew or reasonably should have known had dangerous propensities for abusing their authority and for mistreating citizens by failing to follow written CITY policies, including policies pertaining to the use of excessive force and the use of deadly force; and

f)  Maintaining a policy of inaction and an attitude of indifference towards soaring numbers of police shootings, including by failing to recommend officers for criminal prosecution who participate in shootings of unarmed people.

83.  Defendants SANCHEZ (in his official capacity), CITY and DOES 6-10, together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the different policies, practices, and customs alleged in the paragraphs above.  Despite having knowledge as stated above, these Defendants condoned, tolerated and through actions and inactions ratified such policies.  Said Defendants also acted with deliberate indifference to both the foreseeable effects and consequences of these policies and to the constitutional rights of Plaintiffs, DECEDENT, and other individuals similarly situated.

84.  By perpetuating, sanctioning, tolerating, and ratifying SANCHEZ'S outrageous conduct and other wrongful acts, Defendants SANCHEZ (in his official capacity), CITY and DOES 6-10 acted with an intentional, reckless, callous disregard for the well-being of Plaintiffs and DECEDENT, and their constitutional rights.  Furthermore, the policies, practices, and customs implemented, maintained, and still tolerated by Defendants CITY and DOES 6-10 were affirmatively linked to and were a significantly influential force behind the constitutional violations and the injuries of Plaintiffs and DECEDENT.

85.  As a direct and proximate result of the aforementioned unconstitutional policies and customs, Plaintiffs experienced severe physical and emotional pain and suffering, severe physical injuries, reduced earning capacity, and ongoing medical expenses.  Also as a direct and proximate result of the aforementioned conduct, DECEDENT endured pain and suffering and lost his life and earning capacity.  Also as a direct and proximate result of the aforementioned conduct, Plaintiffs have been deprived of the life-long love, companionship, comfort, support, society, and care of

1  DECEDENT, and will continue to be so deprived for the remainder of their natural

2  lives.

3      86.     Accordingly, Defendants SANCHEZ (in his official capacity), CITY

4  and DOES 6-10 each are liable to Plaintiffs for compensatory damages under 42

5  U.S.C. § 1983 and *Monell* on this claim.

6      87.     Plaintiffs bring this claim individually and as successors-in-interest to

7  DECEDENT, and seek survival damages for the violation of DECEDENT's rights,

8  as well as damages for the violation of PAOLA FRENCH and RUSSELL

9  FRENCH's rights, including past and future pain, suffering, emotional distress, loss

10  of earnings and medical expenses.

11

12                    **SIXTH CLAIM FOR RELIEF**

13                  **False Arrest/False Imprisonment**

14      (By Plaintiffs PAOLA FRENCH and RUSSELL FRENCH in their individual

15            capacities only, against Defendants CITY and SANCHEZ)

16      88.     Plaintiffs repeat and re-allege each and every allegation in paragraphs 1

17  through 87 of this Complaint with the same force and effect as if fully set forth

18  herein.

19      89.     Defendant SALVADOR SANCHEZ, while acting within the course

20  and scope of his duties and employment as a police officer for the CITY/LAPD,

21  detained PAOLA FRENCH and RUSSELL FRENCH without reasonable suspicion

22  and arrested them without probable cause.  The scope and manner of the detention

23  and arrest (shooting them) was also unreasonable.  Further, SANCHEZ forced

24  PAOLA FRENCH and RUSSELL FRENCH to stay in place during and after the

25  shooting, thereby delaying their receipt of medical attention.

26      90.     PAOLA FRENCH and RUSSELL FRENCH did not knowingly or

27  voluntarily consent to the detention, arrest, and/or restriction of their freedom of

28  movement.

91.     SALVADOR SANCHEZ'S conduct, including keeping a gun trained on PAOLA FRENCH and RUSSELL FRENCH and making them feel that they were not free to leave, was a substantial factor in causing the harm to PAOLA FRENCH and RUSSELL FRENCH.

92.     Also as a result of the actions of SALVADOR SANCHEZ, PAOLA FRENCH and RUSSELL FRENCH suffered serious physical injuries and disfigurement, past and future pain and suffering, past and future emotional distress, past and future loss of earnings, earning capacity, and income, and past and future medical expenses.  PAOLA FRENCH and RUSSELL FRENCH will require medical attention and care for the rest of their natural lives.

93.     Plaintiffs bring this claim individually and seek damages for the violations of their rights, including for their serious physical injuries and disfigurement, their past and future pain and suffering, their past and future emotional distress, their past and future loss of earnings and their past and future medical expenses.

