**MICHAEL N. FEUER**, City Attorney—SBN 111529x
**KATHLEEN A. KENEALY,** Chief Deputy City Attorney—SBN 212289
**SCOTT MARCUS,** Senior Assistant City Attorney —SBN 184980
**CORY M. BRENTE**, Senior Assistant City Attorney—SBN 115453
**COLLEEN R. SMITH**, Deputy City Attorney—SBN 209719
**REBEKAH YOUNG**, Deputy City Attorney—SBN 214859
200 North Main Street, 6th Floor, City Hall East, Los Angeles, CA 90012
Phone.: (213) 978-7027 / Fax: (213) 978-8785
Email: colleen.smith@lacity.org

*Attorneys for Defendant*, **CITY OF LOS ANGELES**

### UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAOLA FRENCH and RUSSELL FRENCH,<br><br>Plaintiffs,<br><br>vs.<br><br>CITY OF LOS ANGELES; SALVADOR SANCHEZ; and DOES 1-10, inclusive,<br><br>Defendants. | **CASE NO.: CV20-00416 JGB (SPx)**<br>*Hon. Jesus G. Bernal, Riverside Crtm.1.*<br>*Hon. Mag. Sheri Pym, Riverside Crtm. 3*<br><br>**DEFENDANT CITY OF LOS ANGELES' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT**<br><br>[Fed. R. Civ. P. 56]<br><br>[Filed concurrently with Defendant City's Separate Statement of Undisputed Facts and Conclusions of Law; Declaration of Colleen R. Smith and Exhibits; Application to File Under Seal; (Proposed) Order]<br><br>**DATE:       September 13, 2021**<br>**TIME:       9:00 a.m.**<br>**CTRM:       1 (Riverside)** |

**TO THE HONORABLE COURT AND TO PLAINTIFFS AND THEIR ATTORNEY(S) OF RECORD:**

**NOTICE IS HEREBY GIVEN** on September 13, 2021, at 9:00 a.m., before the Honorable Jesus G. Bernal of the United States District Court, located at 3470 Twelfth Street, Riverside, CA 92501, Defendant City of Los Angeles will move this Honorable

i

Court, pursuant to Federal Rule of Civil Procedure ("FRCP") 56(c) for summary judgment as to all claims, or partial summary judgment, on these grounds:

1. Salvador Sanchez was not acting within the course and scope of his employment when he shot and wounded Plaintiffs and killed Kenneth French. Consequently, the City cannot be held liable under California law or federal law and Plaintiffs' state law claims and federal claims—as alleged against the City—must be dismissed.

2. Plaintiffs' *Monell* claim against the City must be dismissed as well. Liability for improper custom may not be based on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy. However, this determination requires a fully-developed factual record and no such record was developed here.

This motion was filed following meet and confer efforts pursuant to Central District, Local Rule 7-3, on August 2, 2021. The parties were unable to resolve any of the issues raised in this motion.

This motion is based on Plaintiff's Third Amended Complaint, the Memorandum of Points and Authorities attached hereto, the Separate Statement of Undisputed Facts and Conclusions of Law, the Declaration of Colleen R. Smith and attached Exhibits, Application to File Under Seal, Proposed Order, and any other evidence presented at or before the time of this hearing.

Dated: August 16, 2021      **MICHAEL N. FEUER**, City Attorney
**KATHLEEN A. KENEALY,** Chief Dep. City Attorney
**SCOTT MARCUS,** Senior Assistant City Attorney
**CORY M. BRENTE**, Senior Assistant City Attorney

By: */s/ Rebekah Young*
**COLLEEN R. SMITH,** Deputy City Attorney
**REBEKAH YOUNG**, Deputy City Attorney
*Attorneys for Defendant*, **CITY OF LOS ANGELES**

# **TABLE OF CONTENTS**

I.   **PLAINTIFFS' THIRD AMENDED COMPLAINT**     **1**

II.   **SUMMARY JUDGMENT STANDARDS**     **2**

III.   **THE STATE CLAIMS (CLAIMS 6-12) MUST BE DISMISSED**     **3**

    **A. Overview of California Course and Scope Cases**     **3**

    **B. Application of California Course and Scope Cases**     **6**

IV.   **THE FEDERAL CLAIMS (CLAIMS 1-4) MUST BE DISMISSED**     **10**

    **A. Overview of Federal Course and Scope Cases**     **11**

    **B. Application of Federal Course and Scope Cases**     **14**

V.   **THE *MONELL* CLAIM (CLAIM 5) MUST BE DISMISSED**     **17**

VI.   **CONCLUSION**     **18**

1

**<u>TABLE OF AUTHORITIES</u>**

2

**Page(s)**

3

<u>Cases</u>

4

*Acevedo v. City of Farmersville,*

5
   2019 U.S. Dist. LEXIS 114804 (E.D. Cal. July 9, 2019)........................................18

6

*AE v. County of Tulare,*

7
   666 F.3d 631 (9th Cir. 2012) ...................................................................................18

8

*Alma W. v. Oakland Unified School Dist.,*

9
   123 Cal.App.3d 133 (1981) .............................................................................4, 5, 6

10

*Anderson v. Liberty Lobby, Inc.,*

11
   477 U.S. 242 (1986).............................................................................................2, 3

12

*Anderson v. Warner,*

13
   451 F.3d 1063 (9th Cir. 2006) ..........................................................................13, 15

14

*Andrews v. Seidner,*

15
   49 Cal.App.2d 427 (1942) .........................................................................................7

16

*Aydin Corp. v. Loral Corp.,*

17
   718 F.2d 897 (9th Cir. 1983) .....................................................................................2

18

*Bagley v. City of Sunnyvale,*

19
   2017 U.S. Dist. LEXIS 9948 (N.D. Cal. Jan. 24, 2017)...........................................18

20

*Bailey v. Filco, Inc.,*
   48 Cal.App.4th 1552 (1996) ......................................................................................7

21

22

*Beck v. City of Portland,*
   2010 U.S. Dist. LEXIS 118910 (D.Or. Nov. 5, 2010) ......................................11, 16

