1  LAW OFFICES OF DALE K. GALIPO
   Dale K. Galipo, SBN 144074
2  Eric Valenzuela, SBN 284500
   Renee V. Masongsong, SBN 281819
3  21800 Burbank Blvd., Suite 310
   Woodland Hills, California 91367
4  Telephone:  (818) 347-3333
   Facsimile:  (818) 347-4118
5  E-mail:    dalekgalipo@yahoo.com
              evalenzuela@galipolaw.com
6              rvalentine@galipolaw.com

7  Attorneys for *Plaintiffs*

8              **UNITED STATES DISTRICT COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10

11

12  PAOLA FRENCH and RUSSELL
    FRENCH,

13                        Plaintiffs,

14        vs.

15  CITY OF LOS ANGELES;
    SALVADOR SANCHEZ,
16

17                        Defendants.

18

19

20

21

22

23

24

25

26

27

28

Case No. 5:20-cv-00416-JGB-SP

*Honorable Jesus G. Bernal*

**PLAINTIFFS' NOTICE OF CROSS-MOTION AND CROSS-MOTION FOR SUMMARY ADJUDICATION; OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; COMBINED MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF PLAINTIFFS' CROSS-MOTION FOR PARTIAL SUMMARY ADJUDICATION**

*[Filed concurrently herewith Proposed Order; Declaration of Eric Valenzuela and Exhibits thereto; Separate Statement of Facts]*

**DATE: September 27, 2021
TIME: 9:00 a.m.
CTRM: Zoom**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

  **PLEASE TAKE NOTICE** that on September 27, 2021, at 9:00 a.m., before the Honorable Jesus G. Bernal of the United States District Court, located at 3470 Twelfth Street, Riverside, CA 92501, Plaintiffs Russell and Paola French will and hereby do move, pursuant to Federal Rule of Civil Procedure, Rule 56, for summary adjudication in their favor on these grounds: (1) Salvador Sanchez was acting within the course and scope of his employment with the City of Los Angeles and its police department when he fired the shots at Plaintiffs and Kenneth French, and the City can therefore be held vicariously liable under California and federal law; (2) Salvador Sanchez was acting under color of state law at the time of the shooting, and the City of Los Angeles does not have standing to move for summary judgment on Plaintiffs' federal law claims.

**Statement of Local Rule 7-3 Compliance**:  This Motion is made following correspondence between counsel on August 30, 2021, during which no resolution could be reached.

DATED:  August 30, 2021          LAW OFFICES OF DALE K. GALIPO


                    By_____/s/ *Dale K. Galipo*_____
                         Dale K. Galipo
                         Eric Valenzuela
                         Renee V. Masongsong
                         Attorneys for Plaintiffs

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ...................................................................................... 1

II.    STATEMENT OF FACTS ......................................................................... 2

III.   LEGAL STANDARD ................................................................................ 6

IV.    SUMMARY ADJUDICATION SHOULD BE GRANTED IN PLAINTIFFS'

       FAVOR ...................................................................................................... 7

V.     PLAINTIFFS' STATE LAW CLAIMS SURVIVE ................................. 7

VI.    SANCHEZ WAS ACTING UNDER COLOR OF STATE LAW ...................... 16

VII.   PLAINTIFFS' MONELL CLAIM SURVIVES ...................................... 22

VIII.  CONCLUSION........................................................................................ 25

PLAINTIFFS' CROSS MOTION AND OPPOSITION

1

2

## <u>TABLE OF AUTHORITIES</u>

3

<u>Cases</u>

4   *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167–68 (1970*)* ....................................23

5   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 258 (1986) .................................6, 7

6   *Anderson v. Warner*, 451 F.3d 1063 (9th Cir. 2006)....................................16, 17, 20

7   *Bailey v. Filco, Inc.*, 48 Cal. App. 4th 1552, 1560 (1996) ...........................................9

8   *Bradley v. San Joaquin*, No. 2:17-cv-2313-KJM-AC, 2018, WL 4026996 (E.D. Cal. Aug. 23, 2018)......................................................................................................14, 15

9

10  California Penal Code § 830.1 .....................................................................................11

11  *Celotex Corp. v. Catrett,* 477 U.S. 317, 327 (1986).....................................................7

12  *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123, 127 (1988) ...............................23

13  *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011)............................23

14  *Farmers Ins. Gp. v. County of Santa Clara*, 11 Cal. 4th 992, 1004 (1995) ...............8

15  *Gibson v. Chicago*, 910 F.2d 1510, 1518 (7th Cir. 1990) ........................................23

16  *Hinman v. Westinghouse Elec. Co.*, 2 Cal.3d 956, 960 (1970) ................................10

17  *Hopkins v. Andaya*, 958 F.2d 881, 888 (9th Cir. 1992)...............................................7

18  *Hyun Ju Park v. City & County of Honolulu*, 952 F.3d 1136 (9th Cir. 2020) ....18, 19

19  *Inouye v. County of Los Angeles*, 30 Cal. App. 4th 278 (1994) ...............................11

20  *John R. v. Oakland Unified School Dist*. 48 Cal. 3d 438 (1998) ...............................8

21  *Johnson v. Lewis*, 120 Cal. App. 4th 443 (2004) .....................................................11

22  *Lisa M. v. Henry Mayo Newhall Mem'l Hosp.*, 12 Cal. 4th 291 (1995) ..............9, 13

23  *Long v. Valentino*, 216 Cal. App. 3d 1287 (1989) ....................................................11

24  *Martinez v. Colon*, 54 F.3d 980 (1st Cir. 1995) .................................................17, 20

25  *Mary M. v. City of Los Angeles*, 54 Cal. 3d 202, 214 (1991)..............................9, 10

26  *McDade v. West*, 223 F.3d 1135 (9th Cir. 2000)....................................................17, 21

27  *Monell v. Department of Social Services*, 436 U.S. 658 (1978)................................23

28  *Oki Semiconductor Co. v. Wells Fargo Bank*, 298 F.3d 768 (9th Cir. 2002) .............9

*Ouzts v. Md. Nat'l Ins. Co.*, 505 F.2d 547 (9th Cir. 1974) .........................................16

*Pacific Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 1041 ..............................................9

*Pelletier v. Fed. Home Loan Bank*, 968 F.2d 865 (9th Cir. 1992) ............................8

*People v. Derby*, 177 Cal. App. 2d 626 (1960) ..........................................................11

*Perez v. Van Groningen & Sons, Inc.*, 41 Cal. 3d 962 (1986) ................................8, 9

*Plumeau v. Sch. Dist. No. 40 Cty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997) ...23

*Policeman's Benev. Ass'n of N.J. v. Washington Tp.*, 850 F.2d 133, 141 (3d Cir.1988) .............................................................................................................................10

*Screws v. United States*, 325 U.S. 91, 111 (1945) ......................................................22

*Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) ...................................................23

*Tryer v. Ojai Valley School*, 9 Cal. App. 4th 1476, 1481 (1992) .............................16

