LAW OFFICES OF DALE K. GALIPO
Dale K. Galipo (Bar No. 144074)
dalekgalipo@yahoo.com
Eric Valenzuela (Bar No. 284500)
evalenzuela@galipolaw.com
Renee V. Masongsong (Bar No. 281819)
rvalentine@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, California  91367
Telephone:   (818) 347-3333
Facsimile:    (818) 347-4118
*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAOLA FRENCH and RUSSELL FRENCH,<br><br>Plaintiffs,<br><br>vs.<br><br>CITY OF LOS ANGELES; SALVADOR SANCHEZ; and DOES 1-10, inclusive,<br><br>Defendants. | **CASE NO.: CV20-00416 JGB (SPx)**<br>*Hon. Jesus G. Bernal, Riverside Crtm.1.*<br>*Hon. Mag. Sheri Pym, Riverside, Crtm. 3*<br><br>**PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; PLAINTIFFS' ADDITIONAL MATERIAL FACTS IN SUPPORT OF PLAINTIFFS' OPPOSITION AND ALSO IN SUPPORT OF PLAINTIFFS' CROSS-MOTION FOR SUMMARY ADJUDICATION**<br><br>[*Proposed Order; Declaration of Eric Valenzuela and Exhibits thereto; Memorandum of points and authorities in support thereof*]<br><br>**DATE:** September 27, 2021<br>**TIME:** 9:00 a.m.<br>**CTRM:** Zoom |

# PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS; PLAINTIFFS' ADDITIONAL MATERIAL FACTS

Pursuant to Local Rule 56-2, Plaintiffs respectfully submit their responses and objections to Defendant's Statement of Undisputed Facts. Plaintiffs also hereby submit their Plaintiffs' Additional Material Facts ("PAMF") in support of both their Opposition to Defendants' Motion for Summary Judgment and also in support of Plaintiffs' Cross-Motion for Summary Adjudication.

| No. | Defendant's Undisputed Facts | Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|---|
| 1. | **Fact:** In January 2021, Salvador Sanchez was formally fired by the LAPD. | **Evidence:** Ex. 6 (Sanchez Depo Transcript) at p. 118 | Objection: Irrelevant and Unduly Prejudicial (FRE 403) |
| 2. | **Fact:** On August 9, 2021, the California Attorney General announced the arrest and filing of felony charges against Sanchez for voluntary manslaughter as well as assault with a firearm | **Evidence:** Ex. 1 (California Attorney General Felony Complaint) | Objection: Irrelevant, Unduly Prejudicial (FRE 403) calls for hearsay. |
| 3. | **Fact:** Sanchez was off duty at the time of the incident | **Evidence:** Ex. 6 (Sanchez Depo Transcript) at p. 89: 21-25 and Ex. 7 (FID Interview Transcript) at p. 67: 2-5, p. 116: 11-12 | Objections: Vague and ambiguous and calls for a legal conclusion. <u>Disputed</u>. Sanchez denies that he was off duty at the time of the incident. Exhibit O Sanchez's Responses to Defendant City of Los Angele's Request for |

2

| | | | |
|---|---|---|---|
| | | | Admissions at 4:16-5:5, 5:7-23<br><br>Sanchez announced that he was a police officer prior to the shooting. Exhibit C<br>Paola French Depo. at 17:24-18:15, 26:11-18, 30:24-31:13, 37:23-38:2, 60:7-14, 64:25-65:4, 65:22-66:3<br>Exhibit D<br>Russell French Depo. at 23:20-24:2, 35:2-17, 66:6-67:8<br><br>Sanchez believes that he was acting within his official capacity as a police officer of the City of Los Angeles police department during the incident. He also believes that he was acting under color of law at the time of the incident. Sanchez also admits to purporting to act in the performance of his official duties as a police officer for the City of Los Angeles, during the incident. Exhibit P<br>Sanchez's Responses to Plaintiffs' Request for Admissions at 6:5-8:23<br>Exhibit Q |

| | | | |
|---|---|---|---|
| | | | Sanchez Depo. at 28:5-10

Sanchez's Employee Report states that he "resorted to [his] Los Angeles Police Department training and tactics, drew [his] department approved handgun and fired his Department approved ammunition to protect himself and others from the deadly threat, as written in LAPD's Use of Force Directive 1-1".