94.     Defendant CITY is vicariously liable for the wrongful acts of Defendant SALVADOR SANCHEZ pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the course and scope of their employment if the employee's act would subject him or her to liability.  During this incident, SANCHEZ was acting in the course and scope of his employment as a police officer for the LAPD/CITY.  SANCHEZ identified himself as a police officer before, during, and after the shooting.  SANCHEZ claims that he detained, arrested or attempted to arrest, and shot Plaintiffs and DECEDENT in response to what he perceived to be a public offense being committed by DECEDENT.  SANCHEZ'S conduct was incident to his duties as a police officer and was performed for the benefit of the CITY/LAPD and not to serve his own purposes or convenience, as evidenced by the fact that SANCHEZ had never seen DECEDENT or Plaintiffs

1  before.  It is in the interest of SANCHEZ'S employer, the CITY/LAPD to detain

2  and arrest a person whom the police officer perceives has committed a public

3  offense, to prevent the escape of an alleged assault and battery suspect, and to act in

4  self-defense or defense of others.

5

6  ## SEVENTH CLAIM FOR RELIEF

7  **Battery (Cal. Govt. Code § 820)**

8  (Including Wrongful Death)

9  (By Plaintiffs PAOLA FRENCH and RUSSELL FRENCH, individually and as

10  successors-in-interest to DECEDENT, against Defendants SALVADOR SANCHEZ

11  and the CITY)

12      95.    Plaintiffs repeat and reallege each and every allegation in paragraphs 1

13  through 94 of this Complaint with the same force and effect as if fully set forth

14  herein.

15      96.    SALVADOR SANCHEZ, while acting within the course and scope of

16  his duties and employment as a police officer with the CITY/LAPD, intentionally

17  shot DECEDENT, PAOLA FRENCH and RUSSELL FRENCH.

18      97.    While inside of a Costco on June 14, 2019, SALVADOR SANCHEZ

19  removed a concealed handgun from his waistband, announced himself as a police

20  officer, and, using his LAPD training on the use of force, discharged approximately

21  ten (10) rounds at PAOLA FRENCH, RUSSELL FRENCH and DECEDENT,

22  striking all three of them, including shots to the back.  SALVADOR SANCHEZ

23  intentionally fired each shot.  Out of the ten shots fired, it is believed that six (6)

24  shots total struck Plaintiffs and DECEDENT.

25      98.    The shooting was excessive and unreasonable, including because

26  DECEDENT, PAOLA FRENCH and RUSSELL FRENCH were all visibly unarmed

27  and there was no immediate threat of death or serious bodily injury to any person at

28  the time of the shooting.  DECEDENT and Plaintiffs were several feet away from

SALVADOR SANCHEZ and were moving away from SALVADOR SANCHEZ when the shooting began.  PAOLA FRENCH and RUSSELL FRENCH were standing in between SALVADOR SANCHEZ and DECEDENT when the shooting began.  SANCHEZ fired multiple shots, including shots to DECEDENT's backside and a shot to PAOLA FRENCH's back.  On information and belief, PAOLA FRENCH and RUSSELL FRENCH were both struck by the gunfire prior to DECEDENT being fatally shot.

99.    Prior to the shooting, SALVADOR SANCHEZ was on notice that DECEDENT suffered from a mental illness or disability.  Plaintiffs told SANCHEZ that DECEDENT was sick and pleaded with SALVADOR SANCHEZ to not shoot their son (DECEDENT) before the shooting.

100.   PAOLA FRENCH and RUSSELL FRENCH were standing in between SALVADOR SANCHEZ and DECEDENT when the shooting began.  On information and belief, PAOLA FRENCH and RUSSELL FRENCH were both struck by the gunfire prior to DECEDENT being fatally shot.

101.   Neither Plaintiffs nor DECEDENT consented to the use of force by SALVADOR SANCHEZ.

102.   As a result of the shooting, DECEDENT suffered extreme mental and physical pain and suffering, loss of enjoyment of life, the loss of his life, and the loss of his of earning capacity.

103.   Also as a result of the shooting, PAOLA FRENCH and RUSSELL FRENCH suffered serious physical injuries and disfigurement, past and future pain and suffering, past and future emotional distress, past and future loss of earnings, earning capacity, and income, and past and future medical expenses.  PAOLA FRENCH and RUSSELL FRENCH will require medical attention and care for the rest of their natural lives.