23

24

*Bhan v. NME Hosps., Inc.,*
   929 F.2d 1404 (9th Cir. 1991) ...................................................................................2

25

26

*Briscoe v. LaHue,*
   663 F.2d 713 (7th Cir. 1981) ...................................................................................11

27

28

*Carr v. Wm. C. Crowell Co.,*
   28 Cal.2d 652 (1946) .................................................................................................4

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)................................................................................2

*Cook v. Morrow*,
    2007 U.S. Dist. LEXIS 81641 (N.D.Cal. Oct. 12, 2007) .................................11, 15

*Corder v. Metro. Gov't of Nashville & Davidson Cty., Tenn.*,
    899 F.2d 14 (6th Cir. 1990) ...........................................................12

*Devereaux v. Abbey*,
    263 F.3d 1070 (9th Cir. 2001) .........................................................2

*Farmers Ins. Group v. County of Santa Clara*,
    11 Cal.4th 992 (1995) ...................................................................5

*Gibson v. Chicago*,
    910 F.2d 1510 (7th Cir. 1990) ..................................................11, 15

*Henriksen v. City of Rialto*,
    20 Cal.App.4th 1612 (1993) ...........................................................8

*Hinman v. Westinghouse Elec. Co.*,
    2 Cal.3d 956 (1970) .............................................................4, 6, 9

*Hoblitzell v. City of Ione*,
    110 Cal.App.4th 675 (2003) ...........................................................8

*Huffman v. County of Los Angeles*,
    147 F.3d 1054 (9th Cir. 1998) .......................................................16

*Hyun Ju Park v. City & Cty. of Honolulu*,
    952 F.3d 1136 (9th Cir. 2020) ..................................................12, 13

*Inouye v. County of Los Angeles*,
    30 Cal.App.4th 278 (1994) ............................................................5

*Jeffrey E. v. Central Baptist Church*,
    197 Cal.App.3d 718 (1988) ............................................................4

*John R. v. Oakland Unified Sch. Dist.*,
    48 Cal.3d 438 (1989) ..................................................................4

*Kaiser Cement Corp. v. Fischbach & Moore, Inc.*,
    793 F.2d 1100 (9th Cir. 1986) ........................................................2

*Le Elder v. Rice,*
 21 Cal.App.4th 1604 (1994) ............................................................................7

*Lisa M. v. Henry Mayo Newhall Memorial Hospital,*
 12 Cal.4th 291 (1995) ...................................................................5, 6, 7, 9

*Lopez v. Pac. Mar. Ass'n,*
 657 F.3d 762 (9th Cir. 2011) .......................................................................18

*Maria D. v. Westec Residential Sec.,*
 85 Cal.App.4th 125 (2000) ..............................................................................6

*Martinez v. Colon,*
 54 F.3d 980 (9th Cir. 1995) ....................................................................15, 16

*Mary M. v. City of Los Angeles,*
 54 Cal.3d 202 (1991) ..........................................................................4, 5, 6, 8

*Mazzola v. Feinstein,*
 154 Cal.App.3d 305 (1984) ..............................................................................3

*McDade v. West,*
 223 F.3d 1135 (9th Cir. 2000) .....................................................................16

*Moland v. City of Ceres,*
 2017 U.S. Dist. LEXIS 7054 (E.D. Cal. Jan. 18, 2017) ...........................12

*Monell v. Dep't of Soc. Servs.,*
 436 U.S. 658 (1978) ................................................................................17, 18

*Monty v. Orlandi,*
 169 Cal.App.2d 620 (1959) ..............................................................................5

*Naffe v. Frey,*
 2012 U.S. Dist. LEXIS 195526 (C.D. Cal. Dec. 10, 2012) ....................16

*Nelson v. Pima Cnty. Coll.,*
 83 F.3d 1075 (9th Cir. 1996) ..................................................................18, 19

*Oki Semiconductor Co. v. Wells Fargo Bank,*
 298 F.3d 768 (9th Cir. 2002) ............................................................3, 11, 16

*Perry v. County of Fresno,*
 215 Cal.App.4th 94 (2013) ..........................................................................5, 6

*Popescu v. Cal. Highway Patrol*,
    2021 Cal. ..........................................................................................9, 10

*Price v. Sery*,
    513 F.3d 962 (9th Cir. 2008) ...................................................................17

*Rita M. v. Roman Catholic Archbishop*,
    187 Cal.App.3d 1453 (1986) ......................................................................4

*Rodgers v. Kemper Constr. Co.*,
    50 Cal.App.3d 608 (1975) ..........................................................................4

*Roe v. Humke*,
    128 F.3d 1213 (8th Cir. 1997) ..........................................................11, 15

*Screws v. U.S.*,
    325 U.S. 91 (1945)...................................................................................15

*Thomas v. County of Riverside*,
    763 F.3d 1167 (9th Cir. 2014) .................................................................17

*Thorn v. City of Glendale*,
    28 Cal.App.4th 1379 (1994) ...................................................................5, 7

*Trevino v. Gates*,
    99 F.3d 911 (9th Cir. 1996) .....................................................................18

*Tryer v. Ojai Valley School*,
    9 Cal.App.4th 1476 (1992) ........................................................................7

*Van Ort v. Estate of Stanewich*,
    92 F.3d 831 (9th Cir. 1996) ........................................................11, 15, 16

*Zoslaw v. MCA Distrib. Corp.*,
    693 F.2d 870 (9th Cir. 1982) .....................................................................2

**Statutes**

42 U.S.C. § 1983...............................................................................10, 17

Cal. Pen. Code §§ 830.31(a) ...................................................................14

Cal. Pen. Code §830.1(a)(1)-(3) ................................................................. 14

**Misc.**

https://abc7.com/corona-shooting-costco-at-was-there-a/10940859 ............................ 3

https://oag.ca.gov/news/press-releases/attorney-general-bonta-announces-arrest-and-filing-felony-charges-against-duty ................................................................. 3

Restatement (Second) of Agency § 228 (1958) ..................................................... 3

1  **MEMORANDUM OF POINTS AND AUTHORITIES**

2  **I.    PLAINTIFFS' THIRD AMENDED COMPLAINT**

3       As alleged in Plaintiff's Third Amended Complaint ("TAC"), on June 14, 2019,

4  former LAPD Officer Salvador Sanchez ("Sanchez"), while off duty, and outside both

5  the city and county of Los Angeles, went into a Costco in order to run a personal errand.