*United States v. Classic*, 313 U.S. 299 (1941) ....................................................17, 21

*United States v. Fay*, 545 F. Supp. 2d 1067, 1069, 1072 (2008) .............................11

*United States v. One Parcel of Real Prop.*, 904 F.2d 487, 491–92 (9th Cir. 1990)....7

*Van Ort v. Estate of Stanewich*, 92 F.3d 831 (9th Cir. 1996)...................................17

*Van Ort v. Estate of Stanewich*, 92 F.3d 831, 849 (9th Cir. 1996)...........................22

*West v. Atkins*, 487 U.S. 42 (1988) .............................................................................17

## Other Authorities

Fed. R. Civ. P. 56(c) .....................................................................................................6

LAPD Policy Manual §§ 610.10 ....................................................................3, 12, 13

LAPD Policy Manual Sections 525.15...........................................................................23

LAPD Policy Manual, section 230.10..................................................................passim

LAPD Policy Section 230.10..................................................................................6, 24

LAPD's Training Bulletin, Volume 46, Issue 2 ...............................................2, 5, 13

## Codes

California Penal Code Section 830.1...............................................................1, 6, 13

California Penal Code § 836...........................................................................................11

Penal Code § 25450 ................................................................................. 12,13

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

This civil rights and state tort action arises from the officer-involved shooting of Kenneth French ("Decedent"), Paola French and Russell French ("Plaintiffs"), by Los Angeles Police Department ("LAPD") Officer Salvador Sanchez ("Sanchez"). On June 14, 2019, Decedent and Plaintiffs went to their local Costco warehouse to shop. While inside of Costco, Sanchez announced himself as a police officer, removed his concealed LAPD-approved firearm from his waistband, used his LAPD training on detentions, arrests and the use of deadly force, and, despite Plaintiffs' please not to shoot their non-verbal son, discharged approximately ten rounds of LAPD-provided ammunition at Decedent and Plaintiffs, striking all three of them, including shots to the back. The shots killed Decedent and seriously injured Plaintiffs. After the shooting, Sanchez told responding officers that he believed he was responding to an "active shooter" situation when he fired the shots. Sanchez testified at his deposition that, as admitted in discovery responses and his Employee Report, he believed he was acting with peace officer authority under color of law and in the course and scope of his duties as an LAPD officer during the incident. Sanchez affirmed that he responded to the incident as an LAPD officer, pursuant to California Penal Code Section 830.1 and LAPD Policy Manual, section 230.10, both of which extend police officer authority to any place in the state.

Defendant City of Los Angeles' ("City") motion for summary judgment should be denied, and Plaintiffs' cross-motion for partial summary adjudication should be granted, because the undisputed facts show that Sanchez was acting in the course and scope of his employment as a police officer for the City/LAPD and under color of state law during the incident. Sanchez believed that he was acting under color of law and in the course and scope of his duties as an LAPD officer at the time of the shooting, and Sanchez was responding to what he believed to be an assault and battery or active shooter situation, granting him police officer authority outside

LAPD's usual geographic area. Sanchez would not have been carrying a concealed weapon in Costco if he were not an LAPD officer. The City approved the firearm and ammunition. Sanchez used his LAPD training. Sanchez identified himself as a police officer multiple times after the shooting, and the City investigated the shooting as if it were an on-duty officer involved shooting. Based on these undisputed facts, summary adjudication should be granted in Plaintiffs' favor, and this Court should enter an order finding that Sanchez was acting in the course and scope of his duties and under color of state law at the time of the shooting. In the alternative, at minimum, this Court should deny Defendant City's motion for summary judgment.

## II. STATEMENT OF FACTS

Pursuant to LAPD Policy Manual, section 230.10, "Responsibility of Off-Duty Officers":

> Under California law both on-and off-duty officers have peace officer authority as to any public offense committed or where there is probable cause to believe has been committed in his presence and with respect to which there is immediate danger to person or property or the escape of the perpetrator of such offense.  However, on-duty officers outside the city limit who are not acting within the scope of their employment as Los Angeles police officers on matters of direct concern to the City and off-duty officers both inside and outside of the city limits are to give first considerations to causing the appropriate action to be effected by the responsible law enforcement agency. Such officers should then act only after consideration of the tactical situation and of their possible liability and that of the City of Los Angeles.

(PAMF 8). LAPD's Training Bulletin, Volume 46, Issue 2, entitled "Off Duty Actions," states, "Under California law, off-duty officers have peace officer authority to take action as to any public offense committed in their presence and with respect to which there is immediate danger to person or property or the escape of the perpetrator of such offense." (PAMF 9). Sanchez routinely carried his LAPD ID card to identify himself as a police officer when carrying a concealed weapon. (PAMF 10).

On June 14, 2019, Sanchez entered Costco with a concealed handgun in his waistband. (PAMF 11). California Law and LAPD policy authorized Sanchez to

carry a concealed weapon. (PAMF 14). Pursuant to LAPD Policy Manual §§ 610.10, 610.11, and 610.70, every LAPD officer shall possess an authorized firearm, and officers who carry a concealed handgun pursuant to their employment as an LAPD officer shall only carry handguns that have been approved by the LAPD. (PAMF 56). Sanchez's gun, ammunition and holster were all approved by the LAPD. (PAMF 12, 57). The ammunition in Sanchez's gun during this incident was issued by the City of Los Angeles. (PAMF 13). Based on his training, Sanchez can carry a firearm but should generally keep it concealed. Further, off duty police officers who carry a concealed handgun pursuant to their employment as an LAPD officer shall carry only handguns and ammunition which have been authorized by LAPD for on-duty use. The gun that Sanchez used during the shooting was authorized for on-duty use by the LAPD. (PAMF 15).

According to witness Regina Boladain, while inside of the Costco, Decedent slapped Sanchez in the head. (PAMF 16). Sanchez removed his concealed handgun and announced that he was a police officer. (PAMF 18). Prior to the shooting, Paola French pleaded with Sanchez not to shoot her son (Decedent) and Russell French told Sanchez that his son was sick and to not shoot. (PAMF 20, 21). Paola and Russell French stood near Sanchez, while he had a gun in his hand, and pleaded with him not to shoot their son, in part because Sanchez said that he was a police officer. (PAMF 22, 23). Sanchez then fired multiple shots inside of the Costco, striking Plaintiffs and Decedent. (PAMF 24). Sanchez believed that he was responding to the incident as a police officer and under his authority as an LAPD officer. (PAMF 17). After the shooting, Sanchez continued to identify himself as being a police officer those around him. Sanchez even showed his LAPD identification card to prove that he was a police officer.  (PAMF 25). According to witness Omar Barraza, who is a prison guard with the California Department of Corrections, after the shooting, no one nearby would talk to Sanchez, but once Sanchez identified himself as a police officer, Mr. Barraza felt it was safe to approach. (PAMF 26). According to witness Wesley Manning, an

off duty fireman for the Los Angeles Fire Department, Sanchez identified himself as a police officer, so he knew that Sanchez was one of the "good guys." (PAMF 27).