Exhibit A
LAPD Employee Report
Exhibit Q
Sanchez Depo. at 28:11-29:12, 30:2-31:1

Sanchez's Employee Report also states that he "acted with peace officer authority as an LAPD officer" when he took action based on California Penal Code Section 830.1 PC and additionally, LAPD Policy Section 230.10, which authorizes off-duty actions.

Exhibit A
LAPD Employee Report |

| | | | |
|---|---|---|---|
| 1 | | | Exhibit Q |
| 2 | | | Sanchez Depo. at 28:11-29:12, 30:2-31:1 |
| 3 | | | |
| 4 | | | LAPD firearms training and tactics were utilized in the shooting and LAPD authorized the weapon and the ammunition used in the shooting. |
| 5 | | | |
| 6 | | | |
| 7 | | | |
| 8 | | | |
| 9 | | | |
| 10 | | | |
| 11 | | | Exhibit A |
| 12 | | | LAPD Employee Report |
| 13 | | | Exhibit Q |
| 14 | | | Sanchez Depo. at 28:11-29:12, 30:2-31:1 |
| 15 | | | |
| 16 | | | |
| 17 | | | LAPD Force Investigation division investigators conducted an investigation, including a scene walk-through and interviews which is standard protocol for on-duty officer involved shootings; |
| 18 | | | |
| 19 | | | |
| 20 | | | |
| 21 | | | |
| 22 | | | |
| 23 | | | |
| 24 | | | |
| 25 | | | |
| 26 | | | Exhibit A |
| 27 | | | LAPD Employee Report |
| 28 | | | Exhibit Q |

5

| | | | |
|---|---|---|---|
| | | | Sanchez Depo. at 28:11-29:12, 30:2-31:1

Sanchez was ordered to input overtime requests for the time spent with FID during their Officer Involved Shooting Protocols; and

Exhibit A
LAPD Employee Report
Exhibit Q
Sanchez Depo. at 28:11-29:12, 30:2-31:1 |
| 4. | **Fact:** Sanchez was not wearing a uniform, bulletproof vest, badge, police hat or utility belt, did not arrive at the location in a marked police unit, and did not display any indicia which would have clearly revealed his employer | **Evidence:** Ex. 6 (Sanchez Depo Transcript) at p. 66:16-19, p. 69: 17-24 and Ex. 7 (FID Interview Transcript) at p. 116: 16-19 | Disputed. Sanchez displayed his LAPD I.D. card to both witnesses and responding CPD officers which clearly revealed his employer to be LAPD and he repeatedly identified as a police officer.
Exhibit H
Omar Barraza Interview at 5:30-5:59, 6:05-6:25, 14:35-14:55 |
| 5. | **Fact:** The firearm Sanchez had with him was his personal weapon. | **Evidence:** Ex. 6 (Sanchez Depo Transcript) at pp. 69-70 | Disputed. Sanchez's firearm was department approved and he only had it because of his status as a police officer.
Exhibit A
LAPD Employee Report by Sanchez; |

6

| | | | |
|---|---|---|---|
| | | | Exhibit Q<br>Sanchez Depo. at 28:11-29:12, 30:2-31:1<br>Exhibit B<br>LAPD Force Investigation Division Report at 26 |
| 6. | **Fact:** Sanchez told LAPD investigators within days of the shooting that he never identified himself as a police officer before opening fire. | **Evidence:** Ex. 7 (FID Interview Transcript) at p. 36:15-16 | Objection. Hearsay.<br>Disputed. Sanchez identified himself as a police officer prior to shooting.<br>Exhibit C<br>Paola French Depo. at 17:24-18:15, 26:11-18, 30:24-31:13, 37:23-38:2, 60:7-14, 64:25-65:4, 65:22-66:3<br>Exhibit D<br>Russell French Depo. at 23:20-24:2, 35:2-17, 66:6-67:8 |
| 7. | **Fact:** Plaintiffs have declined to allege that any public offense took place in Sanchez's presence and subsequent confirmed they did not commit any such offense. | **Evidence:** Ex. 2 (Paola French's Responses to City's RFA Set One) at pp. 4-5 and Ex. 3 (Russell French Responses to City's RFA Set One) at pp. 4-5 | Disputed. Plaintiffs' Third Amended Complaint, Dkt. # 46, alleges that Sanchez perceived what he believed to be the commission of a public offense fired his gun to prevent the escape of an alleged assault and battery suspect, and to act in self-defense or defense of others and that Sanchez believed that it was an active shooter situation inside of the Costco. See TAC, Dkt. # 46, at |