104.   Plaintiffs bring this claim as successors-in-interest to DECEDENT and seek survival damages for the violation of DECEDENT's rights.  Plaintiffs also

1   bring this claim individually and seek damages for the violations of their rights,

2   including for their serious physical injuries and disfigurement, their past and future

3   pain and suffering, their past and future emotional distress, their past and future loss

4   of earnings and their past and future medical expenses.  PAOLA FRENCH and

5   RUSSELL FRENCH also seek wrongful death damages, as the Plaintiffs have been

6   deprived of the life-long love, companionship, comfort, support, society, and care of

7   DECEDENT, and will continue to be so deprived for the remainder of their natural

8   lives.

9     105.   The CITY is vicariously liable for the wrongful acts of SALVADOR

10  SANCHEZ pursuant to section 815.2 of the California Government Code, which

11  provides that a public entity is liable for the injuries caused by its employees within

12  the scope of the employment if the employee's act would subject him or her to

13  liability.  During this incident, SANCHEZ was acting in the course and scope of his

14  employment as a police officer for the LAPD/CITY.  SANCHEZ identified himself

15  as a police officer before, during, and after the shooting.  SANCHEZ claims that he

16  detained, arrested, and shot Plaintiffs and DECEDENT in response to what he

17  perceived to be a public offense being committed by DECEDENT.  SANCHEZ'S

18  conduct was incident to his duties as a police officer and was performed for the

19  benefit of the CITY/LAPD and not to serve his own purposes or convenience, as

20  evidenced by the fact that SANCHEZ had never seen DECEDENT or Plaintiffs

21  before.  It is in the interest of SANCHEZ'S employer, the CITY/LAPD to detain

22  and arrest a person whom he perceives has committed a public offense, to prevent

23  the escape of an alleged assault and battery suspect, and to act in self-defense or

24  defense of others.

25

26

27

28

## **EIGHTH CLAIM FOR RELIEF**

### **Negligence (Cal. Govt. Code § 820)**

(Including Wrongful Death)

(By Plaintiffs PAOLA FRENCH and RUSSELL FRENCH, individually and as

successors-in-interest to DECEDENT, against all Defendants)

106.   Plaintiffs repeat and reallege each and every allegation in paragraphs 1 through 105 of this Complaint with the same force and effect as if fully set forth herein.

107.   The actions and inactions of the Defendants were negligent and reckless, including but not limited to:

   a)   SANCHEZ'S failure to properly and adequately assess the need to detain, arrest, and use force, including deadly force against DECEDENT and Plaintiffs;

   b)   SANCHEZ'S failure to properly handle a situation involving a mentally disabled individual;

   c)   SANCHEZ'S negligent detention and arrest of Plaintiffs, and SANCHEZ'S use of force, including deadly force, against DECEDENT and Plaintiffs;

   d)   SANCHEZ'S negligent tactics and handling of the situation with DECEDENT and Plaintiffs, including pre-shooting negligence and failure to de-escalate;

   e)   SANCHEZ'S negligent discharge of a firearm in a crowded and public place;

   f)   SANCHEZ'S failure to provide or obtain prompt medical care for DECEDENT and to Plaintiffs;

   g)   the negligent hiring and retention of SANCHEZ;

   h)   the failure to properly and adequately train employees, including SALVADOR SANCHEZ, with regards to (1)

detentions, arrests, and the use of force, including deadly

force; (2) self-defense; (3) dealing with individuals suffering

from mental illness or disability; (4) responding to situations

while off-duty;

    i)    the negligent handling of evidence and witnesses.

108.   As a direct and proximate result of Defendants' conduct as alleged above, as well as other undiscovered negligent conduct, DECEDENT suffered extreme mental and physical pain and suffering, loss of enjoyment of life, the loss of his life, and the loss of his of earning capacity.

109.   Also as a result of Defendants' negligence, PAOLA FRENCH and RUSSELL FRENCH suffered serious physical injuries and disfigurement, past and future pain and suffering, past and future emotional distress, past and future loss of earnings, earning capacity, and income, and past and future medical expenses. PAOLA FRENCH and RUSSELL FRENCH will require medical attention and care for the rest of their natural lives.

110.   Plaintiffs bring this claim individually and as successors-in-interest to DECEDENT and seek survival damages for the violation of DECEDENT's rights. Plaintiffs also bring this claim individually and seek damages for the violations of their rights, including for their serious physical injuries and disfigurement, their past and future pain and suffering, their past and future emotional distress, their past and future loss of earnings and their past and future medical expenses. PAOLA FRENCH and RUSSELL FRENCH also seek wrongful death damages, as the Plaintiffs have been deprived of the life-long love, companionship, comfort, support, society, and care of DECEDENT, and will continue to be so deprived for the remainder of their natural lives.