6  While inside the store, Sanchez came into physical contact with Kenneth French,

7  ultimately shooting and killing him. Plaintiffs Paola and Russell French ("Plaintiffs")

8  are Kenneth's parents. They were present during the incident and were also shot and

9  severely wounded by Sanchez. See Dkt. 46 at 5.

10       Plaintiffs' TAC, the operative complaint in this case, alleges five § 1983 claims

11  and seven state law claims based on this incident: (1) Unreasonable Search and

12  Seizure—Unlawful Detention and Arrest (42 U.S.C. § 1983); (2) Unreasonable Search

13  and Seizure—Excessive Force (42 U.S.C. § 1983); (3) Unreasonable Search and

14  Seizure—Denial of Medical Care (42 U.S.C. § 1983); (4) Substantive Due Process,

15  Interference with Familial Relationship (Fourteenth Amendment) (42 U.S.C. § 1983);

16  (5) Municipal Liability—Unconstitutional Policy (42 U.S.C. § 1983); (6) False

17  Arrest/False Imprisonment; (7) Battery (Including Wrongful Death); (8) Negligence

18  (Including Wrongful Death); (9) Negligent Infliction of Emotional Distress; (10)

19  Violation of Bane Act (Cal. Civil Code § 52.1); (11) Negligent Hiring, Training and

20  Retention; and (12) Loss of Consortium. See Dkt. 46.

21       The City is named as a defendant in all twelve of the TAC's claims. However, as

22  discussed in detail below, Sanchez was not acting within the course and scope of his

23  employment at the time of the shooting. Consequently, the TAC's claims, as alleged

24  against the City, must be dismissed.

25  / / /

26  / / /

27  / / /

28  / / /

1

## II.    SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate when the pleadings, discovery, disclosure materials on file, and any affidavits "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable factfinder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). The amount of evidence necessary to raise a genuine issue of material fact is enough to require a jury or judge to resolve the parties differing versions of the truth at trial. *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fischbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). The moving party bears the burden of showing that there are no genuine issues of material fact. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982).

Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient[.]" *Anderson*, 477 U.S. at 252. Because the plaintiff bears the burden at trial of proving every element of every operative claim, the defense satisfies its initial burden in moving for summary judgment by merely pointing out the absence of evidence necessary to support plaintiff's case. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001). Thus, to get to a jury, the

nonmoving party must introduce significant probative evidence tending to support the complaint. *Anderson*, 477 U.S. at 249.

## III.   THE STATE CLAIMS (CLAIMS 6-12) MUST BE DISMISSED

A review of Plaintiffs' claims requires a detailed discussion of the state and federal cases outlining the course and scope of a police officer's employment. It is black letter law, however, that an employee acts outside the scope of their employment if their conduct is "too little actuated by a purpose to serve the master." Restatement (Second) of Agency § 228 (1958). In other words, "the fact that the servant acts in an outrageous manner or inflicts a punishment out of all proportion to the necessities of his master's business is evidence indicating that the servant has departed from the scope of employment in performing the act." § 245 cmt. f. As discussed in detail below, Sanchez was not acting within the course and scope of his employment during this incident. Therefore, the City cannot be held liable for Sanchez's acts and all state and federal claims—as against the City—must be dismissed.[1]

### A.   Overview of California Course and Scope Cases

Under California law, an employee acts in the course and scope of his employment when he is engaged in work he was employed to perform, or when the act is incident to his duty and is performed for the benefit of his employer, not to serve his own purposes or convenience. See *Mazzola v. Feinstein*, 154 Cal.App.3d 305, 311 (1984); see also *Oki Semiconductor Co. v. Wells Fargo Bank*, 298 F.3d 768, 776 (9th Cir. 2002) (an employee acts in the course and scope of his employment when the

---

[1]     In January 2021, Sanchez was formally fired by the LAPD. Ex. 6 (Sanchez Depo Transcript) at p. 118. (UMF 1) On August 9, 2021, the California Attorney General announced the arrest and filing of felony charges against Sanchez for voluntary manslaughter as well as assault with a firearm. See https://oag.ca.gov/news/press-releases/attorney-general-bonta-announces-arrest-and-filing-felony-charges-against-duty. The felony criminal complaint is attached to this motion as Ex. 1. (UMF 2) Later that same day, Sanchez's attorney released a statement on behalf of his client stating, in relevant part, that Sanchez "was not acting as a police officer when he was attacked. He was off duty acting as a father in self-defense and protecting his child." See https://abc7.com/corona-shooting-costco-at-was-there-a/10940859.

conduct occurred substantially within the time and space limits authorized by the employment; the employee was motivated, at least in part, by a purpose to serve the employer; and the act was of a kind that the employee was hired to perform). Ordinarily, the determination whether an employee has acted within the scope of employment presents a question of fact. It becomes a question of law, however, when the facts are undisputed and no conflicting inferences are possible. In some cases—as in this case— the relationship between an employee's work and wrongful conduct is so attenuated that a jury could not reasonably conclude that the act was within the scope of employment. See *John R. v. Oakland Unified Sch. Dist.*, 48 Cal.3d 438, 447 (1989); *Rita M. v. Roman Catholic Archbishop*, 187 Cal.App.3d 1453, 1461 (1986); *Alma W. v. Oakland Unified School Dist.*, 123 Cal.App.3d 133, 139-40 (1981); *Mary M. v. City of Los Angeles,* 54 Cal.3d 202, 213 (1991). The burden is on the plaintiff to prove that the employee's tortious—or, in this case, allegedly criminal—conduct was committed within the scope of his or her employment. *Mary M.*, 4 Cal.3d at 209.