Police officers from the Corona Police Department ("CPD") responded to the shooting and contacted Sanchez. Sanchez told them he was a police officer, brandishing his LAPD ID card. (PAMF 28). A CPD officer took Sanchez's gun from him, and Sanchez was initially handcuffed. (PAMF 29, 30). Sanchez told another CPD officer that he was an LAPD officer. In response, that CPD officer unhandcuffed Sanchez and told him "that's all you got to say." (PAMF 31). Sanchez told the CPD officers that he thought he had been shot in the head by Decedent, that he saw a blast, and that Decedent had a gun. (PAMF 32). Sanchez was escorted outside of the Costco, reunited with his son and wife, and was then transported to a nearby hospital. (PAMF 33). While at the hospital, Sanchez was contacted by three of his superiors from the LAPD Southwest division where Sanchez works. His LAPD superiors monitored him until Sanchez was discharged from the hospital and went home. Sanchez was not arrested, he was not taken to jail, and he was not even issued a citation. (PAMF 34-35).

LAPD Force Investigation Division ("FID") investigators conducted an investigation, including a scene walk-through and interviews, which is standard protocol for on-duty officer involved shootings. (PAMF 49). PER LAPD OIS protocols Sanchez was ordered to input overtime requests for the time spent complying with the FID Officer Involved Shooting protocols ("OIS"). (PAMF 50). Per LAPD OIS protocols, Sanchez was ordered not to discuss the incident until he has been interviewed by LAPD's FID. Sanchez followed this order. (PAMF 34). On the night of the incident, Sanchez returned to the Costco, where LAPD compelled him to cooperate in a walk-through with investigators from LAPD. Sanchez was paid for his time spent with LAPD investigators regarding this incident, including for the walk-through. (PAMF 38). LAPD detectives obtained Sanchez's gun from the CPD, and it was transported to the LAPD firearms unit for analysis. (PAMF 39).

1      On June 17, 2019, Sanchez was interviewed by Detectives Zesati and Rheault

2 from LAPD's FID during Sanchez's regularly scheduled shift and hours. This

3 interview was not voluntary; LAPD compelled and ordered Sanchez to submit to the

4 interview and was told his employment with LAPD could be terminated if he did not

5 answer their questions. (PAMF 40). Sanchez told LAPD investigators that prior to the

6 shooting he heard screams, saw Decedent carrying a black gun, saw a bright muzzle

7 flash or light and then heard a gunshot and believed he had been shot in the head.

8 (PAMF 41). Sanchez told LAPD investigators that he fired because Decedent was a

9 threat or a danger to Sanchez, his son, or other customers in the Costco. Sanchez also

10 told LAPD investigators that he believed it was an "active shooter" situation. (PAMF

11 42). LAPD compelled and ordered Sanchez to give a second interview to LAPD

12 investigators on February 2, 2020. (PAMF 43).

13      Sanchez submitted an LAPD Employee Report, in which he cited LAPD's

14 Training Bulletin, Volume 46, Issue 2, entitled "Off Duty Actions," *supra*. (PAMF

15 44). Sanchez's report states that he "resorted to [his] Los Angeles Police Department

16 training and tactics, drew [his] department approved handgun and fired his

17 Department approved ammunition to protect himself and others from the deadly

18 threat, as written in LAPD's Use of Force Directive 1-1." (PAMF 45). Sanchez's

19 report also states that he "acted with peace officer authority as an LAPD officer"

20 when he took action based on California Penal Code Section 830.1 and, additionally,

21 LAPD Policy Section 230.10, which authorizes off-duty actions. (PAMF 46).

22      Sanchez used LAPD firearms training and tactics when he fired the shots.

23 (PAMF 47). Sanchez testified at his deposition that during the shooting, he utilized

24 his police training on the use of lethal force, training on the mechanics of using the

25 firearm, and training on when a police officer is permitted to use force in accordance

26 with LAPD policy and California law. (PAMF 55). As a LAPD officer, Sanchez was

27 trained that he should identify himself as a police officer before using force. (PAMF

28

19). Additionally, Sanchez had received training on off-duty actions just a few days before the incident. (PAMF 63).

Sanchez stated in his Employee Report that "the shooting was pursuant to [his] authority as a LAPD officer and under the course and scope of [his] employment by the City of Los Angeles/LAPD. (PAMF 36). Sanchez denies that he was not acting in his capacity as a LAPD police officer at the time of the incident.  Sanchez also denies that he was off duty at the time of the incident. (PAMF 37). Sanchez believes that at the time of the incident, he was acting under color of law (PAMF 51), within the course and scope of his employment with the City as an LAPD officer (PAMF 52), and within his official capacity as an LAPD officer. (PAMF 53). Sanchez also admits to purporting to act in the performance of his official duties as a police officer for the City during the incident. (PAMF 54).

The City trains its police officers that they can take police action when off-duty if the situation warrants it, including making an arrest or using deadly force, and that they are expected to rely on their LAPD training with respect to tactics and the use of force when responding to a situation while off-duty. (PAMF 64). The City trains its police officers that if they use force during an off-duty encounter, they will be held to the same standard as though they were on-duty. (PAMF 65). The PMK testified that LAPD officers are trained to identify themselves as a police officer if they use force when they are off-duty, so that responding officers do not mistake the officer for a person who might be posing a threat. (PAMF 66).

## III.   LEGAL STANDARD

On a motion for summary judgment, the Court must view the evidence in the light most favorable to non-moving party. The Court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Summary judgment cannot be granted where a genuine dispute exists as to "material

facts." Fed. R. Civ. P. 56(c). A factual dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 258 (1986). The Court may grant summary judgment in whole or in part, based on any appropriate grounds including those not raised by a party, so long as there is notice and an opportunity to respond. Fed. R. Civ. P. 56(f)-(g).

## IV.   SUMMARY ADJUDICATION SHOULD BE GRANTED IN PLAINTIFFS' FAVOR

Plaintiffs move for summary adjudication in their favor on the issues of (1) whether Sanchez was acting in the course and scope of his duties as an LAPD officer at the time of the shooting, and (2) whether Sanchez was acting under color of state law at the time of the shooting. The following facts are undisputed: (1) Sanchez believed that he was acting under color of law and in the course and scope of his duties as an LAPD officer; (2) police officers have authority to respond to a public offense committed in their presence when there is immediate danger to persons or property or of the perpetrator's escape; (3) Sanchez was responding to what he believed to be an assault and battery or active shooter situation; (4) Sanchez would not have been carrying a concealed weapon in Costco if he were not a police officer; (5) the City approved the firearm and ammunition Sanchez used during the shooting; (6) Sanchez used his LAPD training on the use of force when he fired the shots; (7) Sanchez identified himself as a police officer after the shooting; and (8) the City investigated the shooting as if it were an on-duty officer involved shooting. Under these undisputed facts and the legal authorities set forth below, this Court should deny the City's Motion and enter partial judgment in Plaintiffs' favor as to the course and scope and color of law issues.