|   |   | 6:17-20, 7:7-9, 8:24-25 and 10:1-4. |
|---|---|---|

## PLAINTIFF'S ADDITIONAL MATERIAL FACTS IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

| No. | Plaintiff's Additional Material Fact | Supporting Evidence |
|---|---|---|
| 8. | Pursuant to LAPD Policy section 230.10, "Responsibility of Off-Duty Officers": Under California law both on-and off-duty officers have peace officer authority as to any public offense committed or where there is probable cause to believe has been committed in his presence and with respect to which there is immediate danger to person or property or the escape of the perpetrator of such offense. However, on-duty officers outside the city limit who are not acting within the scope of their employment as Los Angeles police officers on matters of direct concern to the City and off-duty officers both inside and outside of the city limits are to give first considerations to causing the appropriate action to be effected by the responsible law enforcement agency. Such officers should then act only after consideration of the tactical situation and of their possible liability and that of the City of Los Angeles. | Exhibit Q<br>Sanchez Depo. at 22:17-24:2<br>Exhibit U<br>LAPD Policy, "Responsibility of Off-duty Officers" at pp. 3<br>Exhibit W<br>Depo. of Andrew Kukla at 17:22-21:25 |
| 9. | LAPD's Training Bulletin, Volume 46, Issue 2, entitled "Off Duty Actions" states, "Under California law, off-duty officers have peace officer authority to take action as to | Exhibit A<br>LAPD Employee Report<br>Exhibit Q<br>Sanchez Depo. at 28:11-29:12, 30:2-31:1 |

| | | | |
|---|---|---|---|
| 1 2 3 4 | | any public offense committed in their presence and with respect to which there is immediate danger to person or property or the escape of the perpetrator of such offense." | Exhibit V<br>LAPD Policy Off-duty Actions at 1<br>Exhibit W<br>Depo. of Andrew Kukla at 24:7-30:5 |
| 5 6 | 10. | Sanchez routinely carried his LAPD I.D. card so he can identify himself as a police officer when carrying a concealed weapon. | Exhibit M<br>Sanchez Int. at 65:13-21, 67:25-68:4. |
| 7 8 9 10 11 | 11. | Sanchez entered the Costco with a concealed handgun in his waistband. | Exhibit A<br>LAPD Employee Report<br>Exhibit B<br>FID Report at 26-27<br>Exhibit Q<br>Sanchez Depo. at 25:8-26:5; 28:11-29:12, 30:2-31:1 |
| 12 13 14 15 | 12. | Sanchez's gun, ammunition and holster were all approved by the LAPD/City. | Exhibit A<br>LAPD Employee Report<br>Exhibit Q<br>Sanchez Depo. at 28:11-29:12, 30:2-31:1 |
| 16 17 | 13. | The ammunition in Sanchez's gun during this incident was issued by the LAPD/City. | Exhibit Q<br>Sanchez Depo. at 26:6-9 |
| 18 19 | 14. | California Law and LAPD policy authorized the carrying of the concealed weapon. | Exhibit A<br>LAPD Employee Report by Sanchez |
| 20 21 22 23 24 25 26 27 | 15. | Based on his training, Sanchez can carry a firearm but should generally keep it concealed. Further, off duty police officers who carry a concealed handgun pursuant to their employment as a Los Angeles police officer shall carry only handguns and ammunition which has been authorized by LAPD for on duty use. Sanchez's handgun was authorized for on duty use by LAPD. | Exhibit Q<br>Sanchez Depo. at 26:10-21<br>Exhibit M<br>Sanchez Int. at 138:11-39:9 |
| 28 | 16. | According to witness Regina Boladain, while inside of the Costco | Exhibit R<br>Regina Boladian Int. at 4:17-5:1. |