111.   CITY is vicariously liable for the wrongful acts of SALVADOR SANCHEZ pursuant to section 815.2 (a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within

the scope of the employment if the employee's act would subject him or her to liability.  During this incident, SANCHEZ was acting in the course and scope of his employment as a police officer for the LAPD/CITY.  SANCHEZ announced himself as a police officer before, during, and after the shooting.  SANCHEZ claims that he detained, arrested, and shot Plaintiffs and DECEDENT in response to what he perceived to be a public offense being committed by DECEDENT.  SANCHEZ'S conduct was incident to his duties as a police officer and was performed for the benefit of the CITY/LAPD and not to serve his own purposes or convenience, as evidenced by the fact that SANCHEZ had never seen DECEDENT or Plaintiffs before. It is in the interest of SANCHEZ'S employer, the CITY/LAPD, to protect himself as an LAPD officer, to detain and arrest a person whom he perceives has committed a public offense, to prevent the escape of an alleged assault and battery suspect, and to act in self-defense or defense of others.

### NINTH CLAIM FOR RELIEF

**Negligent Infliction of Emotional Distress**

**(Cal. Govt. Code § 829 and California Common Law)**

(By Plaintiffs PAOLA FRENCH and RUSSELL FRENCH, individually and as successors-in-interest to DECEDENT, against all Defendants)

112.   Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 111 of this Complaint with the same force and effect as if fully set forth herein.

113.   SALVADOR SANCHEZ caused physical injury and death to DECEDENT when he discharged his firearm at DECEDENT, striking him multiple times and eventually killing him.  SALVADOR SANCHEZ also caused serious injury to PAOLA FRENCH and RUSSELL FRENCH when he discharged his firearm at them.

114.   The use of deadly force by SALVADOR SANCHEZ was excessive and unreasonable, and SANCHEZ was negligent in discharging his firearm at DECEDENT, PAOLA FRENCH and RUSSELL FRENCH, including engaging in pre-shooting negligent conduct, actions, inactions and tactics.

115.   PAOLA FRENCH was present at the scene, which was inside of the Costco, when SALVADOR SANCHEZ discharged his firearm at DECEDENT and RUSSELL FRENCH.  PAOLA FRENCH was contemporaneously aware that DECEDENT and RUSSELL FRENCH were being seriously injured by SALVADOR SANCHEZ'S gunfire.

116.    RUSSELL FRENCH was present at the scene, which was inside of the Costco, when SALVADOR SANCHEZ fatally discharged his firearm at DECEDENT and PAOLA FRENCH.  RUSSELL FRENCH was contemporaneously aware that DECEDENT and PAOLA FRENCH were being seriously injured by SALVADOR SANCHEZ'S gunfire.

117.   As a result of perceiving her son, DECEDENT, and her husband, RUSSELL FRENCH, being shot and severely injured by SANCHEZ, PAOLA FRENCH suffered serious emotional distress, including but not limited to mental anguish, fright, horror, nervousness, grief, anxiety, worry, shock and humiliation. An ordinary person would be unable to cope with the emotional distress of seeing her husband and son being shot multiple times.  This is especially true because she pleaded with SALVADOR SANCHEZ not to shoot her son.

118.   As a result of perceiving his son, DECEDENT, and his wife, PAOLA FRENCH, being shot and severely injured by SANCHEZ, RUSSELL FRENCH suffered serious emotional distress, including but not limited to mental anguish, fright, horror, nervousness, grief, anxiety, worry, shock and humiliation.  An ordinary person would be unable to cope with the emotional distress of seeing his wife and son being shot multiple times.  This is especially true because he pleaded with SALVADOR SANCHEZ not to shoot his son.

119.   The CITY is vicariously liable for the wrongful acts of Defendant SALVADOR SANCHEZ pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.  During this incident, SANCHEZ was acting in the course and scope of his employment as a police officer for the LAPD/CITY.  SANCHEZ identified himself as a police officer before, during, and after the shooting. SANCHEZ claims that he detained, arrested or attempted to arrest Plaintiffs and DECEDENT and shot Plaintiffs and DECEDENT in response to what he perceived to be a public offense being committed by DECEDENT.  SANCHEZ'S conduct was incident to his duties as a police officer and was performed for the benefit of the CITY/LAPD and not to serve his own purposes or convenience, as evidenced by the fact that SANCHEZ had never seen DECEDENT or Plaintiffs before.  It is in the interest of SANCHEZ'S employer, the CITY/LAPD, to protect himself as an LAPD officer, to detain and arrest a person whom the police officer perceives has committed a public offense, to prevent the escape of an alleged assault and battery suspect, and to act in self-defense or defense of others.