Significantly, an employer will not be held vicariously liable for an employee's malicious or tortious conduct if the employee substantially deviated from the employment duties for personal purposes. See *Alma W.*, 123 Cal.App.3d at 39; *John R.*, 48 Cal.3d at 447; *Hinman v. Westinghouse Elec. Co.*, 2 Cal.3d 956, 960 (1970); *Jeffrey E. v. Central Baptist Church*, 197 Cal.App.3d 718, 721 (1988). Thus, if the employee "inflicts an injury out of personal malice, not engendered by the employment," *Carr v. Wm. C. Crowell Co.*, 28 Cal.2d 652, 656 (1946), or acts out of "personal malice unconnected with the employment," *Rodgers v. Kemper Constr. Co.*, 50 Cal.App.3d 608, 621 (1975), or if the misconduct is not an "outgrowth" of the employment, *Carr*, 28 Cal.2d at 657, then the employee is not acting within the scope of employment.

Stated another way, if an employee's tort is personal in nature, the offense will not give rise to a cause of action against the employer under the doctrine of respondeat superior. *Alma W.*, 123 Cal.App.3d at 140. As a result, vicarious liability has been deemed inappropriate where the employee's misconduct does not arise from the

conduct of the employer's enterprise but instead arises out of a personal dispute, see *Monty v. Orlandi*, 169 Cal.App.2d 620, 624 (1959), or is the result of a personal compulsion, see *Thorn v. City of Glendale*, 28 Cal.App.4th 1379, 1383 (1994). In such cases, the risks are engendered by events unrelated to the employment, so the mere fact that an employee has an opportunity to abuse facilities or authority necessary to the performance of his or her duties does not render the employer vicariously liable. *Alma W.,* 123 Cal.App.3d at 140.

California courts have held that an employee need not be on duty for vicarious liability to attach. *Inouye v. County of Los Angeles*, 30 Cal.App.4th 278, 280 (1994). However, as noted above, the burden is on the plaintiff to prove that the employee's tortious conduct was committed within the scope of employment. *Mary M.,* 54 Cal.3d at 209. An employer is not strictly liable for all actions of its employees during working hours. *Farmers Ins. Group v. County of Santa Clara*, 11 Cal.4th 992, 1004 (1995) (sheriff's lewd acts and requests for sexual favors from coworker did not arise within scope of his employment because such acts were "not a risk that may fairly be regarded as typical of or broadly incidental to the operation of a county jail"). Instead, "before such liability will be imposed on the employer there must be a connection between the employee's intentional tort and the employee's work." *Perry v. County of Fresno*, 215 Cal.App.4th 94, 101 (2013). There must be a "causal nexus" between the tort and the employee's work—the tort "must be engendered by or arise from the work." *Id*.

For such a causal nexus to exist, the incident leading to injury must be an outgrowth of the employment; the risk of tortious injury must be inherent in the working environment or typical of or broadly incidental to the enterprise the employer has undertaken. In short, the risk of the tort must be a generally foreseeable consequence of the enterprise. See *Perry*, 215 Cal.App.4th at 101-02. When addressing respondeat superior liability, foreseeability means "that in the context of the particular enterprise an employee's conduct is not so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer's business." *Lisa M. v.*

5

*Henry Mayo Newhall Memorial Hospital*, 12 Cal.4th 291, 299 (1995). "The question is not one of statistical frequency, but of a relationship between the nature of the work involved and the type of tort committed. The employment must be such as predictably to create the risk employees will commit intentional torts of the type for which liability is sought." *Id*. at 302. But "[i]f the employee acts out of personal malice unconnected with the employment, the employee is not acting within the scope of employment." *Perry*, 215 Cal.App.4th at 102.

In short, if an employee's tort is personal in nature, the offense will not give rise to a cause of action against the employer. *Alma W*., 123 Cal.App.3d at 140. The mere fact that an employee has an opportunity to abuse facilities or authority necessary to the performance of his or her duties does not render the employer vicariously liable. See *id*.; *Maria D. v. Westec Residential Sec*., 85 Cal.App.4th 125, 146 (2000) (although defendant-security guard was driving marked patrol car with a spotlight, wearing a uniform, and carrying a gun, which all contributed to providing the opportunity for the guard to assault plaintiff, the mere fact the guard had an opportunity to abuse the trappings of his profession did not render his employer vicariously liable for the assault). Instead, respondeat superior liability should apply only to injuries that "as a practical matter are *sure to occur* in the conduct of the employer's enterprise." *Hinman*, 2 Cal.3d at 959 (emphasis added).

**B.    Application of California Course and Scope Cases**

As discussed above, under the doctrine of respondeat superior, an employer may be held vicariously liable for an employee's torts committed within the course and scope of his or her employment. *Mary M*., 54 Cal.3d at 208. This doctrine is justified as "a rule of policy, a deliberate allocation of a risk." *Hinman*, 2 Cal.3d at 959. The theory is that an enterprise should not be able to disclaim responsibility for injuries occurring in the course of its characteristic activities. *Mary M*., 54 Cal.3d at 208. Rather, such losses must be looked upon as a required cost of doing business. *Hinman*, 2 Cal.3d at 959-60. Accordingly, ascertaining whether the risk involved was typical or broadly incidental

6

to the enterprise undertaken by the employer determines the scope of employment. *Le Elder v. Rice*, 21 Cal.App.4th 1604, 1607 (1994).

To hold an employer liable, however, the employee must be engaged either in the duties that he was employed to perform or in those acts that incidentally or indirectly contribute to the employer's service. *Tryer v. Ojai Valley School*, 9 Cal.App.4th 1476, 1481 (1992). Although an employee does not need to be engaged in an act directly benefiting the employer, respondeat superior liability is not synonymous with strict liability. *Bailey v. Filco, Inc.,* 48 Cal.App.4th 1552, 1560 (1996). A nexus is required, i.e., that the tort be engendered by or arise from the work. *Lisa M.*, 12 Cal.4th at 298. However, this nexus must be distinguished from "but for" causation. "That the employment brought tortfeasor and victim together in time and place is not enough." *Id*. Under the traditional rule, an act is within the scope of employment if: (a) it is of the kind the employee is employed to perform; (b) it occurs substantially within the authorized time and space limits; and (c) it is actuated, at least in part, by a purpose to serve the employer. *Thorn*, 28 Cal.App.4th at 1382. But no liability arises "where the agent for however brief a space of time, has ceased to serve his principal[.]" *Andrews v. Seidner*, 49 Cal.App.2d 427, 430 (1942).