## V. PLAINTIFFS' STATE LAW CLAIMS SURVIVE

In the alternative, if the Court finds the material facts or inferences therefrom to be in genuine dispute, the Court should still deny the City summary judgment as to

1  Plaintiffs' state law claims. Taking the facts in the light most favorable to the

2  Plaintiffs, Sanchez was clearly acting in the course and scope of his employment as

3  an LAPD officer for the City at the time of the shooting. Thus, the City is vicariously

4  liable for his actions. "'[A]n employer's liability extends to torts of an employee

5  committed within the scope of his employment.'" *John R. v. Oakland Unified School*

6  *Dist.*, 48 Cal. 3d 438, 447 (1998) (internal citations omitted). This includes

7  intentional torts as well as negligence. *Id.*; *see also Farmers Ins. Gp. v. County of*

8  *Santa Clara*, 11 Cal. 4th 992, 1004 (1995) (holding that an employer's vicarious

9  liability may extend to willful and malicious torts of an employee as well as

10 negligence). "In California, the scope of employment has been interpreted broadly

11 under the respondeat superior doctrine." Farmers, 11 Cal. 4th at 1004. "Under

12 California law, the determinative factor in establishing vicarious liability under the

13 doctrine of respondeat superior is not whether the employee's act was authorized, but

14 whether the act was committed in the course of carrying out the employer's

15 business." *Pelletier v. Fed. Home Loan Bank*, 968 F.2d 865, 876 (9th Cir. 1992)

16 (citing *Perez v. Van Groningen & Sons, Inc.*, 41 Cal. 3d 962, 967 (1986) ("[A]n

17 employer is vicariously liable for his employee's torts committed within the scope of

18 the employment.")). Accordingly, vicarious liability may attach for unauthorized or

19 prohibited conduct "if the risk of that conduct is 'one that may fairly be regarded as

20 typical of or broadly incidental to the enterprise undertaken by the employer.'" *Id.*

21 (quoting *Perez*, 41 Cal. 3d at 968); *see also Farmers*, 11 Cal. 4th at 1003 (the inquiry

22 should be whether the risk was one 'that may fairly be regarded as typical of or

23 broadly incidental' to the enterprise undertaken by the employer"). In other words,

24 "the employer's liability extends beyond his actual or possible control of the

25 employee to include risks inherent in or created by the enterprise." *Perez*, 41 Cal. 3d

26 at 968. An employee need not have been engaged in an act directly benefiting the

27 employer. *Bailey v. Filco, Inc.*, 48 Cal. App. 4th 1552, 1560 (1996).

28

Case No. 5:20-cv-00416-JGB-SP

In *Mary M. v. City of Los Angeles*, 54 Cal. 3d 202, 214 (1991), the California Supreme Court reiterated that the test for determining whether an employee is acting outside the scope of employment is whether, "in the context of the particular enterprise an employee's conduct is not so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer's business.'" *Mary M.* looked to three policy factors that supported vicarious liability: "(1) to prevent recurrence of the tortious conduct; (2) to give greater assurance of compensation for the victim; and (3) to ensure that the victim's losses will be equitably borne by those who benefit from the enterprise that gave rise to the injury." 54 Cal. 3d at 214. The City concedes in its motion that *Mary M.* sets the applicable test, and whether an employee has acted within the scope of his employment is ordinarily a question of fact reserved for the jury unless "the facts are undisputed and no conflicting inferences are possible." *See Lisa M. v. Henry Mayo Newhall Mem'l Hosp.*, 12 Cal. 4th 291, 299 (1995) (quoting *Mary M.*, 54 Cal. 3d at 213); (Def. Mot. at 4:3-14).  Defendants repeatedly cite to dicta in *Hinman v. Westinghouse Elec. Co.*, 2 Cal.3d 956, 960 (1970), but *Hinman* dealt with the "coming and going rule," which is inapplicable here. Additionally, *Hinman* involved vicarious liability of a private employer, not a public entity that employs police officers.

Following *Mary M.*, this Court should find that Sanchez's shooting of Plaintiffs and Decedent was "not so unusual or startling that it would seem unfair" to include the resulting harm among LAPD's other costs. The City authorized Sanchez to carry a concealed firearm in public, trained him on how and when to use it, and both the City and state law authorized him to respond as a police officer to situations like this. As the *Mary M.* court stated: "[i]n view of the considerable power and authority that police officers possess, it is neither startling nor unexpected that on occasion an officer will misuse that authority by engaging in assaultive conduct. The precise circumstances of the assault need not be anticipated, so long as the risk is one that is reasonably foreseeable." 54 Cal. 3d at 217-18. Quoting *Policeman's Benev. Ass'n of*

1   *N.J. v. Washington Tp.*, 850 F.2d 133, 141 (3d Cir.1988), the *Mary M.* court

2   continued:

> police officers [exercise] the most awesome and dangerous power that a
> democratic state possesses with respect to its residents—the power to
> use lawful force to arrest and detain them." Inherent in this formidable
> power is the potential for abuse. The cost resulting from misuse of that
> power should be borne by the community, because of the substantial
> benefits that the community derives from the lawful exercise of police
> power.

8   54 Cal. 3d at 216-17. The *Mary M.* court held that a reasonable jury could find the

9   City vicariously liable where the defendant LAPD officer raped a woman he had

10  detained. If a reasonable jury could find that the sexual assault at the victim's home in

11  *Mary M.* was reasonably foreseeable, then a reasonable jury could surely find that

12  Sanchez's shooting in response to what he perceived as an active shooter situation

13  occurred in the course and scope of Sanchez's employment.

14      Defendant's motion relies on federal respondeat superior cases that likely are

15  irrelevant to Plaintiffs' state claims, including *Oki Semiconductor Co. v. Wells Fargo*

16  *Bank*, 298 F.3d 768 (9th Cir. 2002). Here, the broader test articulated by the

17  California Supreme Court in *Mary M.* controls. However, there are some similarities

18  in the two tests, and regardless of which is applied, the facts of this case show that

19  Sanchez acted in the course and scope of his employment. *See Oki Semiconductor*,

20  298 F.3d at 775-76 (holding "an employee acts within the course and scope of his

21  employment if: (1) his "conduct occurred substantially within the time and space

22  limits authorized by his employment;" (2) he "was motivated, at least in part, by a

23  purpose to serve the employer;" and (3) his actions were the kinds of acts that he

24  "was hired to perform").

25      The first *Oki* element—whether the shooting occurred within the time and

26  space limits authorized by Sanchez's employment with the City—is satisfied. As to

27  "time," "police officers are literally on duty 24 hours a day under California law."