| | | | |
|---|---|---|---|
| | | Decedent slapped Sanchez in the head. | |
| | 17. | Sanchez believed that he was responding to the incident as a police officer and under his authority as an LAPD officer. | Exhibit Q<br>Sanchez Depo. at 28:5-10 |
| | 18. | Sanchez removed his concealed handgun and announced that he was a police officer. | Exhibit C<br>Paola French Depo. at 17:24-18:15, 26:11-18, 30:24-31:13, 37:23-38:2, 60:7-14, 64:25-65:4, 65:22-66:3<br>Exhibit D<br>Russell French Depo. at 23:20-24:2, 35:2-17, 66:6-67:8 |
| | 19. | As a LAPD officer, Sanchez was trained that he should identify himself as a police officer before using force. | Exhibit Q<br>Sanchez Depo. at 86:11-14 |
| | 20. | Paola French pleaded with Sanchez not to shoot her son, Decedent. | Exhibit C<br>Paola French Depo. at 17:24-18:15, 31:25-32:6 |
| | 21. | Russell French told Sanchez that his son was sick and to not shoot, prior to the shooting. | Exhibit D<br>Russell French Depo. at 23:20-24:2, 35:2-17 |
| | 22. | Paola French stood near Sanchez, while he had a gun in his hand, and pleaded with him not to shoot her son in part because he said that he was a police officer. | Exhibit E<br>Paola French Declaration at ¶¶ 3-5. |
| | 23. | Russell French told Sanchez that his son was sick and pleaded with him not to shoot in part because Sanchez announced himself as a police officer. | Exhibit S<br>Russell French Declaration at ¶¶ 4-5. |
| | 24. | Sanchez fired multiple shots inside of the Costco striking Paola, Russell and Kenneth French.  Kenneth French did | Exhibit A<br>LAPD Employee Report<br>Exhibit Q<br>Sanchez Depo. at 28:11-29:12, 30:2- |

| | | | |
|---|---|---|---|
| | | not survive his multiple gunshot wounds. | 31:1 |
| | 25. | After shooting Paola, Russell and Kenneth French, Sanchez continued to identify himself as being a police officer those around him. Sanchez even showed his LAPD identification card to prove that he was a police officer. | Exhibit F<br>Douglas Matz Interview at 8:40-9:00, 20:50-21:05<br>Exhibit G<br>Victor White Interview at 3:25-3:50, 12:50-1:00<br>Exhibit H<br>Omar Barraza Interview at 5:30-5:59, 6:05-6:25, 14:35-14:55<br>Exhibit C<br>Paola French Depo. at 36:7-11, 40:13-41:3, 65:22-66:3<br>Exhibit D<br>Russell French Depo. at 66:6-67:8<br>Exhibit J<br>Wesley Manning Int. at 11:20-11:45, 12:20-12:40, 14:50-15:30, 17:25-17:35, 37:00-37:40 |
| | 26. | According to witness Omar Barraza, who is a prison guard with the California Dept. of Corrections, after the shooting no one nearby would talk to Sanchez, but once Sanchez identified himself as being a police officer, Barraza felt it was safe to approach and was the first to make contact with Sanchez after the shooting. | Exhibit I<br>Omar Barraza 2nd Interview at 1:13-1:2:02 |
| | 27. | According to witness Wesley Manning, who is an off duty fireman for the Los Angeles Fire Dept., Sanchez identified himself as a police officer so he knew that Sanchez was one of the "good guys". | Exhibit J<br>Wesley Manning Int. at 11:20-11:45, 12:20-12:40, 14:50-15:30, 17:25-17:35, 37:00-37:40 |