120.   PAOLA FRENCH and RUSSELL FRENCH bring this claim individually and seek compensatory damages under this claim.

## TENTH CLAIM FOR RELIEF

### Violation of Bane Act (Cal. Civil Code § 52.1)

(By Plaintiffs PAOLA FRENCH and RUSSELL FRENCH, individually and as successors-in-interest to DECEDENT, against Defendants CITY, SANCHEZ (in his official capacity and in his individual capacity), and DOES 1-10)

121.   Plaintiffs repeat and reallege each and every allegation in paragraphs 1 through 120 of this Complaint with the same force and effect as if fully set forth herein.

122.   At the time of this incident, SANCHEZ was acting in his official capacity and was acting under the color of state law as alleged above, as well as in the course and scope of his employment as a police officer for the LAPD/CITY. Additionally, the CITY/LAPD was a moving force behind SANCHEZ'S violations of Plaintiffs' and DECEDENT'S constitutional rights.  SANCHEZ is sued in both his official capacity and his individual capacity on this claim.

123.   Conduct that violates the Fourth Amendment, including the use of excessive force, violates the Bane Act when performed with specific intent to deprive others of their civil rights.  A reckless disregard for a person's constitutional rights is sufficient to demonstrate this specific intent.

124.   SALVADOR SANCHEZ intentionally violated DECEDENT's and Plaintiffs' constitutional rights by detaining Plaintiffs without reasonable suspicion, by arresting or attempting to arrest Plaintiffs without probable cause, using excessive deadly force against DECEDENT and Plaintiffs, and by depriving them of timely and adequate medical care.  SALVADOR SANCHEZ'S actions demonstrate that he had a reckless disregard for DECEDENT's and Plaintiffs' constitutional rights and that he intentionally violated the constitutional rights of the Plaintiffs and DECEDENT.

125.   SALVADOR SANCHEZ'S use of deadly force against DECEDENT and Plaintiffs was excessive and unreasonable under the circumstances.  There was no immediate threat of death or serious bodily injury at the time of the shooting. DECEDENT and Plaintiffs were visibly unarmed.  DECEDENT and Plaintiffs were moving away from SALVADOR SANCHEZ when the shooting began, and PAOLA FRENCH and RUSSELL FRENCH were standing in between DECEDENT and SALVADOR SANCHEZ when the shooting began.  DECEDENT was shot in the buttocks, and PAOLA FRENCH was shot in the back.  SANCHEZ'S actions thus deprived DECEDENT and Plaintiffs of their right to be free from unreasonable

searches and seizures under the Fourth Amendment and applied to state actors by the Fourteenth Amendment.

126.   When SANCHEZ intentionally engaged in this conduct as described above, he committed acts involving violence, threats, coercion, or intimidation. California Civil Code § 52.1 ("the Bane Act") prohibits any person, including a police officer, from interfering with another person's exercise or enjoyment of his constitutional rights by threats, intimidation, or coercion, including by the use of unconstitutionally excessive force.

127.   The conduct of SALVADOR SANCHEZ was a substantial factor in causing the harms, losses, injuries, and damages suffered by DECEDENT and Plaintiffs.

128.   As a result of SANCHEZ'S conduct, DECEDENT suffered extreme mental and physical pain and suffering, loss of enjoyment of life, the loss of his life, and the loss of his of earning capacity.

129.   Also as a result of SANCHEZ'S conduct, PAOLA FRENCH and RUSSELL FRENCH both suffered serious physical injuries and disfigurement, past and future pain and suffering, past and future emotional distress, past and future loss of earnings, earning capacity, and income, and past and future medical expenses. PAOLA FRENCH and RUSSELL FRENCH will require medical attention and care for the rest of their natural lives.  PAOLA FRENCH and RUSSELL FRENCH have also been deprived of the life-long love, companionship, comfort, support, society, and care of DECEDENT, and will continue to be so deprived for the remainder of their natural lives.

130.   The CITY is vicariously liable for the wrongful acts of SALVADOR SANCHEZ pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.  During this incident, SANCHEZ was acting in the course and scope of his

-38-

employment as a police officer for the LAPD/CITY.  SANCHEZ identified himself as a police officer before, during, and after the shooting.  SANCHEZ claims that he detained, arrested (or attempted to arrest) Plaintiffs and DECEDENT and shot Plaintiffs and DECEDENT in response to what he perceived to be a public offense being committed by DECEDENT.  SANCHEZ'S conduct was incident to his duties as a police officer and was performed for the benefit of the CITY/LAPD and not to serve his own purposes or convenience, as evidenced by the fact that SANCHEZ had never seen DECEDENT or Plaintiffs before.  It is in the interest of SANCHEZ'S employer, the CITY/LAPD, for SANCHEZ to protect himself as an LAPD officer, to detain and arrest a person whom he perceives has committed a public offense, to prevent the escape of an alleged assault and battery suspect, and to act in self-defense or defense of others.