Few, if any, of these conditions are present here. It is undisputed that Sanchez was off duty at the time of the incident, see Ex. 6 (Sanchez Depo Transcript) at p. 89: 21-25; Ex. 7 (FID Interview Transcript) at p. 67: 2-5, p. 116: 11-12 (UMF 3), worked for a law enforcement agency unconnected in any way, shape or form to Riverside County, and that the firearm he had with him was his personal weapon. See Ex. 6 (Sanchez Depo Transcript) at pp. 69-70 (UMF 5). It is also undisputed that Sanchez was not wearing a uniform, bulletproof vest, badge, police hat or utility belt, did not arrive at the location in a marked police unit, and, in fact, did not display any indicia which would have clearly revealed his employer.[2] See Ex. 6 (Sanchez Depo Transcript) at p.

---

[2]     Sanchez was wearing a polo shirt, shorts and tennis shoes that day. See Ex. 6 (Sanchez Depo Transcript) at p. 66:18.

66:16-19, p. 69: 17-24 and Ex. 7 (FID Interview Transcript) at p. 116: 16-19 ("I didn't have any sort of visual identification of me as an officer, outside of the fact that I had my ID tucked into my wallet") (UMF 4).[3] It is also undisputed that Sanchez did not attempt to deescalate the incident verbally before firing his weapon and failed to warn other shoppers of any perceived danger, either before or after the shooting. While Plaintiffs allege that Sanchez said he was a police officer prior to the shooting, see TAC at ¶¶ 15, 21, 53, 97, 111, Sanchez told LAPD investigators within days of the shooting that, in fact, he *never identified* himself as a police officer before opening fire. See Ex. 7 (FID Interview Transcript) at p. 36:15-16 (UMF 6). Although Sanchez told a responding Corona PD officer that he was an off duty officer, Sanchez did not relay this fact to Plaintiffs. Ex. 7 (FID Interview Transcript) at pp. 115-116. Sanchez pointedly refused to answer this question when subsequently deposed by the City. See Ex. 6 (Sanchez Depo Transcript) at p. 78:18-19 and p. 79:1-2.[4]

Nevertheless, under a fair reading of the complaint and evidence gathered during discovery, Sanchez's charged crimes did not flow from a misuse of his office authority and his conduct was not an outgrowth of his employment.[5] Instead, by all accounts, this incident was a personal encounter, not fairly attributable to his employer. Indeed, even though an off-duty officer is not categorically prohibited from responding to a crime, see Ex. 4 (PMK Depo Transcript) at p. 40: 8-11, few, if any, cases have ever held that an off-duty officer—on a personal errand, in a completely separate jurisdiction, not in uniform or a marked vehicle or any other obvious visible trappings of his office, without

---

[3]    See *Mary M.*, 54 Cal.3d at 207 (city could be held vicariously liable when police officer committed sexual assault while on duty and in uniform, wore a badge and a gun, and was driving a marked police unit).

[4]    Rather than create a disputed issue of fact, the City assumes that Sanchez told Plaintiffs he was an officer for the purposes of this motion and have collected cases where officers identified themselves as police officers and reviewing courts *still* determined that the officer did not act within the course and scope of his employment.

[5]    California courts have found law enforcement officers to be acting outside the course and scope of their employment when the officers' alleged misconduct did not flow from a misuse of their official authority. See, e.g., *Hoblitzell v. City of Ione*, 110 Cal.App.4th 675 (2003); *Henriksen v. City of Rialto*, 20 Cal.App.4th 1612 (1993).

flashing his badge, without wielding a police radio, or other readily identifiable LAPD-issued equipment, and without any objective or demonstrable evidence that a public offense was being committed in his presence, which likely explains his failure to warn other shoppers of any perceived danger—was acting within the course and scope of his employment. Because Sanchez's acts fell outside the scope of his employment with the LAPD, the City cannot be held vicariously liable for his conduct as a matter of law.

Plaintiffs also fail to establish a causal nexus in this case. The nexus required here must be distinguished from "but for" causation. See *Lisa M.,* 12 Cal.4th at 298. Instead, as noted above, respondeat superior liability should apply only to the types of injuries that "as a practical matter are sure to occur in the conduct of the employer's enterprise." *Hinman*, 2 Cal.3d at 959. "The employment, in other words, must be such as predictably to create the risk employees will commit intentional torts of the type for which liability is sought." *Lisa M*., 12 Cal.4th at 299. No such showing can be made here. Indeed, Sanchez's decision to open fire on unarmed civilians in the middle of a Costco, while off duty, out of uniform, and in another jurisdiction entirely, cannot be deemed conduct that is "sure to occur" while working as an LAPD officer. See *Hinman*, 2 Cal.3d at 959. Thus, the City cannot be held vicariously liable for Sanchez's conduct as a matter of law. As a result, Plaintiffs' state law claims against the City must be dismissed.

A recent California case—although unpublished—demonstrates the application of California's course and scope precedent. In *Popescu v. Cal. Highway Patrol*, 2021 Cal.App.Unpub. LEXIS 3640 (June 2, 2021), an off-duty CHP officer shot the plaintiff while the plaintiff stood in the entry way of his own home. The plaintiff alleged that the officer was acting in the course and scope of his employment at the time. Before the shooting, the officer repeatedly told the plaintiff that he was a cop and was carrying a gun. When the plaintiff called 911, the officer said the plaintiff did not need to call the police because *he was the police*. The officer also used his phone to take a picture of the license plate on the plaintiff's car. *Id*. at *3. The officer then approached the plaintiff's front door and said "put your gun down" even though the plaintiff was not

armed and had not been armed at any point during his confrontation. The officer fired two shots, one of which hit the plaintiff in the back. *Id*. at *4. The trial court granted the defendant's demurrer and the appellate court affirmed.