28  *Long v. Valentino*, 216 Cal. App. 3d 1287, 1298 (1989) (citing *People v. Derby*, 177

Cal. App. 2d 626, 631 (1960) (stating that police officers are under a special duty at all times to use their best efforts to apprehend criminals)). With regard to "space," California Penal Code § 830.1 extends the geographic authority of peace officers to the entire state "[a]s to any public offense committed or which there is probable cause to believe has been committed in the peace officer's presence, and with respect to which there is immediate danger to person or property, or of the escape of the perpetrator of the offense." Cal. Penal Code § 830.1(a)(3). The broad scope of peace officer authority conferred under state law has been recognized by California courts under far less compelling circumstances. *See United States v. Fay*, 545 F. Supp. 2d 1067, 1069, 1072 (2008) (holding off-duty officer was authorized to detain and arrest a suspected drunk driver); *Inouye v. County of Los Angeles*, 30 Cal. App. 4th 278, 284 (1994) (holding vicarious liability "indisputably" applied to shooting by off-duty "safety police" officer assigned to health department because he was authorized to arrest driver of a vehicle who had confronted him late at night on a highway in order to determine whether the driver was under the influence); *see also Johnson v. Lewis*, 120 Cal. App. 4th 443, 454 (2004) (holding off-duty arson investigator was authorized to arrest the driver of a vehicle he encountered on the freeway for traffic violations that posed an immediate danger, even though department policy expressly forbade such arrests). Further, under Penal Code § 836.5(a), peace officers may make warrantless arrests whenever the officer has reasonable cause to believe that the person to be arrested has committed a misdemeanor in the presence of the officer.

Like California law, LAPD policy authorizes certain actions by off-duty officers. LAPD Policy Manual, Section 230.10, "Responsibility of Off-Duty Officers" reinforces that both on-duty and off-duty police officers "have peace officer authority as to any public offense committed, or which there is probable cause to believe has been committed in his presence and with respect to which there is immediate danger to person or property, or the escape of the perpetrator of such offense." Sanchez identified himself as a police officer prior to the shooting.

1   Immediately after the shooting, Sanchez stated to responding CPD officers that he
2   thought he had been shot in the head by Decedent, that he had seen a blast, and that
3   Decedent had a gun. During his interview with FID, Sanchez told LAPD investigators
4   that, prior to the shooting, he heard screams, saw Decedent carrying a black gun, saw
5   a bright muzzle flash or light, and then heard a gunshot and believed he had been shot
6   in the head. Sanchez told LAPD investigators that he fired because Decedent was a
7   threat or a danger to himself, to his son or to the other customers in the Costco.
8   Sanchez also told LAPD investigators that he believed that he was responding to an
9   "active shooter" situation. Sanchez's belief that he was responding to an active
10  shooter situation that immediately threatened the lives of individuals in the Costco
11  supports a finding in Plaintiffs' favor that Sanchez was acting squarely within the
12  broad scope of peace officer authority conferred upon him by the City and the
13  California statutory scheme when he fired the shots.

14          The first *Oki* element is also satisfied because if Sanchez were not a police
15  officer, then he would not have been authorized to enter the Costco with a concealed
16  handgun to begin with. Pursuant to LAPD Policy Manual §§ 610.10, 610.11, and
17  610.70, every LAPD officer shall possess an authorized firearm, and officers who
18  carry a concealed handgun pursuant to their employment as an LAPD officer shall
19  only carry handguns that have been approved by the LAPD. Additionally, under
20  Penal Code § 25450, any duly appointed peace officer is permitted to carry a
21  concealed weapon. Sanchez was only authorized to be in possession of his concealed
22  handgun because of his status as a law enforcement official, including pursuant to
23  California Penal Code § 25450 and LAPD Policy Manual § 610 *et seq.* The firearm
24  Sanchez used during the shooting was authorized by the LAPD and the ammunition
25  used was both authorized and issued by LAPD. The holster in which Sanchez carried
26  his concealed weapon in was also authorized by LAPD. Sanchez carries his LAPD ID
27  card while carrying a concealed weapon in case he needs to show someone that he is
28  a police officer. These facts clearly establish a causal nexus and show that Sanchez's

employment "predictably [created] the risk that [LAPD officers such as Sanchez] will commit intentional torts of the type for which liability is sought." *Lisa M.*, 12 Cal. 4th at 299. It is reasonably foreseeable that LAPD officers who are authorized and allowed to carry concealed weapons, provided ammunition for them, on duty 24 hours a day, and authorized to exercise police powers anywhere in the state, may end up committing torts such as in the case at bar.

Further, Sanchez's LAPD Employee Report stated that he "acted with peace officer authority as an LAPD officer" when he fired the shots and that "the shooting was pursuant to [his] authority as a LAPD officer and under the course and scope of [his] employment by the City of Los Angeles/LAPD." Sanchez cited LAPD Training Bulletin, Volume 46, Issue 2 ("Off Duty Actions"), which states: "Under California law, off-duty officers have peace officer authority to take action as to any public offense committed in their presence and with respect to which there is immediate danger to person or property or the escape of the perpetrator of such offense." Sanchez also cited to Penal Code § 830.1 as a basis for his assertion that he "acted with peace officer authority as an LAPD officer" during the incident.  In response to Plaintiffs' requests for admissions, Sanchez admitted that it was his belief that, at the time of the incident, he was acting within the course and scope of his employment as a LAPD officer for the City and was acting within his official capacity as a police officer for the City. This belief is supported by the fact that Sanchez announced himself as a police officer prior to the shots being fired and throughout the incident. Sanchez denies that he was not acting in his capacity as an LAPD officer at the time of the incident. Sanchez also denies that he was off duty at the time of the incident.

That the shooting occurred within the space and time limits authorized by Sanchez's employment with the City is also supported by the fact that the LAPD FID investigated the shooting. After the shooting, LAPD superiors ordered Sanchez, per LAPD protocol, not to discuss the incident until after he had been interviewed by FID officers. The FID conducted a scene walk-through with Sanchez and interviewed

PLAINTIFFS' CROSS MOTION AND OPPOSITION

Sanchez, which is standard protocol for on-duty officer-involved shootings. Sanchez was ordered to input overtime requests for the time spent complying with FID's officer-involved shooting protocols, and the City paid Sanchez for the time he spent being interviewed by City investigators regarding the incident. LAPD detectives recovered Sanchez's gun from the CPD, and the gun was transported to the LAPD firearms unit for analysis.

The Eastern District of California's decision in *Bradley v. San Joaquin*, No. 2:17-cv-2313-KJM-AC, 2018, WL 4026996 (E.D. Cal. Aug. 23, 2018), supports a finding that Sanchez acted within the scope of his employment during this incident. In *Bradley*, an off-duty officer engaged in an illicit drug transaction drew a concealed handgun, declared his status as law enforcement, then fired his handgun at individuals in the parking area. *Id*. The deputy then asserted authority over the area by purporting to act in his law enforcement capacity and secure the scene, preventing witnesses from providing care to the decedent. *Id*. The deputy alleged that he was the victim of an assault immediately before he shot and killed the decedent. *Id*. at *4. The *Bradley* court found that the plaintiffs successfully alleged that the off-duty officer acted within the scope of his employment once he invoked his status as a law enforcement officer, shot the decedent, and relied on his law enforcement status to take control of the scene after discharging his weapon. *Id*. The court also considered that the off-duty officer coordinated with law enforcement who responded to the scene after the shooting as a fact in favor of the off-duty officer acting within the scope of his employment. *Id.* Just as in *Bradley*, this Court should find Sanchez's actions of drawing of a concealed firearm, shooting in response to an alleged assault, identifying himself as a police officer both before and after the shooting, and cooperating with LAPD FID's officer-involved-shooting protocols after the shooting, indicate that Sanchez was acting in the course and scope of his employment at the time of the shooting.