11

| | | |
|---|---|---|
| 28. | Police officers from the Corona Police Department ("CPD"), responded to the shooting inside of the Costco and made contact with Sanchez. Sanchez told the responding CPD officers that he was a police officer and showed them his LAPD identification card. | Exhibit K<br>CPD Report by Officer Hungerford at 7:24<br>Exhibit L<br>CPD Body Camera Transcript at 6:4-5, 7:2, 13:21-14:1, 15:3-12 |
| 29. | Sanchez showed his LAPD I.D. card to the responding CPD officers without being asked. | Exhibit M<br>Sanchez Int. at 65:17-68:8, 15:3-13 |
| 30. | A CPD officer took Sanchez's gun from him and Sanchez was initially handcuffed. | Exhibit K<br>CPD Report by Officer Hungerford at 7:11-12, 7:24; 7:25-27, 7:31-33. |
| 31. | Sanchez told a CPD officer that he was an officer for LAPD. In response, the CPD officer unhandcuffed Sanchez and told him "that's all you got to say" and "sorry bro". | Exhibit L<br>CPD Body Camera Transcript at 13:21-15:13. |
| 32. | Sanchez told the responding CPD officers that he thought he had been shot in the head by Decedent, that he saw a blast and that Decedent had a gun. | Exhibit L<br>CPD Body Camera Transcript at 2:12-4:25, 6:4-16, 8:16-25, 16:13-16, 19:9-19 |
| 33. | Sanchez then was escorted outside of the Costco was reunited with his son and wife and was then transported to a nearby hospital. | Exhibit M<br>Sanchez Int. at 28:19-29:1 |
| 34. | While at the hospital Sanchez was contacted by three of his superiors from the LAPD Southwest division where Sanchez works. His LAPD superiors monitored Sanchez throughout the evening until Sanchez | Exhibit M<br>Sanchez Int. at 106:17-110:3 |

| | | | |
|---|---|---|---|
| | | was discharged from the hospital and went home. Per LAPD protocols for officer involved shootings, Sanchez was ordered not to discuss the incident until he has been interviewed by LAPD's Force Investigation Division. Sanchez followed this order. | |
| | 35. | After the shooting Sanchez was allowed to go home. Sanchez was not arrested, he was not taken to jail and he was not even issued a citation. | Exhibit M<br>Sanchez Int. at 109:10-12 |
| | 36. | Sanchez notes in his LAPD Employee Report that "the shooting was pursuant to [his] authority as a LAPD officer and under the course and scope of [his] employment by the City of Los Angeles/LAPD. | Exhibit A<br>LAPD Employee Report<br><br>Exhibit Q<br>Sanchez Depo. at 28:11-29:12, 30:2-31:1 |
| | 37. | Sanchez denies that he was not acting in his capacity as a LAPD police officer at the time of the incident. Sanchez also denies that he was off duty at the time of the incident. | Exhibit O<br>Sanchez's Responses to Defendant City's Request for Admissions at 4:16-5:5, 5:7-23 |
| | 38. | On the night of the incident Sanchez returned to the Costco where LAPD compelled him to cooperate in a walk-through with investigators from LAPD. Sanchez was paid for his time spent with LAPD investigators regarding this incident, including for the walk-through. | Exhibit M<br>Sanchez Int. at 25:24-26:1, 105:19-106:15, 109:15-17<br>Exhibit A<br>LAPD Employee Report<br>Exhibit Q<br>Sanchez Depo. at 28:11-29:12, 30:2-31:1<br>Exhibit P<br>Sanchez's Responses to Plaintiffs' Request for Admissions at 9:11-11:8 |
| | 39. | LAPD detectives recovered Sanchez's gun from the CPD and the | Exhibit B<br>FID Report at 26-27. |