131.   Plaintiffs bring this claim as successors-in-interest to DECEDENT and seek survival damages for the violation of DECEDENT's rights.  Plaintiffs also bring this claim individually and seek damages for the violations of their rights, including for their serious physical injuries and disfigurement, their past and future pain and suffering, their past and future emotional distress, their past and future loss of earnings and their past and future medical expenses.

132.   Plaintiffs also seek statutory attorneys' fees, a multiplier under California Civil Code § 52 *et seq.*, and treble damages under this claim.

## ELEVENTH CLAIM FOR RELIEF
### Negligent Training, Hiring and Retention
(By Plaintiffs PAOLA FRENCH and RUSSELL FRENCH, individually and as successors-in-interest to DECEDENT, against Defendants CITY and DOES 1-10)

133.   Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 132 of this Complaint with the same force and effect as if fully set forth herein.

134.   On information and belief, the CITY and/or DOES 1-10 hired, trained and supervised SANCHEZ.

135.   Law enforcement agencies and their supervisory officers, including the LAPD and DOES 1-10, through the CITY, have a duty to properly hire, train, control, and supervise their employees, including their police officers.  DOES 1-10, who are police department personnel in charge of hiring, supervising, training, and retaining officers, had a duty to adequately train their police officers, including SANCHEZ, with respect to detentions, arrests, the proper use of force, including deadly force, and how police officers must conduct themselves while off-duty or off-shift.

136.   Further, there is a duty of care to individuals subjected to police officers' unreasonable use of force.  Police officers, including SANCHEZ, have a duty of care to act reasonably in interpreting the circumstances requiring use of force, including deadly force.  Moreover, it is reasonably foreseeable that SANCHEZ, who, on information and belief, has previously assaulted, beat, and injured other citizens in the past, may place other citizens at risk in the absence of adequate training.  LAPD personnel, including DOES 1-10, knew or should have known of SANCHEZ's particular propensities to use excessive and unreasonable force against individuals, but still hired and retained him anyway.

137.   Additionally, Defendants CITY and/or DOES 1-10 failed to properly and adequately train SANCHEZ, including with respect to detentions, arrests, the use of force, including deadly force, and how police officers must conduct themselves while off-duty or off-shift.  For example pursuant to LAPD Policy Nos. 252.15, 610.90, 610.11, 610.90, Defendants CITY and/or DOES 1-10 authorize and/or encourage off-duty officers, including SANCHEZ, to carry a concealed firearm, while at the same time fail to adequately train or discipline LAPD officers, including SANCHEZ, regarding the use of deadly force while off-duty, despite the obvious need for more and better training on the subject and clear notice of such

deficiencies based on prior incidents.  Additionally, Defendants CITY and/or DOES 1-10 authorize off-duty officers, including SANCHEZ, to have peace officer authority as to any public offense committed in the off-duty officer's presence (*see* LAPD Policy No. 230.10), but at the same time, these Defendants fail to adequately train or discipline their police officers regarding such authority.

138.   Along these lines, Defendants CITY and/or DOES 1-10 mandate training programs, such as "warrior training," that foster an irrational fear among both on-and off-duty police officers that everyone is out to kill the police officer and that unexpected danger lurks around every corner, which the CITY and DOES 1-10 knew would lead their police officers to overreact and use excessive deadly force, including while off-duty.

139.   Additionally, there is a recognizable duty of care to individuals who may be subjected to police officers' unreasonable use of force, including deadly force.

140.   DOES 1-10, who were SANCHEZ's supervising officers at the LAPD, took affirmative action which contributed to increased, and/or changed the risk that would have otherwise existed, that SANCHEZ would use excessive and unreasonable force against individuals with whom he came in contact.  This affirmative action includes a failure to re-train or provide additional training, and a failure to discipline/reprimand SANCHEZ, despite knowing that SANCHEZ had previously used excessive and unreasonable force against other individuals with whom he came in contact on numerous occasions.

141.   Defendants CITY and DOES 1-10, who were SANCHEZ's supervising officers at the LAPD, knew or should have known that SANCHEZ had dangerous propensities for abusing his authority and for mistreating citizens, including by making unreasonable detentions and arrests and by using excessive force.  DOES 1-10 knew or should have known of SANCHEZ's multiple past uses and allegations of uses of excessive and unreasonable force against individuals with whom he came

in contact, as well as knowing of his propensity to use excessive and unreasonable force, based on the prior complaints by individuals against SANCHEZ and/or based on his personnel records.