With respect to vicarious liability, the appellate court first noted that "the mere fact that an employee has an opportunity to abuse facilities or authority necessary to the performance of his or her duties does not render the employer vicariously liable." *Id.* at *9 (citing *Farmers Ins. Group*, 11 Cal.4th at 1006.) Furthermore, there was an insufficient causal nexus between the officer's criminal act and his employment as a CHP officer. The officer was not driving a CHP car, was not being paid by the CHP at the time of the shooting, and there was no allegation that he claimed to be investigating a crime or performing a public safety function such as warning residents about a nearby forest fire or encouraging them to evacuate. *Id*. at *11-12. Although the officer said he was a cop and that he had a gun, but never displayed a badge or identified his employer. He was not in uniform. There was no allegation that the officer verbally threatened to arrest the plaintiff or told the plaintiff he was under arrest. *Id*. at *12. In short, the appellate court determined, because the officer's confrontation with the plaintiff was not generated by, or an outgrowth of, his workplace responsibilities, the officer's shooting of the plaintiff was outside the scope of his employment. *Id.* at *13. Although admittedly not precedential, there is little to distinguish *Popescu* from the case at bar.

## IV.   THE FEDERAL CLAIMS (CLAIMS 1-4) MUST BE DISMISSED

Plaintiff's § 1983 causes of action must be dismissed for the same reason outlined above—Sanchez was not acting within the course and scope of his employment at the time of the shooting. Federal cases outline a different test when making this determination, although the test deviates in form more than substance. As a result, federal cases and their application are discussed in detail below.

/ / /

/ / /

### A.      Overview of Federal Course and Scope Cases

Under federal law, an employee is deemed to have been acting within the course and scope of his or her employment when: (1) the conduct occurred substantially within the time and space limits authorized by the employment; (2) the employee was motivated, at least in part, by a purpose to serve the employer; and (3) the act was of a kind that the employee was hired to perform. *Oki*, 298 F.3d at 776. With respect to law enforcement, federal courts have held that even if a police officer was recognized as an officer—or even if he expressly announced that he was an officer—this is insufficient to conclude that the officer was acting in the course and scope of his duties as a police officer. See *Cook v. Morrow*, 2007 U.S. Dist. LEXIS 81641, at *19-20 (N.D.Cal. Oct. 12, 2007) (officer's statement that he was from the Oakland Police Department was not enough to show the officer was "acting, purporting, or pretending to act in the performance of his official duties"); *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 849 (9th Cir. 1996) ("Merely because a police officer is recognized as an individual employed as a police officer does not alone transform private acts into acts under color of state law"); see also *Roe v. Humke*, 128 F.3d 1213, 1217 (8th Cir. 1997) (knowledge of an off-duty officer's status as an officer is insufficient to convert actions taken in the pursuit of private interests into actions taken under color of state law); *Gibson v. Chicago*, 910 F.2d 1510, 1516 (7th Cir. 1990) (holding that a "mere assertion that one is a state officer does not necessarily mean that one acts under color of state law").

Indeed, federal courts have held that in some circumstances officers do not act under color of state law even when they are on duty and wearing uniforms, which presumably creates an awareness of their status as officers on the part of reasonable observers. See *Briscoe v. LaHue*, 663 F.2d 713, 721 n.4 (7th Cir. 1981) (holding that "[a]cts committed by a police officer even while on duty and in uniform are not under color of state law unless they are in some way related to the performance of police duties"). As aptly stated in *Beck v. City of Portland*, 2010 U.S. Dist. LEXIS 118910, at *19 (D.Or. Nov. 5, 2010): "[W]hile plaintiff may have known that [defendant] was a

police officer, that alone does not cloak [defendant's] actions with official authority. If that were the test, a police officer's every action would be subject to a federal constitutional claim by any family member, neighbor, friend, etc. based only on the status of being in law enforcement. The caselaw does not support such a standard."

Furthermore, actions taken in securing and controlling the scene after a shooting takes place does not render the shooting an act committed under color of law. See *Corder v. Metro. Gov't of Nashville & Davidson Cty., Tenn*., 899 F.2d 14 (6th Cir. 1990) (acts taken after shooting incident were not relevant to analysis of whether officer was acting under color of law where officer was clearly acting in a personal capacity prior to the altercation); see also *Moland v. City of Ceres*, 2017 U.S. Dist. LEXIS 7054, at *14-15 (E.D. Cal. Jan. 18, 2017) (citing *Corder* and further finding that facts plaintiff added to the FAC to establish the officer acted under color of law—he identified himself as a police officer before he shot plaintiff and used his service weapon—"do not indicate that [the officer] was cloaked in authority or that he used his authority over [the plaintiff] in depriving him of his constitutional rights") (internal quotation marks omitted).

The Ninth Circuit recently addressed this issue as well. In *Hyun Ju Park v. City & Cty. of Honolulu*, 952 F.3d 1136 (9th Cir. 2020), the plaintiff was shot while working as a bartender after an intoxicated, off-duty, police officer tried to load his already-loaded firearm. In relevant part, the plaintiff alleged the officer's reckless handling of his firearm exhibited deliberate indifference to her personal safety, and that two other off-duty police officers were liable for failing to intervene to stop the dangerous conduct. The plaintiff settled her claims against the officer who shot her, and the district court granted the remaining defendants' motion to dismiss. *Id*. at 1139-40. The Ninth Circuit affirmed. The court first noted that this circuit has adopted a three-part test for determining when a police officer, although not on duty, has acted under color of state law. The officer must have: (1) acted or pretended to act in the performance of his official duties; (2) invoked his status as a law enforcement officer with the purpose and effect of influencing the behavior of others; and (3) engaged in conduct that "related in

some meaningful way either to the officer's governmental status or to the performance of his duties." *Anderson v. Warner*, 451 F.3d 1063, 1068-69 (9th Cir. 2006) (internal quotation marks omitted).