1    Plaintiffs satisfy the second *Oki* element—that Sanchez was motivated, at least
2    in part, by a purpose to serve the City—because Sanchez testified at his deposition
3    that in his mind, he believed that he was responding to the incident as a police officer,
4    and that when the incident occurred, he was acting, as he understood it, under his
5    authority as a LAPD officer as set forth in LAPD policies and training. As indicated
6    above, at the time of the shooting, Sanchez believed that he was responding to an
7    "active shooter" situation, and understood that he had peace officer authority to
8    respond to a public offense committed in his presence and to act in self-defense or
9    defense of others, even if he was technically "off duty."

10       The third *Oki* element—that Sanchez's actions were the kinds of acts that he
11   "was hired to perform"— is satisfied because Sanchez used his LAPD training and
12   experience during the shooting, in addition to using a firearm and ammunition
13   approved by the LAPD. Prior to the shooting, Sanchez was trained with respect to
14   LAPD Policy Manual, Section 230.10, "Responsibility of Off-Duty Officers."
15   Pursuant to Section 230.10, Sanchez understood at the time of the shooting that off-
16   duty officers should act "only after consideration of the tactical situation and of their
17   possible liability and that of the City of Los Angeles."  That LAPD explicitly trained
18   its officers to consider the City's liability for their "off duty" conduct reinforces that
19   such liability was reasonably foreseeable.  Sanchez testified at his deposition that
20   during the shooting, he utilized his police training on the use of lethal force, training
21   on the mechanics of using the firearm, and training on when a police officer is
22   permitted to use force in accordance with LAPD policy and California law. As a
23   LAPD officer, Sanchez was trained that he should identify himself as a police officer
24   before using force. On Plaintiffs' facts, Sanchez implemented his LAPD training
25   when he identified himself as a police officer prior to shooting and then continued to
26   identify himself as a police officer after the shooting. Additionally, Sanchez had
27   received training on off-duty actions just a few days before the incident.
28

The above facts support a reasonable finding that Sanchez was "engaged either in the duties that he was employed to perform or in those acts that incidentally or indirectly contribute to [the City's/LAPD's] service. *Tryer v. Ojai Valley School*, 9 Cal. App. 4th 1476, 1481 (1992). For each of the above reasons, this Court should hold that a reasonable jury could conclude that Sanchez was acting in the course and scope of his employment as a police officer for the City at the time of the shooting and should deny summary judgment as to Plaintiffs' state law claims.

## VI.   SANCHEZ WAS ACTING UNDER COLOR OF STATE LAW

As noted above, Plaintiffs are entitled to partial adjudication that Sanchez acted under color of law under Plaintiffs' federal claims, and thus the City's motion on those grounds should be denied. Alternatively, the City's motion should be denied because, when viewing the facts in the light most favorable to the Plaintiffs, Sanchez was acting under color of state law at the time of the shooting.  Further, because the City is not a defendant on Plaintiffs' federal § 1983 claims against Sanchez, the City does not have standing to move for summary judgment on Plaintiffs' federal claims. Defendant confusingly argues that Sanchez did not act within the course and scope of his employment under federal law, but "color of law" is the standard under § 1983. (Mot. at 10:21-11:10.) There is no "rigid formula" for determining whether a state or local official is acting under color of state law, a required element of a § 1983 claim. *Anderson v. Warner*, 451 F.3d 1063, 1068 (9th Cir. 2006) (citing *Ouzts v. Md. Nat'l Ins. Co.*, 505 F.2d 547, 550 (9th Cir. 1974)). "State employment is generally sufficient to render the defendant a state actor." *Id.* (citing *West v. Atkins*, 487 U.S. 42, 48 (1988) (internal quotations and alterations omitted)). Whether an "officer is acting under color of state law turns on the nature and circumstances of the officer's conduct and the relationship of that conduct to the performance of his official duties." *Id.* (citing *Martinez v. Colon*, 54 F.3d 980, 986 (1st Cir. 1995)). "Misuse of power, possessed by virtue of state law and possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under the color' of state law." *Id.*

(citing *United States v. Classic*, 313 U.S. 299, 326 (1941)). "It is firmly established that a defendant in a § 1983 suit acts under color of state law when he abuses the position given to him by the State." *Id*. (citing *Atkins*, 487 U.S. at 49-50).

The Ninth Circuit requires three criteria to be satisfied to determine an individual was acting under color of state law. *McDade v. West*, 223 F.3d 1135, 1140 (9th Cir. 2000). First, the officer's acts must have been "performed while the officer [was] acting, purporting, or pretending to act in the performance of his or her official duties." *Id*. Second, the officer's pretense of acting in the performance of his duties must have had the purpose and effect of influencing the behavior of others. *See Van Ort v. Estate of Stanewich*, 92 F.3d 831, 839-40 (9th Cir. 1996). Third, the challenged conduct must be "related in some meaningful way either to the officer's governmental status or to the performance of his duties." *Anderson*, 451 F.3d at 1069 (citing *Martinez*, 54 F.3d at 987). On Plaintiffs' facts, all three elements are satisfied.

Plaintiffs' facts and the reasonable inferences therefrom easily support a jury finding on the first element. Sanchez admitted during his deposition and in verified discovery responses that, at the time of the shooting, he was purporting to act in the performance of his official duties as a police officer for the City. Sanchez testified that he was purporting to act within his official capacity as a police officer to protect life when he fired at Decedent and Plaintiffs. Sanchez also admitted that it was his belief that he was acting under color of state law at the time of the shooting. In addition to these admissions, as discussed above, Sanchez also stated to investigators that he thought Decedent had a gun, that this was an "active shooter" situation and that he fired because Decedent was a danger to himself, to his son, or to the other customers in the Costco. At the time of the shooting, Sanchez understood that California law and LAPD policy authorized him to take action as to any public offense committed in his presence and with respect to which there is immediate danger to person or property or the escape of the perpetrator of such offense. A reasonable jury could consider percipient witness testimony alleging that Decedent

slapped Sanchez while Sanchez was holding his son and testimony by Plaintiffs that Sanchez announced himself as a police officer prior to the shooting and could easily determine that Sanchez was responding to a public offense (i.e., assault and battery) as a police officer. A reasonable jury could also conclude that Sanchez was taking action as a police officer to prevent Decedent from escaping the Costco; indeed, Decedent was walking away from Sanchez at the time of the shooting.