13

| | | |
|---|---|---|
| | | gun was transported to the LAPD firearms unit for analysis. | |
| 40. | On June 17, 2019, Sanchez was interviewed by Detectives Zesati and Rheault from LAPD's Force Investigation Division ("FID").  This interview occurred during Sanchez's regularly scheduled shift and hours.  This interview was not voluntary, and LAPD compelled and ordered Sanchez to give the interview and was told his employment with LAPD could be terminated if he did not answer their questions. | Exhibit M<br>Sanchez Int. at 2:5-4:18 |
| 41. | Sanchez told LAPD investigators that prior to the shooting he heard screams, saw Decedent carrying a black gun, he saw a bright muzzle flash or light and then heard the gunshot and believed he had been shot in the head. | Exhibit M<br>Sanchez Int. at 13:13-18:8, 31:11-33:9, 58:9-13, 85:1-16, 86:23-25, 130:9-25 |
| 42. | Sanchez told LAPD investigators that he fired because Decedent was a threat or a danger to himself, to his son or to the other customers in the Costco.  Sanchez also told LAPD investigators that he believed it was an "active shooter" situation. | Exhibit M<br>Sanchez Int. at 17:3-18:20, 47:8-18, 54:19-24, 80:17-81:1, 96:8-18, 111:4-5 |
| 43. | Sanchez was compelled and ordered to give a second interview to LAPD investigators on February 2, 2020. | Exhibit N<br>Sanchez Second Int. at 1:5-3:20. |
| 44. | Sanchez submitted an LAPD Employee's Report, in which he cited | Exhibit A<br>LAPD Employee Report |

| | | |
|---|---|---|
| | LAPD's off-duty training, LAPD's Training Bulletin, Volume 46, Issue 2, entitled "Off Duty Actions," which states, "Under California law, off-duty officers have peace officer authority to take action as to any public offense committed in their presence and with respect to which there is immediate danger to person or property or the escape of the perpetrator of such offense." | Exhibit Q<br>Sanchez Depo. at 28:11-29:12, 30:2-31:1 |
| **45.** | Sanchez's Employee Report indicates that he "resorted to [his] Los Angeles Police Department training and tactics, drew [his] department approved handgun and fired his Department approved ammunition to protect himself and others from the deadly threat, as written in LAPD's Use of Force Directive 1-1." | Exhibit A<br>LAPD Employee Report<br><br>Exhibit Q<br>Sanchez Depo. at 28:11-29:12, 30:2-31:1 |
| **46.** | Sanchez also stated in his Employee Report that he "acted with peace officer authority as an LAPD officer" when he took action, based on California Penal Code Section 830.1 PC and also based LAPD Policy Section 230.10, which authorizes off-duty actions. | Exhibit A<br>LAPD Employee Report<br><br>Exhibit Q<br>Sanchez Depo. at 28:11-29:12, 30:2-31:1 |
| **47.** | Sanchez further indicates in the LAPD Employee Report that he utilized LAPD firearms training and tactics were utilized in the shooting. | Exhibit A<br>LAPD Employee Report<br><br>Exhibit Q<br>Sanchez Depo. at 28:11-29:12, 30:2-31:1 |

15

| | | |
|---|---|---|
| **48.** | Sanchez further indicates, in the LAPD Employee Report, that LAPD authorized the weapon and the ammunition used in the shooting. | Exhibit A<br>LAPD Employee Report<br><br>Exhibit Q<br>Sanchez Depo. at 28:11-29:12, 30:2-31:1 |
| **49.** | LAPD Force Investigation division investigators conducted an investigation, including a scene walk-through and interviews which is standard protocol for on-duty officer involved shootings. | Exhibit A<br>LAPD Employee Report<br><br>Exhibit Q<br>Sanchez Depo. at 28:11-29:12, 30:2-31:1 |
| **50.** | Sanchez was ordered to input overtime requests for the time spent with FID during their Officer Involved Shooting Protocols. | Exhibit A<br>LAPD Employee Report<br><br>Exhibit Q<br>Sanchez Depo. at 28:11-29:12, 30:2-31:1 |
| **51.** | Sanchez believes that he was acting under color of law at the time of the incident. | Exhibit P<br>Sanchez's Responses to Plaintiffs' Request for Admissions at 6:5-7:15<br>Exhibit Q<br>Sanchez Depo. at 28:5-10 |
| **52.** | Sanchez believes that he was acting within the course and scope of his employment with the City as an LAPD officer, at the time of the incident. | Exhibit P<br>Sanchez's Responses to Plaintiffs' Request for Admissions at 6:5-7:15<br>Exhibit Q<br>Sanchez Depo. at 28:5-10 |
| **53.** | Sanchez believes that he was acting within his official capacity as a police officer of the City police department during the incident. | Exhibit P<br>Sanchez's Responses to Plaintiffs' Request for Admissions at 7:16-8:23<br>Exhibit Q<br>Sanchez Depo. at 28:5-10 |