142.   The acts of Defendant SANCHEZ, including detaining Plaintiffs without reasonable suspicion and arresting or attempting to arrest Plaintiffs shooting Plaintiffs and DECEDENT, deprived Plaintiffs and DECEDENT of their particular rights under the United States Constitution.

143.   At all relevant times, SANCHEZ was acting within the course of his duties and employment as a police officer for the CITY/LAPD.  SANCHEZ identified himself as a police officer before, during, and after the shooting. SANCHEZ claims that he detained, arrested and shot Plaintiffs and DECEDENT in response to what he perceived to be a public offense being committed by DECEDENT.  SANCHEZ'S conduct was incident to his duties as a police officer and was performed for the benefit of the CITY/LAPD and not to serve his own purposes or convenience.  It is in the interest of SANCHEZ's employer, the CITY/LAPD, for SANCHEZ to protect himself as an LAPD officer, to detain and arrest a person whom the police officer perceives has committed a public offense, to prevent the escape of an alleged assault and battery suspect, and to act in self-defense or in defense of others.

144.   The negligence of the CITY and DOES 1-10 with respect to hiring and training of their employees caused the deprivation of Plaintiffs' and DECEDENT's rights.  Defendants' negligence in hiring and training is so closely related to the deprivation of Plaintiffs' and DECEDENT's rights as to be a substantial factor in causing Plaintiffs' and DECEDENT's ultimate injuries.

145.   As a direct and proximate result of the aforementioned conduct, DECEDENT suffered extreme mental and physical pain and suffering, loss of enjoyment of life, the loss of his life, and the loss of his of earning capacity.

THIRD AMENDED COMPLAINT FOR DAMAGES

146.   Also as a result of the shooting and denial of medical care, PAOLA FRENCH and RUSSELL FRENCH suffered serious physical injuries and disfigurement, past and future pain and suffering, past and future emotional distress, past and future loss of earnings, earning capacity and income, and past and future medical expenses.  PAOLA FRENCH and RUSSELL FRENCH will require medical attention and care for the rest of their natural lives.

147.   Plaintiffs bring this claim as successors-in-interest to DECEDENT and seek survival damages for the violation of DECEDENT's rights.  Plaintiffs also bring this claim individually and seek damages for the violations of their rights, including for their serious physical injuries and disfigurement, their past and future pain and suffering, their past and future emotional distress, their past and future loss of earnings and their past and future medical expenses.  PAOLA FRENCH and RUSSELL FRENCH also seek wrongful death damages, as the Plaintiffs have been deprived of the life-long love, companionship, comfort, support, society, and care of DECEDENT, and will continue to be so deprived for the remainder of their natural lives.

## **TWELFTH CLAIM FOR RELIEF**

### **Loss of Consortium**

(By Plaintiffs PAOLA FRENCH and RUSSELL FRENCH, in their individual capacities only, against Defendants SANCHEZ and the CITY)

148.   Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 147 of this Complaint with the same force and effect as if fully set forth herein.

149.   Plaintiffs PAOLA FRENCH and RUSSELL FRENCH were lawfully married at all relevant times and are now husband and wife.

150.   While inside of a Costco on June 14, 2019, SALVADOR SANCHEZ removed a concealed handgun from his waistband, announced himself as a police

1 officer, and, using his LAPD training on the use of force, discharged approximately

2 ten (10) rounds at PAOLA FRENCH, RUSSELL FRENCH and DECEDENT,

3 striking all three of them, including shots to the back.  SALVADOR SANCHEZ

4 intentionally fired each shot.  Out of the ten shots fired, it is believed that six (6)

5 shots total struck Plaintiffs and DECEDENT.

6      151.   The shooting was excessive and unreasonable, including because

7 DECEDENT, PAOLA FRENCH and RUSSELL FRENCH were all visibly unarmed

8 and there was no immediate threat of death or serious bodily injury to any person at

9 the time of the shooting.  DECEDENT and Plaintiffs were several feet away from

10 SALVADOR SANCHEZ and were moving away from SALVADOR SANCHEZ

11 when the shooting began.  PAOLA FRENCH and RUSSELL FRENCH were

12 standing in between SALVADOR SANCHEZ and DECEDENT when the shooting

13 began.  SANCHEZ fired multiple shots, including shots to DECEDENT's backside

14 and a shot to PAOLA FRENCH's back.  On information and belief, PAOLA

15 FRENCH and RUSSELL FRENCH were both struck by the gunfire prior to

16 DECEDENT being fatally shot.

17      152.   As a direct and proximate result of the shooting and SANCHEZ'S

18 unlawful and negligent conduct as set forth above, Plaintiffs PAOLA FRENCH and

19 RUSSELL FRENCH suffered severe and permanent physical, mental, and

20 emotional injuries and will require medical care for the remainder of their natural

21 lives.