In this case, the plaintiff did not make it past the first step. *Hyun Ju Park*, 952 F.3d at 1140. "The complaint does not plausibly allege that either officer was exercising, or purporting to exercise, his official responsibilities during the events that led to her injuries. Both officers were off-duty and dressed in plain clothes, drinking and socializing at the bar in their capacity as private citizens. They never identified themselves as officers, displayed their badges, or specifically associated their actions with their law enforcement duties … Thus, even accepting [plaintiff's] allegations as true, there is no sense in which [the officers] performed or purported to perform their official duties on the night in question." *Id*. The plaintiff alleged that, although the officers were off-duty and present at the bar in their capacity as private citizens, everything changed when they saw the other officer pull out his firearm. According to the complaint, the officers became "effectively on-duty" at that moment, as the Honolulu Police Department required even its off-duty officers to affirmatively protect the community when a dangerous situation arose in their presence. "But as our cases make clear, the critical question is not whether the officers were technically on or off duty, but instead whether they exhibited sufficient indicia of state authority for us to conclude that they were acting in an official capacity." *Id*. at 1140-41.

Here, Plaintiffs do not make it past the second step. As noted above, Sanchez bore no visible indicia revealing his employer, He was not in a standard police uniform. He was not fully equipped with badge, gun, ammunition, handcuffs, radio, and body camera. He did not emerge from a black and white police car with its roof-mounted emergency lights flashing. Even if we assume that Sanchez said that he was a police officer, this invocation did not influence the behavior of others. See *Anderson*, 451 F.3d at 1068-69. Nor does it appear that Plaintiffs' reaction was based on any alleged assertion of authority by Sanchez. Rather, it appears Plaintiffs reacted to the weapon

they saw in Sanchez's hand. See Ex. 5 (Paola French Depo Transcript) at pp. 30-32 (Plaintiffs' reaction was to repeatedly say: "Don't shoot!" to Sanchez). In other words, Sanchez's alleged invocation did not influence or effect Plaintiffs' actions—the personal weapon he pointed at them did. Consequently, the fact that Sanchez may have identified himself as a police officer cannot—by itself—support the proposition that Sanchez was acting within the course and scope of his employment.

### B. Application of Federal Course and Scope Cases

Plaintiffs contend that Sanchez was acting in the performance of his official duties as a police officer at the time of the shooting. See TAC at ¶ 18. But in order for Sanchez to have acted in the performance of his official duties outside of his jurisdiction, a public offense posing an immediate danger to person or property had to be committed in his presence. See Cal. Pen. Code §§ 830.31(a), 830.1(a)(1)-(3). However, Plaintiffs have conspicuously declined to allege that any public offense took place in Sanchez's presence and subsequently confirmed they did not commit any such offense. See Ex. 2 (Paola French's Responses to City's RFA Set One) at pp. 4-5; Ex. 3 (Russell French Responses to City's RFA Set One) at pp. 4-5 (UMF 7). To the contrary, Plaintiffs repeatedly maintain that they never posed a threat to Sanchez. See Complaint at ¶¶ 16, 39, 54, 98, 125, 151. Indeed, if Plaintiffs had alleged that Sanchez was, in fact, responding to a public offense at the time of the shooting, then any statements he made regarding his status as a police officer would have been appropriate. Nevertheless, even if Plaintiffs allege only that Sanchez *purported* to be acting in the performance of his official duties, their claims against the City still fail as a matter of law.

Although not dispositive factors, it is undisputed that Sanchez was off-duty, not in uniform, did not drive a police unit to the location, and did not display a badge or any other visible indicia of his employment at the time. Furthermore, as noted above, recognizing an off-duty police officer as an officer does not convert his conduct into action taken under color of state law. Indeed, even if the expressly officer stated that he was a police officer, this is insufficient to conclude the officer was acting in the course

14

and scope of his duties as a police officer. See *Cook*, 2007 U.S. Dist. LEXIS 81641, at *19-20 (officer's statement that he was from the Oakland Police Department was not enough to show officer was "acting, purporting, or pretending to act in the performance of his official duties"); see also *Van Ort*, 92 F.3d at 849 ("Merely because a police officer is recognized as an individual employed as a police officer does not alone transform private acts into acts under color of state law"); *Roe*, 128 F.3d at 1217 (knowledge of an off-duty officer's status as an officer is insufficient to convert actions taken in the pursuit of private interests into actions taken under color of state law); *Gibson*, 910 F.2d at 1516 ("[A] mere assertion that one is a state officer does not necessarily mean that one acts under color of state law").

Next, this court must determine whether Sanchez's alleged pretense of acting in the performance of his duties had the purpose and effect of influencing Plaintiffs' behavior. See *Anderson*, 451 F.3d at 1069. As noted above, Sanchez's statement that he was a police officer did not cause him to gain any kind of control over Plaintiffs—his personal weapon did. Therefore, the statement cannot by itself support the proposition that Sanchez was acting within the course and scope of his employment or under color of state law at the time of the incident. Indeed, no state or federal case has ever held that a statement alone is sufficient to find that an off-duty officer—on a personal outing in a wholly separate jurisdiction, not in uniform, or a marked vehicle, or any other visible indicia of his office, without flashing a badge, belt or baton, without wielding a radio or other police-issued equipment—was acting within the course and scope of his employment or under color of state law.

Finally, the challenged conduct "must be related in some meaningful way either to the officer's governmental status or to the performance of his duties." *Anderson*, 451 F.3d at 1069. Here, Sanchez's actions were not related, much less meaningfully related, to his governmental status as an LAPD officer or the performance of his duties. Instead, the officer was acting "in the ambit of his personal pursuits." *Screws* v. U.S., 325 U.S. 91, 111 (1945); see also *Martinez v. Colon*, 54 F.3d 980, 986 (9th Cir. 1995) (explaining

that not every action undertaken by a person who happens to be a police officer is done under the color of state law). Here, Sanchez did not act in a meaningful way in relation to the performance of his duties. Instead, he was "pursuing his own goals and was not in any way subject to control by [his public employer]." *Van Ort*, 92 F.3d at 838 (citation omitted). Thus, the City cannot be held liable for Sanchez's conduct.