On Plaintiffs' facts, the second element is satisfied because Sanchez's acting or pretense of acting in the performance of his duties had the purpose and effect of influencing the behavior of others. Taking Plaintiffs' facts as true, it is a reasonable inference that Sanchez identified himself as law enforcement for the purpose of influencing the behavior of those around him, including Plaintiffs, Decedent, Costco shoppers, employees (including security guards), vendors and the responding officers from CPD. According to Paola French, she would not have stood near Sanchez, while he had a gun in his hand, and would not have pleaded with him not to shoot her son, if she had not known that Sanchez was a police officer. Likewise, according to Russel French, he would not have told Sanchez that Decedent was sick and would not have pleaded with Sanchez not to shoot if Sanchez had not identified himself as a police officer.

*Hyun Ju Park v. City & County of Honolulu*, 952 F.3d 1136 (9th Cir. 2020), upon which Defendant City relies in its Motion, is distinguishable. In *Park*, the officer was not responding to a public offense, whereas Sanchez alleges that he was responded to an active shooter situation or to Decedent slapping him while he held his child. Instead, the officer in *Park* was drinking heavily at a bar while playing around with his gun when it accidentally discharged. 952 F.3d at 1139. Further, the officer in *Park* did not identify himself as a police officer, whereas here, Plaintiffs have submitted sworn declarations attesting that Sanchez identified himself as a police officer and that his invocation influenced the behavior of Plaintiffs and others.

1    After the shooting, Sanchez continued to identify himself as a police officer

2    and showed his LAPD identification card to prove that he was a police officer. The

3    first person to approach Sanchez after the shooting was Omar Barraza, who works as

4    a prison guard, and he saw Sanchez's LAPD identification card which confirmed that

5    Sanchez was a police officer. Victor White, who works for the Los Angeles Sheriff's

6    Department, and Wesley Manning who works for the Los Angeles Fire Department,

7    were the next two people to approached Sanchez. Both Mr. White and Mr. Manning

8    heard Sanchez identify himself as a police officer. As a result, the bystanders were

9    affected or influenced by Sanchez and they refrained from attempting to attack,

10   detain, arrest (including a citizen's arrest), apprehend, disarm, or physically remove

11   Sanchez from the premises. When Sanchez identified himself again after the

12   shooting, a CPD officer unhandcuffed Sanchez and said, "that's all you got to say,"

13   and "sorry bro." After the shooting, no one nearby would talk to Sanchez, but once

14   Sanchez identified himself as being a police officer, Barraza felt it was safe to

15   approach. According to Mr. Manning, Sanchez identified himself as a police officer,

16   so he knew that Sanchez was one of the "good guys." Sanchez then was escorted

17   outside of the Costco, reunited with his son and wife, then transported to a hospital.

18   Then, Sanchez was allowed to go home—he was not taken to jail and was not even

19   issued a citation. If any civilian had fired shots in the middle of a Costco, that person

20   would have been arrested immediately and taken to jail.

21   With respect to the second element, *Anderson v. Warner*, *supra*, supports a

22   finding that Sanchez acted under color of state law during the incident.  In *Anderson*,

23   the Ninth Circuit held the officer acted under color of law when assaulting the other

24   driver (involved in a minor auto accident) because "he invoked his law enforcement

25   status to keep bystanders from interfering with his assault on [the victim]." 451 F.3d

26   at 1068. The Ninth Circuit found the first two criteria for acting under color of law

27   were satisfied because the officer stated he was in law enforcement and caused

28   bystanders not to interfere before and after he had assaulted the other driver. *Id*. at

-19-

1069. That is precisely what Plaintiffs are alleging occurred here: Sanchez stated he was in law enforcement (both before and after the shooting) and caused the nearby bystanders not to interfere before and after he shot Decedent and Plaintiffs inside a crowded Costco.  Just like the Ninth Circuit held in *Anderson*, the Court should hold that Sanchez was acting under color of state law when he invoked his law enforcement status to keep bystanders from interfering with his assault on Decedent and his parents. *Id*. at 1068. Plaintiffs' facts support findings both that Sanchez purported or at a minimum pretended to act in performance of his official duties, and that his actions had the purpose and effect of discouraging bystanders from interfering. *Id*. at 1069.

The third criterion—that Sanchez's conduct must be sufficiently related "either to the officer's governmental status or to the performance of his official duties"—is also satisfied by Plaintiffs' facts. *Martinez*, 54 F.3d at 987. This requirement does not mean that an officer must have been acting within the scope of his authority in order for him to have been acting under color of state law. *Anderson*, 451 F.3d at 1069. If that were true, no § 1983 suit could ever succeed, for the premise of a successful suit is that the officer acted illegally—that is, outside the scope of his authority. *Id*. Instead, the requirement means only that the challenged conduct must have a sufficiently close relationship to the officer's "governmental status" or to "the performance of his duties." *Id*. In the context of this case, this third requirement means that Sanchez must have used "the badge of [his] authority" to deprive an individual of his rights, by invoking his "governmental status" to influence the behavior of those around him. *Id*. at 1069 (citing *McDade*, 223 F.3d at 1139).  This Court should hold that Sanchez invoked his "governmental status" within the meaning of this requirement and conclude that when Sanchez announced to bystanders that he was a police officer, he was acting under color of state law.  *Id*. at 1070.  After all, "[m]isuse of power, possessed by virtue of state law and made

possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of' state law." *United States v. Classic*, 313 U.S. at 326.

A reasonable jury could easily conclude that the shooting was "sufficiently related" to Sanchez's performance of his duties as a LAPD officer. The gun Sanchez used to shoot Decedent and Plaintiffs was authorized by the City, the ammunition used was issued and authorized by City, the holster used to carry the concealed weapon was approved by City, and had Sanchez not been a police officer, then he would not have been permitted or authorized to carry a concealed firearm in Costco. Sanchez identified himself as a police officer throughout the encounter and after the shooting. Identifying himself as law enforcement helped Sanchez accomplish his detention and shooting, and avoid being arrested and sent to jail. When Sanchez detained and shot Decedent and Plaintiffs, he used his LAPD training and experience with respect to police tactics, detentions, arrests, and the use of deadly force. In drawing his weapon, taking aim, and then deliberately firing rounds in the direction of Decedent and Plaintiffs, and successfully striking all three of his moving targets, Sanchez acted based on his LAPD training. A private citizen would not have accomplished the detention and shooting in the same way that Sanchez, a trained police officer, did.  Additionally, as discussed above, according to Sanchez, when he fired the shots, he believed that he was responding as a LAPD officer to a public offense that posed an immediate danger to himself, his son, and people in the Costco, and understood that California law and LAPD policy authorized him to do so.