| | | |
|---|---|---|
| 54. | Sanchez admits to purporting to act in the performance of his official duties as a police officer for the City, during the incident. | Exhibit P<br>Sanchez's Responses to Plaintiffs' Request for Admissions at 7:16-8:23<br>Exhibit Q<br>Sanchez Depo. at 28:5-10 |
| 55. | Sanchez testified that during the shooting, he utilized his police training on the use of lethal force, training on the mechanics of using the firearm, and training on when a police officer is permitted to use force in accordance with LAPD policy and California law. | Exhibit Q<br>Sanchez Depo. at 125:13-24 |
| 56. | Pursuant to LAPD Policy Manual §§ 610.10, 610.11, and 610.70, every LAPD officer shall possess an authorized firearm, and officers who carry a concealed handgun pursuant to their employment as an LAPD officer shall only carry handguns that have been approved by the LAPD. | Exhibit T<br>LAPD Policies<br>Exhibit Q<br>Sanchez Depo. at 21:12-24:25, 25:24-26:21 |
| 57. | LAPD Policy, Sections 525.15, 610.90, 610.11, and 610.90 authorized Sanchez to carry a concealed weapon into Costco, and the weapon and the ammunition that Sanchez used to shoot Decedent and Plaintiffs were approved by the LAPD/City. | Exhibit T<br>LAPD Policies<br>Exhibit Q<br>Sanchez Depo. at 21:12-24:25, 25:24-26:21-151:13-16 |
| 58. | The City's Person Most Knowledgeable ("PMK") testified at deposition that LAPD officers are permitted to carry a concealed firearm by virtue of their status as an LAPD officer and the concealed | Exhibit W<br>Andrew Kukla Depo. at 22:11-24 |

| | | |
|---|---|---|
| | weapons permit signed by the chief of police. | |
| 59. | The PMK also testified that there is an approved group of weapons and an approved group of ammunition that an off-duty officer can carry. | Exhibit W<br>Andrew Kukla Depo. at 23:14-23 |
| 60. | The City does not train its LAPD officers that if they see a crime, they are forbidden from arresting the person involved, nor does the City train its LAPD officers that they are forbidden from pulling out a concealed weapon if they feel it is necessary to do so. | Exhibit W<br>Andrew Kukla Depo. at 23:14-23 |
| 61. | The City does not train its police officers that if they perceive an imminent threat of death or serious bodily injury and they are off-duty, that they are not allowed to use deadly force because they are off-duty. | Exhibit W<br>Andrew Kukla Depo. at 40:3-7 |
| 62. | The City trains its police officers that if they use force during an off-duty encounter, they will be held to the same standard as though they were on-duty. | Exhibit W<br>Andrew Kukla Depo. at 45:2-6 |
| 63. | Sanchez had received training on off-duty actions just a few days before the incident. | Exhibit Q<br>Sanchez Depo. at 103:24-104:3 |
| 64. | the City trains its police officers that they can take police action when off-duty if the situation warrants it, including making an arrest or using deadly force, and that they are expected to rely on their LAPD | Exhibit W<br>Andrew Kukla Depo. at 26:20-27:22 |

| | | |
|---|---|---|
| | training with respect to tactics and the use of force when responding to a situation while off-duty | |
| 65. | The City trains its police officers that if they use force during an off-duty encounter, they will be held to the same standard as though they were on-duty. | Exhibit W<br>Andrew Kukla Depo. at 29:15-30:5 |
| 66. | The PMK testified that LAPD officers are trained to identify themselves as a police officer if they use force when they are off-duty, so that responding officers do not mistake the officer for a person who might be posing a threat. | Exhibit W<br>Andrew Kukla Depo. at 34:19-35:12 |

Respectfully submitted,

DATED: August 30, 2021        THE LAW OFFICES OF DALE K. GALIPO

          By:  /s/ Eric Valenzuela
             Dale K. Galipo
             Eric Valenzuela
             Renee V. Masongsong
             Attorneys for Plaintiffs