22      153.   Before suffering these injuries, Plaintiffs PAOLA FRENCH and

23 RUSSELL FRENCH were able to and did perform all the duties of a husband and

24 wife, including assisting in maintaining the home, contributing to the household

25 income, and providing love, companionship, affection, society, sexual relations,

26 moral support, and solace to one another.

27      154.   As a direct and proximate result of the aforementioned injuries,

28 Plaintiffs PAOLA FRENCH and RUSSELL FRENCH have been unable to perform

the duties of a husband and wife, in that they can no longer assist with housework, contribute to the household income, have sexual intercourse, and participate in family, recreational or social activities with one another.  Due to the nature of the serious physical injuries sustained by Plaintiffs, as well as the severe psychological strains caused by their physical injuries, Plaintiffs are also no longer able to provide one another with love, companionship, affection, society, moral support, and solace. Because of their serious and permanent injuries, Plaintiffs will be unable to perform these duties in the future.

155.   As a direct and proximate result of the aforementioned injuries, Plaintiffs PAOLA FRENCH and RUSSELL FRENCH have been deprived, continue to be deprived, and expect to be deprived in the future, of one another's companionship, love, comfort, society, affection, sexual relations, conjugal fellowship, and physical assistance in maintaining the home.  This deprivation has caused, continues to cause, and will continue to cause Plaintiffs emotional distress, mental distress, and other injuries to be stated according to proof at trial.

156.   The CITY is vicariously liable for the wrongful acts of SALVADOR SANCHEZ pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.  During this incident, SANCHEZ was acting in the course and scope of his employment as a police officer for the LAPD/CITY.  SANCHEZ identified himself as a police officer before, during, and after the shooting.  SANCHEZ claims that he detained, arrested and shot Plaintiffs and DECEDENT in response to what he perceived to be a public offense being committed by DECEDENT.  SANCHEZ'S conduct was incident to his duties as a police officer and was performed for the benefit of the CITY/LAPD and not to serve his own purposes or convenience, as evidenced by the fact that SANCHEZ had never seen DECEDENT or Plaintiffs before.  It is in the interest of SANCHEZ'S employer, the CITY/LAPD, to protect

himself as an LAPD officer, to detain and arrest a person whom he perceives has committed a public offense, to prevent the escape of an alleged assault and battery suspect, and to act in self-defense or defense of others.

157.   Plaintiffs bring this claim individually and seek compensatory damages for their losses of consortium.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Paola French and Russell French, in each case individual and as a successor-in-interest to Kenneth French, deceased, request entry of judgment in their favor and against Defendants Salvador Sanchez (in both is official capacity and in his individual capacity), the City of Los Angeles, and Does 1-10, inclusive, as follows:

a)  For compensatory damages, including both survival damages and wrongful death damages under federal and state law, in the amount to be proven at trial, including pre-death pain and suffering, loss of life and loss of enjoyment of life;

b)  For pain and suffering, both past and future;

c)  For severe emotional distress, both past and future;

d)  For medical care and expenses, both past and future;

e)  For loss of income and lost earning capacity, both past and future;

f)  For funeral and burial expenses;

g)  For loss of consortium;

h)  For interest;

i)  For reasonable costs of this suit and attorneys' fees;

j)  For treble damages under Civil Code Section 52 *et seq*.; and

k)  For such further other relief as the Court may deem just, proper, and appropriate.


DATED:  January 18, 2021          LAW OFFICES OF DALE K. GALIPO


                                  By_____/s/ Dale K. Galipo_____
                                          Dale K. Galipo
                                          Eric Valenzuela
                                          Renee V. Masongsong
                                          Attorneys for Plaintiffs

1

## **DEMAND FOR JURY TRIAL**

2          Plaintiffs hereby demand a trial by jury.

3

4   DATED:  January 18, 2021          LAW OFFICES OF DALE K. GALIPO

5

6                                         By_____/s/ Dale K. Galipo_____

7                                            Dale K. Galipo
                                            Eric Valenzuela
8                                            Renee V. Masongsong
                                            Attorneys for Plaintiffs

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-48-