Additionally, even if the weapon used by Sanchez had been his service weapon or an authorized backup weapon, merely using the government employer's resources during the course of a private act does not transform private behavior into state action. See *Huffman v. County of Los Angeles*, 147 F.3d 1054, 1056-60 (9th Cir. 1998) (rejecting § 1983 claim because county could not have foreseen that an off-duty deputy would become intoxicated and shoot a patron in a bar fight even though deputies were required to carry a gun when off-duty and the gun used to shoot and kill the victim in this case was "loaded with department-issued ammunition"); *Van Ort*, 92 F.3d at 839 (concluding that off-duty police officer engaging in a home robbery and carrying handcuffs and a gun was, as a matter of law, insufficient to show action under color of state law); *Martinez*, 54 F.3d at 987-88; *Naffe v. Frey*, 2012 U.S. Dist. LEXIS 195526, at *16 (C.D. Cal. Dec. 10, 2012) ("[A] public employee does not wear his or her 'public employee hat' at all times, no matter what their activities, even if those activities have some tangential relation to their role(s) or duties"); *Beck*, 2010 U.S. Dist. LEXIS 118910, at *19 ("[W]hile plaintiff may have known that [the defendant] was a police officer, that alone does not cloak [the officer's] actions with official authority. If that were the test, a police officer's every action would be subject to a federal constitutional claim by any family member, neighbor, friend, etc. based only on the status of being in law enforcement. The caselaw does not support such a standard"); cf. *McDade v. West*, 223 F.3d 1135, 1140-41 (9th Cir. 2000).

Nor is there any evidence supporting the factors set forth in *Oki Semiconductor Co. v. Wells Fargo Bank*. First, the underlying conduct did not occur substantially within the time and space limits authorized by Sanchez's employment. For all intents

and purposes, this was a personal matter between Sanchez and Plaintiffs that took place well outside LAPD's jurisdiction. Second, it does not appear that Sanchez was motivated in any way by a purpose to serve his employer. Rather, Sanchez committed his charged crimes out of personal malice unconnected with his employment. Finally, the underlying act was not of a kind that Sanchez was hired to perform. Sanchez was hired to protect and serve the citizens of the City of Los Angeles, not engage in personal conflicts while on a personal shopping trip in a different city and county altogether. There are simply no facts supporting the proposition that Sanchez was acting within the course and scope of his employment during the incident or that he was acting under color of state law. Because Plaintiffs have failed to adduce significant probative evidence tending to support the operative complaint's allegations, the remaining substantive claims against the City must be dismissed.

## V.    THE *MONELL* CLAIM (CLAIM 5) MUST BE DISMISSED

A municipality cannot be held liable under § 1983 for the actions of its employees under the theory of respondeat superior. See *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). A municipality can only be held liable for injuries caused by the execution of its policy or custom or by those whose edicts or acts may fairly be said to represent official policy. *Id*. at 694. Municipal liability under *Monell* may be premised on: (1) conduct pursuant to a formal or expressly adopted official policy; (2) a longstanding practice or custom which constitutes the "standard operating procedure" of the local government entity; (3) a decision of a decision-making official who was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision; or (4) an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate. See *Thomas v. County of Riverside*, 763 F.3d 1167, 1170 (9th Cir. 2014); *Price v. Sery*, 513 F.3d 962, 966 (9th Cir. 2008).

/ / /

17

Here, Plaintiffs essentially alleged that the City has a policy, custom, or practice of permitting the occurrence of the type of wrongs alleged in the complaint, which is insufficient. See *Bagley v. City of Sunnyvale*, 2017 U.S. Dist. LEXIS 9948, at *46-47 (N.D. Cal. Jan. 24, 2017) ("Plaintiff's allegation that Sunnyvale has a policy '[t]o use or tolerate the use of excessive and/or unjustified force' is too vague to sufficiently allege a policy under *A.E.* Indeed, because Plaintiff has brought an excessive force claim, Plaintiff is essentially alleging that Sunnyvale has an 'official policy, custom, or practice of knowingly permitting the occurrence of the type of wrongs' alleged elsewhere in the complaint"). Such bare bones recitations are insufficient to state a *Monell* claim. See *AE v. County of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (["T]o be entitled to the presumption of truth, allegations in a complaint … may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively").

Furthermore, a longstanding practice or custom is one that is so "persistent and widespread" that it constitutes a "permanent and well settled" governmental policy. *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Id*. However, this determination requires a fully-developed factual record. *Acevedo v. City of Farmersville*, 2019 U.S. Dist. LEXIS 114804, at *32 (E.D. Cal. July 9, 2019). Despite the TAC's allegations, no such record was subsequently developed here. Consequently, the *Monell* claim must be dismissed.

## VI.   **CONCLUSION**

At the summary judgment stage, a party no longer can rely on allegations alone, *Lopez v. Pac. Mar. Ass'n*, 657 F.3d 762, 768 (9th Cir. 2011), because "allegation and speculation do not create a factual dispute for purposes of summary judgment." *Nelson v. Pima Cnty. Coll.*, 83 F.3d 1075, 1081-82 (9th Cir. 1996) (citation omitted). If a

plaintiff fails to present any evidence to support a claim, summary judgment in favor of the defendant is appropriate. *Id*. Such is the case here. Therefore, the City respectfully requests that the TAC's claims against the City be dismissed and that judgment be granted in favor of the City.

Dated: August 16, 2021   **MICHAEL N. FEUER**, City Attorney
**KATHLEEN A. KENEALY,** Chief Dep. City Attorney
**SCOTT MARCUS,** Senior Assistant City Attorney
**CORY M. BRENTE**, Senior Assistant City Attorney

By: */s/ Rebekah Young*
**COLLEEN R. SMITH,** Deputy City Attorney
**REBEKAH YOUNG**, Deputy City Attorney
*Attorneys for Defendant*, **CITY OF LOS ANGELES**