Defendants argue that Sanchez did not act under the color of state law because he acted out of "personal malice unconnected with his employment." (Mot., Dkt. 57, at 17:4). Plaintiffs disagree. As discussed above, Sanchez acted in response to what he perceived to be a public offense in his presence, to arrest and prevent the escape of an assault and battery suspect (Decedent) and to act in self-defense and defense of others as a law enforcement officer. Plaintiffs have not alleged that Sanchez acted out of personal malice (or any malice), and the evidence supports that Sanchez did not act

out of personal malice. Sanchez did not know Plaintiffs or Decedent before he
encountered Decedent inside the Costco seconds before the shooting. Additionally,
although criminal charges were recently filed against Sanchez, "malice" is not an
element of any of the charges in the felony complaint against Sanchez. In fact, the
criminal complaint specifically states that he committed voluntary manslaughter
*without malice*. Accordingly, a reasonable jury could find the three criteria required
by the Ninth Circuit establish that Sanchez was acting under color of state law during
this incident and therefore, the City is not entitled to summary judgment.

The cases upon which the City relies are distinguishable. In *Van Ort v. Estate
of Stanewich*, 92 F.3d 831, 849 (9th Cir. 1996), an off-duty officer committed a home
invasion robbery, which was a personal endeavor wholly unrelated to his police
officer duties. The off-duty officer in *Van Ort* did not purport to act under state law
and "exerted no meaningful, physical control over Donald on the basis of his status as
a law enforcement officer." 92 F.3d at 839. The Ninth Circuit found that the off-duty
officer "might have been acting under color of law if he had purported to or
pretended to act under color of law, even if his goals were private and outside the
scope of authority." *Id.* at 838 (citing *Screws v. United States*, 325 U.S. 91, 111
(1945)). By contrast, Sanchez admits, and the evidence shows, that he purported to
act under color of law, that was responding to what he believed to be a public offense
inside Costco, and that he exerted police officer authority during and after the
shooting. *Gibson v. Chicago*, 910 F.2d 1510, 1518 (7th Cir. 1990) is also inapposite,
in large part because it dealt with a police officer who had been expressly ordered not
to perform any police duties. By contrast, as indicated above, LAPD policy and
California law gave Sanchez police officer authority even when he was off-duty.

## VII.   PLAINTIFFS' MONELL CLAIM SURVIVES

Plaintiffs' claim for Unconstitutional Custom and Practice pursuant to *Monell
v. Department of Social Services*, 436 U.S. 658 (1978) survives because, at minimum,
there are disputed issues of fact bearing on whether the two express municipal

policies discussed above—(1) authorizing and/or encouraging off-duty officers to carry concealed firearms pursuant to LAPD Policy Manual Sections 525.15, 610.90, 610.11, and 610.90, and (2) authorizing off-duty officers to have peace officer authority as to any public offense committed in their presence, pursuant to LAPD Policy Manual Section 230.10—amount to deliberate indifference to Plaintiffs' and Decedent's constitutional rights to be free from excessive force. Municipal liability under § 1983 may be based on an express municipal policy. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 123, 127 (1988) (quoting *Adickes v. S.H. Kress & Co*., 398 U.S. 144, 167–68 (1970)*)); Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).  To impose municipal liability under Section 1983 based on a policy or custom, Plaintiffs must show: "(1) that the plaintiff[s] possessed a constitutional right of which [they were] deprived; (2) that the municipality had a policy; (3) that the policy amounted to deliberate indifference to the plaintiff[s'] constitutional right; and (4) that the policy is the moving force behind the constitutional violation."  *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (citing *Plumeau v. Sch. Dist. No. 40 Cty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997)).

LAPD Policy, Sections 525.15, 610.90, 610.11, and 610.90 authorized Sanchez to carry a concealed weapon into Costco, and the weapon and the ammunition that Sanchez used to shoot Decedent and Plaintiffs were approved by the LAPD/City. Had Sanchez not been a peace officer, then he would not have been permitted to carry a concealed weapon into Costco. The City's Person Most Knowledgeable ("PMK") testified at deposition that LAPD officers are permitted to carry a concealed firearm by virtue of their status as an LAPD officer and the concealed weapons permit signed by the chief of police. (PAMF 58). The PMK also testified that there is an approved group of weapons and an approved group of ammunition that an off-duty officer can carry.  (PAMF 58).

LAPD Policy Section 230.10 authorized Sanchez to take action in response to what he believed to be an "active shooter" situation, and Sanchez testified during his

deposition that he was familiar with this LAPD policy and responded to the situation as a trained LAPD officer. The City does not train its LAPD officers that if they see a crime, they are forbidden from arresting the person involved, nor does the City train its LAPD officers that they are forbidden from pulling out a concealed weapon if they feel it is necessary to do so. (PAMF 60). The City does not train its police officers that if they perceive an imminent threat of death or serious bodily injury and they are off-duty, that they are not allowed to use deadly force because they are off-duty. (PAMF 61). Rather, the City trains its police officers that they can take police action when off-duty if the situation warrants it, including making an arrest or using deadly force, and that they are expected to rely on their LAPD training with respect to tactics and the use of force when responding to a situation while off-duty. (PAMF 64). The City trains its police officers that if they use force during an off-duty encounter, they will be held to the same standard as though they were on-duty. (PAMF 65). The PMK testified that LAPD officers are trained to identify themselves as a police officer if they use force when they are off-duty, so that responding officers do not mistake the officer for a person who might be posing a threat. (PAMF 66).

These express policies amount to deliberate indifference to the Plaintiffs' and Decedent's constitutional rights to be free from excessive force.  But for the policies permitting Sanchez to carry a City-approved concealed weapon into Costco and to use his LAPD training on the use of deadly force while off-duty, the shooting would not have occurred. Training police officers such as Sanchez to announce himself as a police officer when using force while off-duty directly led Sanchez to announce himself as a police officer during the incident in Costco, which influenced the behavior of those around him, including responding law enforcement officers, who then unhandcuffed Sanchez and failed to arrest him. These policies were so closely related to Sanchez's shooting of Decedent and Plaintiffs as to be a moving force behind the deprivation of Plaintiffs' and Decedent's constitutional rights to be free from excessive force.

Additionally, the City maintains "warrior training" programs that foster an irrational fear among off-duty police officers.  As a direct and proximate cause of this training, Sanchez at the time of the shooting in this case believed that everyone (including Decedent) was out to kill him, and that unexpected danger lurked around every corner. Accepting Plaintiffs' facts and all reasonable inferences therefrom as true, but for the "warrior training" promulgated by the City, Sanchez would not have formed the irrational fear that there was an "active shooter" situation inside the middle of a Costco when in fact Decedent and Plaintiffs were unarmed and Sanchez was the only person shooting, and thus he would not have overreacted in using deadly force.

## VIII.  CONCLUSION

For the foregoing reasons, this Court should deny Defendant City's Motion in its entirety and instead grant Plaintiffs' cross-motion for summary adjudication.

DATED: August 30, 2021                    LAW OFFICES OF DALE K. GALIPO

By:    /s/ Dale K. Galipo

Dale K. Galipo
Eric Valenzuela
Renee V. Masongsong
*Attorneys for Plaintiffs*

PLAINTIFFS' CROSS MOTION AND OPPOSITION