Exhibit "A"

**PAOLA FRENCH, ET AL. vs CITY OF LOS ANGELES, ET AL.**
**Salvador Sanchez on 03/10/2021**

```
 1                  UNITED STATES DISTRICT COURT

 2          CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

 3

 4   PAOLA FRENCH and RUSSELL FRENCH,     )
                                          )
 5                  Plaintiffs,           )
                                          )
 6               vs.                      ) Case No.
                                          ) 5:20-CV-00416-JGB-SP
 7   CITY OF LOS ANGELES; SALVADOR SANCHEZ;)
     and DOES 1-10, inclusive,            )
 8                                        )
                    Defendants.           )
 9   _____)

10

11

12

13

14        VIDEOTAPED REMOTE VIDEOCONFERENCE DEPOSITION OF

15                       SALVADOR SANCHEZ

16                  WEDNESDAY, MARCH 10, 2021

17

18

19

20

21

22

23   Reported Stenographically by:

24   Jinna Grace Kim, CSR No. 14151

25   Job No.:  332601
```

PAOLA FRENCH, ET AL. vs CITY OF LOS ANGELES, ET AL.
Salvador Sanchez on 03/10/2021                                    **Page 2**

```
 1                   UNITED STATES DISTRICT COURT

 2          CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

 3

 4    PAOLA FRENCH and RUSSELL FRENCH,      )
                                            )
 5                     Plaintiffs,          )
                                            )
 6                     vs.                  ) Case No.
                                            ) 5:20-CV-00416-JGB-SP
 7    CITY OF LOS ANGELES; SALVADOR SANCHEZ;)
      and DOES 1-10, inclusive,             )
 8                                          )
                       Defendants.          )
 9    _____)

10

11

12

13

14          The videotaped remote videoconference deposition of

15    SALVADOR SANCHEZ, taken on behalf of the Plaintiffs,

16    beginning at 9:37 a.m., and ending at 4:35 p.m., on

17    Wednesday, March 10, 2021, before Jinna Grace Kim, a

18    Certified Stenographic Shorthand Reporter No. 14151, reported

19    from Sherman Oaks, California, licensed in State of

20    California.

21

22

23

24

25
```

**PAOLA FRENCH, ET AL. vs CITY OF LOS ANGELES, ET AL.**

Salvador Sanchez on 03/10/2021                              Page 3

```
 1    APPEARANCES OF COUNSEL:

 2
      For the Plaintiffs:
 3
               LAW OFFICES OF DALE K. GALIPO
 4             BY:  DALE K. GALIPO, ESQ.
               BY:  RENEE V. MASONGSONG, ESQ.
 5             BY:  ERIC VALENZUELA, ESQ.
               21800 Burbank Boulevard, Suite 310
 6             Woodland Hills, California 91367
               Tel:  818-347-3333
 7             Fax:  818-347-4118
               E-mail:  dalekgalipo@yahoo.com
 8             E-mail:  rvalentine@galipolaw.com
               E-mail:  evalenzuela@galipolaw.com
 9

10    For the Defendants:

11             CITY OF LOS ANGELES
               BY:  CORY M. BRENTE, ESQ.
12             BY:  COLLEEN R. SMITH, ESQ.
               City Hall East
13             200 N. Main Street, 6th Floor
               Los Angeles, California 90012
14             Tel:  213-978-6900
               Fax:  213-978-8785
15             E-mail:  cory.brente@lacity.org
               E-mail:  colleen.smith@lacity.org
16

17             LEWIS BRISBOIS BISGAARD & SMITH, LLP
               BY:  DANA A. FOX, ESQ.
18             633 West 5th Street, Suite 4000
               Los Angeles, California 90071
19             Tel:  213-680-5104
               Fax:  213-250-7900
20             E-mail:  dana.fox@lewisbrisbois.com

21

22

23

24

25
```

PAOLA FRENCH, ET AL. vs CITY OF LOS ANGELES, ET AL.
Salvador Sanchez on 03/10/2021                                    **Page 4**

```
 1                            INDEX

 2   WITNESS:                                        PAGE

 3   SALVADOR SANCHEZ

 4      BY: MR. GALIPO                               6

 5      BY: MR. BRENTE                               63

 6      BY: MR. GALIPO                               148

 7      BY: MR. BRENTE                               152

 8

 9                          EXHIBITS

10   MARKED FOR IDENTIFICATION                       PAGE

11   Exhibit 1              Policies                 21

12   Exhibit 2              Employees Report         28

13   Exhibit 3              Discovery Responses      31

14   Exhibit 4              Photograph               38

15   Exhibit 5              Photograph               39

16   Exhibit 6              Salvador Sanchez's Responses 39
                            to Co-Defendant City of Los
17                          Angeles Request for
                            Admissions Set One
18
     Exhibit 7              Salvador Sanchez's Responses 40
19                          to Co-Defendant City of Los
                            Angeles' Special
20                          Interrogatorries Set One

21

22

23

24

25
```

PAOLA FRENCH, ET AL. vs CITY OF LOS ANGELES, ET AL.
Salvador Sanchez on 03/10/2021                      Page 5

```
 1                        CALIFORNIA

 2               WEDNESDAY, MARCH 10, 2021

 3                         9:37 P.M.

 4          THE VIDEOGRAPHER:  Good morning.  This is the

 5   beginning of Media No. 1 in the deposition of Salvador

 6   Sanchez, in the matter of Paola and Russell French v. the

 7   City of Los Angeles.  Case number is 5:20-CV-00416-JGB-SP,

 8   filed in the United States District Court for the Central

 9   District of California, Eastern Division.

10          Today's date is March 10, 2021.  Time on the video

11   monitor is 9:37.  My name is Stephen Smith, and I'm a notary

12   public and the videographer.  The court reporter is Jinna

13   Kim.

14          Attorneys participating in this proceeding

15   acknowledge that I'm not physically present in the proceeding

16   room and that I will be videotaping this proceeding remotely.

17          MR. GALIPO:  Yes --

18          THE VIDEOGRAPHER:  Counsels, please introduce

19   yourselves after which the court reporter will swear in the

20   witness.

21          MR. GALIPO:  Dale Galipo, appearing on behalf of the

22   Plaintiffs.  Also Renee Masongsong from my office is on the

23   call and attorney Eric Valenzuela is sitting next to me in

24   the conference room that I am in.  And we have Kevin French

25   who will only be listening to the deposition.
```

PAOLA FRENCH, ET AL. vs CITY OF LOS ANGELES, ET AL.
Salvador Sanchez on 03/10/2021                                    Page 18

1      A.   That's -- that's once, yes.  That's what I recall.

2      Q.   Okay.  To your knowledge, before the lawsuit you

3   received in this case, had you ever been named as a defendant

4   or sued before?

5      A.   No.

6      Q.   And, if you know, have there ever been any

7   complaints made against you before the day of the Costco

8   incident about using excessive force?

9      A.   Yes.

10     Q.   And do you know how many complaints there were,

11   approximately?

12     A.   I recall once.

13     Q.   And do you remember what type of force they were

14   claiming you used in that incident?

15     A.   Physical force.

16     Q.   Okay.  I mean, do you remember was it like a punch

17   or a kick, or do you recall?

18     A.   I don't recall specifically.

19     Q.   And, to your knowledge, was that complaint reviewed

20   by the Department?

21     A.   Yes.

22     Q.   And, to your knowledge, was that determined to be

23   unfounded?

24     A.   I don't recall the disposition, but I recall that it

25   was not sustained.

PAOLA FRENCH, ET AL. vs CITY OF LOS ANGELES, ET AL.
Salvador Sanchez on 03/10/2021

1     Q.   Okay.  How tall are you?

2     A.   Estimate, 5-foot-7.

3     Q.   Okay.  And how much do you currently weigh?

4     A.   I would approximate 200 pounds.

5     Q.   And what would you estimate that your weight was at

6  the time of the incident at Costco?

7     A.   I would approximate a 190 pounds.

8     Q.   You would estimate you gained approximately ten

9  pounds?

10    A.   Yes.  Pandemically.

11    Q.   Yes.  Well, you're not the only one.

12         Except I'm sure Mr. Fox has kept and Mr. Brente have

13  kept their fine weight down.

14         MR. FOX:  I like that new adjective, pandemically.

15         I'm going to use that, Sal.  Thank you.  That's a

16  good one.

17  BY MR. GALIPO:

18    Q.   Okay.  The day, if we went to the day before the

19  incident at Costco, did you have any physical injuries or

20  complaints of pain the day before the incident at Costco?

21    A.   No.

22    Q.   Were you seeing a medical doctor for any reason

23  before the incident at Costco?

24    A.   Yes.

25    Q.   And what were you seeing a medical doctor for?

 1          MR. FOX:  And, Sal, it should not invade your

 2   privacy.  Just give a very broad answer, if you would.

 3          THE WITNESS:  Yes.  Endocrine issues.

 4   BY MR. GALIPO:

 5      Q.   Okay.  Were you taking some medication for that?

 6      A.   Yes.

 7      Q.   And, to your knowledge, did the medication affect

 8   you at all?  In other words, make you feel sleepy or anything

 9   like that?

10      A.   No.

11      Q.   Okay.  And to the best of your knowledge, did you

12   take your normal medication the day before the incident at

13   Costco and also the day of the incident?

14      A.   Yes.

15      Q.   And that particular Costco where this happened, had

16   you been there before the date of the incident?

17      A.   No.

18      Q.   Okay.  To your knowledge, was that the first day

19   that you had gone to that Costco?

20      A.   Yes.

21      Q.   And were you with your wife?

22      A.   Yes.

23      Q.   What is your wife's name?

24      A.   Rosemary.

25      Q.   And were you with your son?

PAOLA FRENCH, ET AL. vs CITY OF LOS ANGELES, ET AL.
Salvador Sanchez on 03/10/2021                                          Page 21

1       A.    Yes.

2       Q.    How old was your son, approximately, at the time of

3  this incident?

4       A.    Approximately one year and a half.

5       Q.    Okay.  Now, you mentioned you did look at some

6  policies in preparation for the deposition; is that

7  correct?

8       A.    Yes.

9       Q.    And were those, as you understand it, LAPD

10  policies?

11      A.    Yes.

12      Q.    We have some policies that I'm going to try to show

13  on the screen.  We'll see how this works.

14           MR. GALIPO:  But I'm going to mark these as Exhibit

15  1.

16           (Exhibit 1 was marked for identification.)

17           MR. GALIPO:  And we're going to try to put them up

18  so everyone can see them.  So let's see how that goes, and

19  I'll ask if we can see them before I ask any questions about

20  them.

21           And my office will also at the conclusion of the

22  deposition e-mail all the exhibits to all the attorneys so

23  we have them.

24  BY MR. GALIPO:

25      Q.    Okay.  First of all, can you see this document on

**PAOLA FRENCH, ET AL. vs CITY OF LOS ANGELES, ET AL.**
Salvador Sanchez on 03/10/2021                                    Page 22

1   your screen?

2        A.   Yes.

3        Q.   And I have Renee assisting me.

4             MR. GALIPO:  Renee, is there a way to make it

5   slightly larger?

6             Okay.  That's good, I think.

7   BY MR. GALIPO:

8        Q.   Do you know if this looks similar to one of the

9   documents you looked at?

10       A.   Yes.

11       Q.   It looks like at the top, it says, "Los Angeles

12  Police Department."  And the numbers appear to say, "230.

13  When to take police action.  230.5.  Responsibility of

14  on-duty officers."

15            Do you see where I'm reading from?

16       A.   Yes.

17       Q.   And then, "230.10, Responsibility of off-duty

18  officers."

19            Do you see that?

20       A.   Yes.

21       Q.   The section of off-duty officers, is that a section

22  that you have reviewed recently?

23       A.   Yes.

24       Q.   Okay.  I'm going to read it into the record and then

25  I'm going to ask you a few follow-up questions about it

**PAOLA FRENCH, ET AL. vs CITY OF LOS ANGELES, ET AL.**
**Salvador Sanchez on 03/10/2021**                                    Page 23

1      (reading):

2                "Under California law both on-and off-duty officers

3      have peace officer authority as to any public offense

4      committed or where there is probable cause to believe has

5      been committed in his presence and with respect to which

6      there is immediate danger to person or property or the escape

7      of the perpetrator of such offense."

8                Do you see the first sentence that I read?

9         A.   Yes.

10        Q.   Was that your understanding of part of the policy?

11        A.   Yes.

12        Q.   And was that, what I just read, part of your

13     training as a police officer?

14        A.   Yes.

15        Q.   It then says (reading):

16                "However, on-duty officers outside the city limit

17     who are not acting within the scope of their employment as

18     Los Angeles police officers on matters of direct concern to

19     the City and off-duty officers both inside and outside of the

20     city limits are to give first considerations to causing the

21     appropriate action to be effected by the responsible law

22     enforcement agency.  Such officers should then act only after

23     consideration of the tactical situation and of their possible

24     liability and that of the city of Los Angeles."

25                Is that essentially your understanding of what I

**PAOLA FRENCH, ET AL. vs CITY OF LOS ANGELES, ET AL.**
Salvador Sanchez on 03/10/2021                                      Page 24

```
 1   just read of that section of the policy?

 2       A.   Yes.

 3       Q.   And then if we can scroll down, there is a section

 4   240.05, Respect for constitutional rights.

 5            MR. GALIPO:  Are we able to scroll?

 6            Thank you.

 7   BY MR. GALIPO:

 8       Q.   I'm not going to read all of this, but was it

 9   generally your understanding as a police officer whether

10   on-duty or off-duty you should show respect for the

11   constitutional rights of others?

12       A.   Yes.

13       Q.   Okay.

14            MR. GALIPO:  Can we go to the next page.

15            MR. BRENTE:  Dale, this is Cory.  We should just

16   make clear that the sections you just read are from Volume 1

17   of the manual.  I think there is five volumes.  The section

18   you read is from Volume 1.

19            MR. GALIPO:  Okay.  Thank you, Cory.

20   BY MR. GALIPO:

21       Q.   And then there's a section 210.35, Conduct on

22   becoming an officer.

23            I'm not going to read that, but was that part of the

24   policy and part of your training as well?

25       A.   Yes.
```

1          MR. GALIPO:  We can go to the next page of Exhibit

2     1, please.  And, Cory, was that also Volume 1, for the

3     record?

4          MR. BRENTE:  Yes.  That's also within Volume 1.

5          MR. GALIPO:  Thank you.

6     BY MR. GALIPO:

7          Q.   And we'll try to show the next page of Exhibit 1.

8          Okay.  I wanted to ask you about -- you had a

9     firearm on your person when you went to Costco; is that

10    correct?

11         A.   Yes.

12         Q.   And you also had ammunition?

13         A.   Yes.

14         Q.   And I'm assuming the ammunition was in the

15    firearm?

16         A.   Yes.

17         Q.   What type of firearm was it?

18         A.   It's a Model Glock 26.

19         Q.   And was that firearm approved by the Department?

20         A.   Yes.

21         Q.   And was the ammunition that you had for the firearm

22    approved by LAPD, also?

23         A.   Yes.

24         Q.   So you see on the screen there is a section 610.11,

25    Authorized handguns and ammunition?

**PAOLA FRENCH, ET AL. vs CITY OF LOS ANGELES, ET AL.**
Salvador Sanchez on 03/10/2021                                    **Page 26**

1      A.    Yes.

2      Q.    Would it be correct to say that the firearm that you

3   had on you that day and the ammunition, to your knowledge,

4   was authorized by the LAPD?

5      A.    Yes.

6      Q.    And, to your knowledge, were you authorized to carry

7   that weapon that day by virtue of your position as an LAPD

8   officer?

9      A.    Yes.

10      Q.    And was it also your understanding that -- and I'm

11   looking at the last sentence of 610.11; that off-duty

12   officers who carry a concealed handgun pursuant to their

13   employment as a Los Angeles police officer shall carry only

14   handguns and ammunitions which have been authorized by the

15   Department for on-duty use.

16          That was your understanding; correct?

17      A.    Yes.

18      Q.    And by virtue of your training, was it your

19   understanding that you can carry the firearm, but you should

20   generally keep it concealed?

21      A.    Yes.

22      Q.    Okay.  I'm not sure if I'm using the right term

23   here, but what level were you?  Were you a Level 1 officer,

24   or what was the level you were at?

25      A.    Level 2.

1      Q.    Okay --

2      A.    Police Officer 2.

3      Q.    Okay.  So you see here they talk about reserved

4    officers.  You clearly were not a reserve officer.  You were

5    a full fledged police officer; correct?

6      A.    Yes.

7      Q.    And do you know generally what the difference is

8    between Level 1 and Level 2?

9            MR. BRENTE:  So I'm just going to -- this is Cory,

10   object for the record.

11           Are you talking about as it relates to reserve

12   police officers, or are you asking about Police Officer 1 and

13   a Police Officer 2?

14           MR. GALIPO:  Correct, Cory.  I'm sorry.

15           We can take this off because I think it's confusing

16   because that was talking about reserve officers.

17   BY MR. GALIPO:

18     Q.    But just generally, what is your understanding of

19   the difference between Police Officer 1 and Police Officer

20   2?

21     A.    A Police Officer 1's are probationary officers who

22   have yet to complete their probationary period.  Following

23   completion of that probationary period, they will be

24   promoted, so to speak, as Police Officer Level 2's.

25     Q.    Okay.  I'm not at this point going to ask you about

1    the specifics of the shooting incident in Costco, but I want

2    to ask you a more general question.

3           And that is when the incident occurred, and I'm

4    talking about the shooting incident generally.

5           Did you believe in your mind you were responding to

6    the incident as a police officer?

7       A.   Yes.

8       Q.   And when the incident occurred, were you acting, as

9    you understood it, under your authority as an LAPD officer?

10      A.   Yes.

11      Q.   And I would like to show you an exhibit, Exhibit 2.

12           (Exhibit 2 was marked for identification.)

13   BY MR. GALIPO:

14      Q.   Which is a document, I believe, you signed, and

15   we'll try to put it on the screen.

16           MR. GALIPO:  Can we scroll to the bottom, please,

17   and do you -- I'll go back.

18   BY MR. GALIPO:

19      Q.   Do you see a signature on the bottom right?

20      A.   Yes.

21      Q.   Is that your signature?

22      A.   Yes.

23      Q.   Okay.

24           MR. GALIPO:  Can we scroll to the top, please.

25   BY MR. GALIPO:

**PAOLA FRENCH, ET AL. vs CITY OF LOS ANGELES, ET AL.**
Salvador Sanchez on 03/10/2021                                    Page 29

```
 1      Q.   Do you see where it says, "Employees report?"

 2      A.   Yes.

 3      Q.   And I'm not going to go through all the specifics of

 4  this document, but it's referencing the June 14, 2019

 5  incident at Costco; is that correct?

 6      A.   Yes.

 7      Q.   And it references the date and time reported there.

 8           It looks like it says February 2nd of 2020.

 9      A.   Yes.

10      Q.   And then there is some narrative included in the

11  document; correct?

12      A.   Yes.

13      Q.   And, again, without going into specifics, you were

14  trying to explain the reasons why you were acting with peace

15  officer authority as an LAPD officer at the time of the

16  Costco incident?

17           MR. BRENTE:  So I'm going to -- this is Cory Brente.

18  I'm just going to object as the question lacks foundation

19  because it assumes that he is the author of this document

20  which I believe is identified as Exhibit 2.

21           MR. GALIPO:  Okay.  Your objection is noted.

22  BY MR. GALIPO:

23      Q.   You may answer the question.

24           Do you want me to repeat the question, or do you

25  remember it?
```

**PAOLA FRENCH, ET AL. vs CITY OF LOS ANGELES, ET AL.**
**Salvador Sanchez on 03/10/2021**                              **Page 30**

```
1      A.    May you repeat the question, please.

2      Q.    Sure.  There is a portion of the document, and,

3   again, I don't want to read the whole thing.  Right before

4   the number starts 1 through 8 where it's indicated; that

5   based on the following facts, I acted with peace officer

6   authority as an LAPD officer when I took action.

7            And then there is eight items.  Do you see that?

8      A.    Yes.

9      Q.    And then at the bottom as we already talked, if we

10  can scroll down, you signed the document; correct?

11     A.    Yes.

12     Q.    Would it be correct to say that you carefully

13  reviewed and read this document before you signed it?

14     A.    Yes.

15     Q.    And would it be correct that you wanted to make sure

16  that the information and -- in this document was true and

17  correct?

18     A.    Yes.

19     Q.    And once you reviewed it and were confident or

20  comfortable from your perspective the information was true

21  and correct, you then signed the document?

22     A.    Yes.

23     Q.    Okay.  And the items 1 through 8 on the document,

24  those were some of the facts you were including as to why

25  from your perspective you were acting with police -- peace
```

 1   officer authority as an LAPD officer at the time of the

 2   incident?

 3       A.   Yes.

 4       Q.   Okay.  Thank you.

 5            MR. GALIPO:  Can we go to Exhibit 3, please, which

 6   are Discovery Responses.

 7            (Exhibit 3 was marked for identification.)

 8   BY MR. GALIPO:

 9       Q.   Okay.  You may remember at some point Dana or

10   someone from his office calling you.  I don't want to know

11   anything about your specific communications, but letting you

12   know that there were some questions that had to be responded

13   to?

14       A.   Yes.

15       Q.   Okay.  And these were propounded on you by my

16   office, and they're request for admissions from Plaintiff,

17   Paola French, although, I see at least in this document

18   Paola's name is misspelled.  There should be an "O" where the

19   "U" is.

20            But in any event, let's look to some of the

21   questions and answers on this.  And we can start with No. 4.

22   If we can scroll to No. 4, please.

23            And the request for admission No. 4 says, "Admit

24   that -- admit that is your belief that you were acting under

25   color of state law at the time of the incident."

**PAOLA FRENCH, ET AL. vs CITY OF LOS ANGELES, ET AL.**
Salvador Sanchez on 03/10/2021                                    Page 32

1              And then there is a group of objections, and then on

2       Lines 21 and 22, it says, "Subject to and without waiving any

3       objection, responding party responds as follows.  Admit."

4              Do you see that response?

5         A.   Yes.

6         Q.   And then going to question, request for admission

7       No. 5, "Admit that it's your belief that you were acting

8       within the course and scope of your employment with the City

9       as an LAPD officer at the time of the incident."

10             Again, the response to request for admission No. 5

11      has various objections and then on Lines 14 and 15 of the

12      next page says, "Subject to and without waiving any

13      objections, responding party responds as follows.  Admit."

14             Do you see that?

15        A.   Yes.

16        Q.   So you understood, obviously, that you were

17      admitting that it was your belief that you were acting within

18      the course and scope of your employment with the City as an

19      LAPD officer at the time of the incident; correct?

20        A.   Yes.

21        Q.   And going to question 6, please.

22             Request for admission 6, "Admit that it's your

23      belief that you were acting within your official capacity as

24      a police officer for the City Police Department during this

25      incident."

**PAOLA FRENCH, ET AL. vs CITY OF LOS ANGELES, ET AL.**
Salvador Sanchez on 03/10/2021                                    Page 33

1              The response, again, is various objections, and then

2      going to the next page, Lines 4 and 5, "Subject to and

3      without waiving any objections, responding party responds as

4      follows.  Admit."

5              Do you see that?

6         A.   Yes.

7         Q.   And, again, you were admitting that you were acting

8      within your official capacity as a police officer for the

9      City when the incident at Costco occurred; is that correct?

10        A.   Yes.

11        Q.   And request for admission No. 7, "Admit that you

12     were purporting to act in the performance of your official

13     duties as a police officer for the City during the incident."

14             Again, various objections, Lines 22 and 23, "Subject

15     to and without waiving any objection, responding party

16     responds as follows.  Admit."

17             Do you see that?

18        A.   Yes.

19        Q.   Okay.  Just a few more.  Going to No. 9, please.

20             "Admit that the City paid you for the time you spent

21     being interviewed by City investigators regarding the

22     incident."

23             You can see on Line 28 you admitted that as well;

24     correct?

25        A.   Yes.

**PAOLA FRENCH, ET AL. vs CITY OF LOS ANGELES, ET AL.**
**Salvador Sanchez on 03/10/2021**                                    Page 34

 1      Q.   And going to request No. 10, "Admit that you did a
 2   walk-through at the scene with City investigators regarding
 3   the incident."
 4           You can see on Line 18 you admitted that; correct?
 5      A.   Yes.
 6      Q.   Do you recall generally when you did the
 7   walk-through in relation to the incident?
 8      A.   Yes.
 9      Q.   When was it?  Was it the next day or within the
10   week?  What is your recollection?
11      A.   My recollection is it was the follow morning after I
12   was released from the hospital.
13      Q.   And is that when FID was doing their
14   investigation?
15      A.   You broke up.  Can you repeat the question --
16      Q.   I'm sorry.  Was FID, the Force Investigation
17   Division of the LAPD, doing that investigation?
18      A.   Yes.
19      Q.   So you would have went to the Costco with some of
20   the detectives from the LAPD?
21      A.   I do not recall, specifically, how I was transported
22   there, but yes, the LAPD FID detectives would have conducted
23   the walk-through.
24      Q.   Okay.  And at some point you recall being there for
25   the walk-through?

PAOLA FRENCH, ET AL. vs CITY OF LOS ANGELES, ET AL.

Salvador Sanchez on 03/10/2021                                        Page 35

1        A.    Yes.

2        Q.    And do you recall if you were permitted or able to

3    watch a partial video of the incident before you did your

4    walk-through?

5        A.    No.

6        Q.    No, you don't recall, or no, you did not see a video

7    before the walk-through?

8        A.    No, I did not see a video before the walk-through.

9        Q.    Okay.  Thank you.

10              And request for admission 11, you admitted, I

11   believe, that you were compensated for your time in doing the

12   walk-through; is that your recollection?

13        A.    Yes.

14        Q.    And then if we can turn to the verification page.

15              So there is a sheet at the end that we were provided

16   that says "Verification." And it says (reading):

17              "I have read the foregoing Defendant Officer

18   Salvador Sanchez's responses to Plaintiff, Paola French's

19   request for admission Set one and know its contents."  The

20   box is checked.  "I'm a party to this action.  The matter

21   stated in the foregoing documents are true of my own

22   knowledge except as to those matters which are stated on

23   information and belief, and as to those matters, I believe

24   them to be true.  I declare under penalty of perjury under

25   the laws of the United States of America and the State of

**PAOLA FRENCH, ET AL. vs CITY OF LOS ANGELES, ET AL.**

1    California that the foregoing is true and correct.  Executed

2    on February 4, 2021, at Riverside, California."

3              And there is a signature at the bottom; is that your

4    signature?

5         A.   Yes.

6         Q.   And did you understand when you signed this, you

7    were verifying the responses that we just went through?

8         A.   Yes.

9         Q.   Okay.

10             MR. GALIPO:  Okay.  Thank you.

11   BY MR. GALIPO:

12        Q.   Okay.  So just some general questions about Costco,

13   and then we'll take a break because we've been going for a

14   while.

15             And, again, this is all before the incident started.

16             Do you have an estimate as to how long you were at

17   the Costco for, approximately, before the incident?

18        A.   I would estimate one hour before.

19        Q.   Okay.  And before you went to take those sausage

20   samples, before that.  So before you approached that booth

21   before any of this happened, you know -- do you recall

22   generally what you were shopping for?

23        A.   Yes.

24        Q.   What were you generally shopping for?

25        A.   Things we needed at the house, and I recall it was

**PAOLA FRENCH, ET AL. vs CITY OF LOS ANGELES, ET AL.**
Salvador Sanchez on 03/10/2021                                    Page 38

 1    up for a moment?  Okay.  And can you, again, just scroll

 2    slightly down?  Thank you.

 3    BY MR. GALIPO:

 4         Q.   Do you remember us looking at this document together

 5    a little while ago?

 6         A.   Yes.

 7         Q.   And who prepared what's in this document?

 8         A.   I did.

 9         Q.   Okay.  So going back to the top, you wrote out this

10    document and then you signed it; is that correct?

11         A.   Yes.

12         Q.   All right.

13              MR. GALIPO:  Thank you.  Exhibit 4, I believe it's a

14    picture that was taken at some point of the back of your

15    head, I'm assuming after the incident.

16              Can you just tell me if that appears to be a picture

17    of you?

18              (Exhibit 4 was marked for identification.)

19              THE WITNESS:  Yes.

20    BY MR. GALIPO:

21         Q.   And do you know where you were when that was

22    taken?

23         A.   Yes.

24         Q.   Was it at the hospital?

25         A.   Yes.

**PAOLA FRENCH, ET AL. vs CITY OF LOS ANGELES, ET AL.**
Salvador Sanchez on 03/10/2021                                    Page 40

```
 1      A.    Yes.

 2      Q.    Okay.  And that's going to you, Salvador.

 3            So request for admission No. 1, "Admit that you were

 4   not acting in your capacity as a police officer for the City

 5   of Los Angeles at any time during the incident."

 6            And going to the next page Line 5, you see where

 7   you, after stating some objections your response was denied.

 8            Do you see that?

 9      A.    Yes.

10      Q.    And then request for admission No. 2, "Admit that

11   you were off-duty at the time of the incident."

12            Do you see that request on Line 8?

13      A.    Yes.

14      Q.    And you see a response on Line 23, denied?

15      A.    Yes.

16      Q.    Okay.  And then going to -- okay.

17            MR. GALIPO:  And then I want to mark as Exhibit 7.

18            (Exhibit 7 was marked for identification.)

19   BY MR. GALIPO:

20      Q.    And, again, there is a verification, I'll state for

21   the record, attached to Exhibit 6.  And Exhibit 7 will be

22   Defendant Officer Salvador Sanchez's responses to Co-

23   Defendant City of Los Angeles Special Interrogatories, Set

24   one."

25            And I would like to go to Page 5 of that, if we can,
```

1    Interrogatory No. 2, and the question states (reading):

2              "If you answered any of Defendant City of Los

3    Angeles request for admission, Set one anything other than an

4    unqualified admit, state the numbers of the request and state

5    all the facts which support your response."

6              And then starting on Line 25, with respect to

7    request for admissions one and two which I just read from

8    Exhibit 6, it says (reading):

9              "At the time of the subject incident, responding

10   party," which is you, "Was a duly authorized employee of the

11   City of Los Angeles Police Department, was acting under color

12   of law and within the course and scope of his duties as a

13   police officer and his employment with the City/ LAPD, and

14   was acting in his official capacity as a police officer with

15   the City/ LAPD."

16             Do you see that response?

17        A.   Yes.

18        Q.   Okay.  And that is your -- that's your position and

19   belief with regards to the incident; is that true?

20        A.   Yes.

21        Q.   Okay.

22             MR. GALIPO:  We can take that off.  Thank you.

23             And, for the record, these were also verified and

24   that will be attached to Exhibit 7.

25   BY MR. GALIPO:

**PAOLA FRENCH, ET AL. vs CITY OF LOS ANGELES, ET AL.**
Salvador Sanchez on 03/10/2021                                    Page 42

1      Q.   Okay.  So before I asked you a few questions about

2    the incident, and I'm not sure if there will be objections or

3    not, but we'll find out.

4           But before I ask you about that, after the incident

5    did you initially go to the hospital?

6      A.   May you repeat that question, please.

7      Q.   Yeah.  That was a bad question.

8           At some point after you left Costco, did you end up

9    going to a hospital?

10     A.   Yes.

11     Q.   And what -- what hospital did you go to?

12     A.   I recall it being Corona Regional Medical Center.

13     Q.   Okay.  And do you know how long you were there,

14   approximately?

15     A.   I don't know exactly, but I would estimate six

16   hours.

17     Q.   While you were at the hospital, did you notice any

18   bleeding that you had?

19     A.   No.

20     Q.   Did you get any stitches?

21     A.   No.

22     Q.   Did any doctor indicate to you that you had any

23   bones broken or anything like that?

24     A.   No.

25     Q.   Have you ever seen -- and this is just a yes or no.

**PAOLA FRENCH, ET AL. vs CITY OF LOS ANGELES, ET AL.**
Salvador Sanchez on 03/10/2021                                    Page 65

1      A.    Yes.

2      Q.    And on June 14, 2019, do you remember what hours you

3    worked on this Cash Overtime Detail for the Metropolitan

4    Transportation Authority?

5      A.    Yes.

6      Q.    What were your hours that day?

7      A.    From 5:00 in the morning to 2:00 p.m.

8      Q.    And did you drive your personal vehicle to the work

9    site for the MTA?

10     A.    Yes.

11     Q.    And did you then leave at the end of your shift and

12   drive your personal vehicle back to your residence?

13     A.    Yes.

14     Q.    And I don't want your address, but at the time of

15   the incident at Costco, in what city were you residing?

16     A.    In the city of Riverside.

17     Q.    And so do you remember about what time you arrived

18   home in your personal vehicle in the city of Riverside and to

19   the city of Riverside?

20     A.    No.

21     Q.    You got home sometime in the afternoon, true?

22     A.    Yes.

23     Q.    And when you arrived home were you wearing a police

24   uniform, or were you wearing civilian clothes?

25     A.    Police uniform.

**PAOLA FRENCH, ET AL. vs CITY OF LOS ANGELES, ET AL.**
Salvador Sanchez on 03/10/2021                              Page 67

```
 1     A.   No.  I don't recall.

 2     Q.   Did any of your clothing have any markings that

 3   would identify you as a police officer?

 4     A.   I recall I also wore a watch, a wrist watch.

 5     Q.   Okay.  We'll put the watch aside for a second.

 6          Other than your watch was there anything on any of

 7   your clothing, any markings on -- or any -- anything is

 8   affixed to your clothing when you went to Costco that would

 9   identify you as a police officer?

10     A.   No.

11     Q.   Now, the watch, what kind of watch was that?

12     A.   Garmin.

13     Q.   And did it have some logo or some indication of

14   support from law enforcement?

15     A.   Yes.

16     Q.   And what was that?

17     A.   It was a thin blue line flag.

18     Q.   Was that watch provided to you by the Los Angeles

19   Police Department?

20     A.   Yes.

21     Q.   The LAPD purchased that watch and gave it to you?

22     A.   Yes.

23     Q.   And who gave it to you?

24     A.   I don't recall who specifically, but it was given to

25   me by LAPD personnel.
```

**PAOLA FRENCH, ET AL. vs CITY OF LOS ANGELES, ET AL.**
Salvador Sanchez on 03/10/2021                                    Page 73

1          Sorry, Cory --

2          (Simultaneously speaking.)

3          MR. BRENTE:  It's okay.  Is it okay to proceed --

4          MR. FOX:  No.  Keep going --

5          MR. BRENTE:  -- or -- all right.  Thank you.

6    BY MR. BRENTE:

7          Q.   So the ammunition that you had in your personal

8    weapon on the day of the incident, do you remember what kind

9    of ammunition you had in that pistol?

10         A.   Yes.

11         Q.   What kind of ammunition?

12         A.   9 millimeter.

13         Q.   All right.  And what brand?

14         A.   I believe it was Speer, S-p-e-e-r.

15         Q.   And that ammunition, was that ammunition purchased

16   and issued to you by the city of Los Angeles, or did you

17   purchase that ammunition with your own money?

18         A.   The ammunition was issued by the city of Los

19   Angeles.

20         Q.   So there is duty ammunition that the Department

21   provide for you to carry in your service pistol, true?

22         A.   Yes.

23         Q.   And officers can also buy their own ammunition for

24   use, let's say, on the range if they're trying to kind of get

25   some kind like a distinguished expert status where they want

**PAOLA FRENCH, ET AL. vs CITY OF LOS ANGELES, ET AL.**
Salvador Sanchez on 03/10/2021                                    Page 74

1   to do extra shooting on the range, officers can buy their own

2   ammunition, true?

3        A.   Yes.

4        Q.   But when you're on-duty on uniformed assignment, the

5   ammunition carried in the pistol when on-duty is to be

6   ammunition issued to the officer by the LAPD, true?

7        A.   Yes.

8        Q.   Is that yes?

9        A.   Yes.

10       Q.   Was this Speer ammunition that you had in your gun

11   issues to you by the LAPD for you in your 9 millimeter Glock

12   26 that you personally owned?

13       A.   No.

14       Q.   Did you -- was that Speer ammunition, was that

15   ammunition that was issued to you by the Los Angeles Police

16   Department for use in your service pistol?

17       A.   Yes.

18       Q.   And did you then take the ammunition that was issued

19   to by the LAPD for use in your service pistol and put it in

20   your personally-owned Glock Model 26?

21       A.   May you repeat that question, please.

22       Q.   Did you take the Speer ammunition that was issued to

23   you by the Los Angeles Police Department for use in your

24   service pistol and put it in your personally-owned Glock

25   Model 26?

1  the deposition because if he had, I would have thought about

2  it, and said, you know what, you're right.  Let me confer

3  with my client.

4          So I was only doing it in a way that was trying to

5  shorten things, but I appreciate your position, and I'll move

6  forward.

7          MR. FOX:  Thank you.

8  BY MR. BRENTE:

9      Q.   Mr. Sanchez, as you were walking around the Costco

10  before the officer-involved shooting, the shooting that you

11  got involved in, did you ever tell anyone that you worked for

12  the Los Angeles Police Department?

13     A.   No.

14     Q.   And prior to the shooting had you had any contact or

15  any interaction with Kenneth French, the person you now know

16  to be Kenneth French?

17     A.   No.

18     Q.   And prior to the shooting had you had any contact or

19  interaction with the person you now know to be Paola

20  French?

21     A.   No.

22     Q.   And prior to the shooting had you had any contact or

23  interaction with the person you now know to be Russell

24  French?

25     A.   No.

**PAOLA FRENCH, ET AL. vs CITY OF LOS ANGELES, ET AL.**
Salvador Sanchez on 03/10/2021                                    Page 91

```
 1      A.   Yes.

 2           MR. FOX:  Hey, Cory, I apologize for interrupting.

 3           Can we go off the record a moment to discuss

 4   scheduling for a second?

 5           MR. BRENTE:  Of course.

 6           THE VIDEOGRAPHER:  We're off the record at 12:29.

 7           (Discussion held off the record.)

 8           (Whereupon lunch recess was taken.)

 9           THE VIDEOGRAPHER:  We're back on the record at 2:35.

10   BY MR. BRENTE:

11      Q.   All right.  Thank you.

12           Good afternoon, Mr. Sanchez.

13      A.   Good afternoon, Mr. Brente.

14      Q.   At some point did you remove your wallet from your

15   pants pocket and from within your wallet produce your LAPD

16   identification card and show it to Officer Slane?

17      A.   Yes.

18      Q.   Now, Mr. Galipo asked you about an LAPD manual

19   section -- or, actually, more than one, but one of the ones

20   he asked you about was from Volume 1, and it was manual

21   section 230.10 which is titled "Responsibility of off-duty

22   officers."

23           Do you remember him asking you some questions about

24   that?

25      A.   Yes.
```

PAOLA FRENCH, ET AL. vs CITY OF LOS ANGELES, ET AL.
Salvador Sanchez on 03/10/2021                              Page 116

1    drawing and exhibiting a firearm?

2         A.   I do recall something within that phrase as one of

3    the counts.

4         Q.   And what was the finding on that count?

5         A.   Out of policy.

6         Q.   The Board, you're either found guilty or not guilty;

7    right?

8         A.   Yes.

9         Q.   So you were found guilty of that, true?

10        A.   Yes.

11        Q.   Now, how many times were you interviewed by the

12   Force Investigation Division?

13        A.   As I recall, it was twice.

14        Q.   And when you were interviewed by the Force

15   Investigation Division, were you represented by counsel at

16   the interview?

17        A.   Yes.

18        Q.   And was one of those interviews on June 19th of

19   2019?

20        A.   I don't recall it -- specifically.

21        Q.   Was one of the interviews I'll say shortly after the

22   day of the shooting?

23        A.   I recall it being days after the shooting.

24        Q.   Right.  Within a week?

25        A.   Yes, within a week.

1          Do you remember him asking you about some of your

2   responses?

3      A.   Yes.

4      Q.   And specifically one of them he asked you about

5   request for admission No. 4 where you admitted you were

6   acting within color of state law at the time of the incident,

7   true?

8      A.   If Mr. Galipo may have his staff put that up there,

9   please, for reference?

10         MR. GALIPO:  I believe we can do that.

11         Renee, if you can find that, please, and put it up,

12   that would be appreciated.

13         THE WITNESS:  Thank you.

14         MR. GALIPO:  You're welcome.  What number was it,

15   Cory?

16         MR. BRENTE:  No. 4.

17   BY MR. BRENTE:

18     Q.   So do you see that?

19     A.   Yes.  I can follow it now.

20         Thank you.

21     Q.   Okay.  So you advised Mr. Galipo that your response

22   to request for admission No. 4 aside from the objections that

23   were inserted with that, you were admitting that you were

24   acting under color of state law at the time of the incident,

25   true?

**PAOLA FRENCH, ET AL. vs CITY OF LOS ANGELES, ET AL.**
Salvador Sanchez on 03/10/2021                                    Page 125

 1       A.   Yes.

 2       Q.   And in what way were you acting under color of state

 3   law at the time of the incident?

 4            MR. FOX:  I'll object that because the request calls

 5   for legal conclusion -- well, it does call for legal

 6   conclusion and he did answer it accordingly.

 7            To the extent he understands, he can answer the

 8   question.

 9            THE WITNESS:  May you repeat the question, please.

10   BY MR. BRENTE:

11       Q.   Yes.  In what way were you acting under color of

12   state law at the time of the incident?

13       A.   Well, I resorted to my LAPD training and experience,

14   and in my mind I acted in the capacity of a police officer.

15       Q.   And what specific training and experience did you

16   rely on?

17            MR. FOX:  So, Sal, you can answer the question.

18            It's about your training and experience.  It's not

19   about the facts of this particular incident.

20            THE WITNESS:  Utilizing training as it pertains to

21   lethal force, the mechanics behind the actual using of the --

22   use of the weapon, and when I would be able to use force in

23   accordance with Department policy and state law as it -- as

24   it applies to me as a police officer.

25   BY MR. BRENTE:

**PAOLA FRENCH, ET AL. vs CITY OF LOS ANGELES, ET AL.**
Salvador Sanchez on 03/10/2021                                    **Page 127**

```
 1   BY MR. BRENTE:

 2       Q.   All right.  So you're asking about request for

 3   admission No. 5 is to -- oh, got smaller.  There we go --

 4   which it said, "Admit that it was your belief that you were

 5   acting within the course and scope of your employment with

 6   the City as an LAPD officer at the time of the incident.

 7            And as Mr. Galipo pointed out, there's some

 8   objections, and then you admitted that you believe you were

 9   acting within the course and scope of your employment with

10   the City as an LAPD officer at the time of the incident,

11   true?

12       A.   Yes.

13       Q.   And in what way do you believe you were acting

14   within the course and scope of your employment with the City

15   as an LAPD officer at the time you used deadly force?

16            MR. FOX:  And, Sal, you can answer it without

17   discussing any of the specific facts of the incident,

18   please.

19            THE WITNESS:  Again, in my mind I resorted to my

20   LAPD training and experience and acted within the capacity as

21   a police officer.

22   BY MR. BRENTE:

23       Q.   And what specific LAPD training and experience did

24   you rely on in your use of deadly force at the Costco on June

25   14, 2019?
```

```
 1   inserted -- asserted on your behalf, you admitted that,

 2   true?

 3      A.   Yes.

 4      Q.   And in what way were you acting within your official

 5   capacity as a police officer for the City Police Department

 6   during this incident?

 7           MR. FOX:  And, Sal, again, without discussing

 8   specific facts, you may answer the question.

 9           THE WITNESS:  Within the official capacity as and in

10   accordance to LAPD policy and state law to protect myself and

11   to protect others from -- from it -- from -- from threat of

12   death or serious bodily injury.

13   BY MR. BRENTE:

14      Q.   And what threat of death or serious bodily injury

15   did you perceive to exist at the time you used deadly

16   force?

17           MR. FOX:  Because this is now asking about the

18   specific incident and specific facts of the incident, I want

19   to object that it invades his Fifth Amendment rights and

20   privileges and instruct him not to answer.

21           Sal, you can respond.

22           THE WITNESS:  Mr. Brente, I respectfully decline to

23   answer your question and I do that based upon my Fifth

24   Amendment rights.

25   BY MR. BRENTE:
```

**PAOLA FRENCH, ET AL. vs CITY OF LOS ANGELES, ET AL.**
**Salvador Sanchez on 03/10/2021**                    Page 130

1      Q.   And in what way do you believe your use of deadly

2   force was consistent with LAPD policy and procedure?

3           MR. FOX:  Same objections on Fifth Amendment grounds

4   and same instruction.

5           THE WITNESS:  Mr. Brente, I respectfully decline to

6   answer your question based upon my Fifth Amendment rights.

7   BY MR. BRENTE:

8      Q.   Request for admission No. seven is somewhat similar,

9   but Set 7 asks you to admit that you were purporting to act

10   in the performance of your official duties as a police

11   officer for the City of Los Angeles during this incident, and

12   aside for some objections asserted on your behalf, you

13   admitted this, true?

14      A.   Yes.

15      Q.   And in what way were you purporting to act in the

16   performance of your official duties as a police officer for

17   the City during this incident?

18           MR. FOX:  And, Sal, you can answer without

19   discussing the specific facts of the incident, please, if you

20   can.

21           THE WITNESS:  Yes.  Again, I was acting within my

22   official capacity as a police officer to protect life.

23   MR. BRENTE:

24      Q.   And in what specific manner were you acting within

25   your official capacity to protect life?  What did you do?

```
 1   understanding of LAPD's policy and procedure?

 2           I'm talking about the on-duty, off-duty status.

 3      A.   Yes.

 4      Q.   What LAPD policy or procedure are you relying on to

 5   support your belief that when you used deadly force to

 6   protect life, your status transitioned from off-duty to

 7   on-duty?

 8           MR. FOX:  I think it's overbroad and ambiguous.

 9           MR. GALIPO:  Join.

10   BY MR. BRENTE:

11      Q.   Go ahead.  You can answer, Mr. Sanchez.

12           MR. FOX:  And you're talking about policy, Cory, not

13   facts of this case; correct?

14           MR. BRENTE:  Correct.

15           MR. FOX:  Thank you.

16           THE WITNESS:  May you repeat the question again,

17   please.

18           MR. BRENTE:  Jinna, could you indulge me, please,

19   and read it back?

20           (Record read.)

21           THE WITNESS:  I'm relying on my understanding of

22   LAPD policy and California state law.

23   BY MR. BRENTE:

24      Q.   Which LAPD policy?

25      A.   The off-duty directives and the use-of-force policy
```

**PAOLA FRENCH, ET AL. vs CITY OF LOS ANGELES, ET AL.**
**Salvador Sanchez on 03/10/2021**                    Page 137

 1   by the Department.

 2       Q.   When you say the off-duty directive, are you

 3   thinking of the training bulletin that I asked you some

 4   questions about titled "Off-duty actions?"

 5       A.   Yes.  That and the manual sections that have been

 6   referenced at the beginning.

 7       Q.   And is there anything that you're aware of in the

 8   training bulletin on off-duty action that says when you used

 9   force off-duty; that at the moment you used the force, your

10   status transitions to an on-duty status?

11          MR. GALIPO:  I'll object as calling for speculation

12   without the document in front of him.

13          MR. FOX:  I'm going to join.

14          THE WITNESS:  I don't recall the specific that

15   states that.

16   BY MR. BRENTE:

17       Q.   And is there anything, to your recollection, in the

18   LAPD use-of-force policy that says when an officer who is

19   off-duty uses deadly force, at the moment they use the force,

20   their status transitions from off-duty to on-duty?

21       A.   No.  I don't recall anything explicitly stating

22   that.

23       Q.   And you said in an earlier answer that you were also

24   relying on state law for your belief, true?

25       A.   Yes.

**PAOLA FRENCH, ET AL. vs CITY OF LOS ANGELES, ET AL.**
**Salvador Sanchez on 03/10/2021**                              Page 138

1      Q.   What state law are you relying on?

2      A.   I believe.  I'm not certain of the section, but I

3   believe it's the Penal Code section that defines a police

4   officer and gives the authority of the police officer, and

5   those -- the state law is incorporated into LAPD policy as it

6   pertains to off-duty within that bulletin that you're

7   referencing.

8      Q.   And as it relates to Penal Code section, I'm not

9   expecting that you would know, but I'm going to ask in case

10   you do.

11           Are you thinking of a particular section of the

12   Penal Code?

13      A.   It would just be as best as I can try to recollect.

14           Yes.  I think there is -- it might -- it might be

15   Section 830, one of the sub sections or 835.

16      Q.   And is it your belief that either or both of those

17   section or some other section of the Penal Code stands for

18   the proposition that when an off-duty officer uses deadly

19   force; that at the moment they use the force, their status

20   transitions from off-duty to on-duty?

21           MR. GALIPO:  Objection.  Incomplete hypothetical.

22           Depends on the circumstances.

23   BY MR. BRENTE:

24      Q.   Go ahead, Mr. Sanchez.

25      A.   As I recall, yes.  It does explain that.

**PAOLA FRENCH, ET AL. vs CITY OF LOS ANGELES, ET AL.**
Salvador Sanchez on 03/10/2021                                    Page 140

```
 1      A.   Yes.

 2      Q.   All right.  So for your interviews by the LAPD, you

 3   were compelled by FID investigators and under the rules and

 4   regulations of the LAPD to give a statement to the Department

 5   investigators, true?

 6      A.   Yes.

 7      Q.   And your understanding was if a Los Angeles Police

 8   Department wanted to get a statement from you, a compelled

 9   statement from you, they would be required to compensate you

10   for the time you spent being interviewed, true?

11         MR. FOX:  Objection.  Calls for legal conclusion,

12   foundation.

13         MR. GALIPO:  Join.

14   BY MR. BRENTE:

15      Q.   Go ahead, Mr. Sanchez.

16      A.   Yes.

17      Q.   And you were paid for the time you spent being

18   interviewed by FID, true?

19      A.   Yes.

20      Q.   And RFA No. 10 ask you to admit you did a

21   walk-through at the scene with the City investigators

22   regarding this incident, and there's some objections

23   inserted, and you admitted that, true?

24      A.   Yes.

25      Q.   And as a Los Angeles police officer who was involved
```

**PAOLA FRENCH, ET AL. vs CITY OF LOS ANGELES, ET AL.**
Salvador Sanchez on 03/10/2021                                    Page 141

1    in a use of deadly force, you understood that you could be

2    compelled.  By that, I mean be given an order by Department

3    supervisor to participate in a lawsuit, true?

4        A.   May you repeat that again, please.

5        Q.   You understood that as a Los Angeles police officer

6    who was involved in a use of deadly force, you could be

7    compelled.  By that, I mean given a direct order to

8    participate in a walk-through with Department investigators,

9    true?

10       A.   Yes.

11       Q.   And you were given an order to participate in a

12   walk-through with the detectives from the Force Investigation

13   Division, true?

14       A.   I recall I was.

15       Q.   I'm sorry?

16       A.   Yes.

17       Q.   And for the time you spent with the Force

18   Investigation Division detectives during the compelled

19   walk-through, you were paid for that time as a Department

20   employee, true?

21       A.   Can you repeat that question, please.  You broke up

22   a little bit.

23       Q.   I'll just withdraw it because let's just go to RFA

24   No. 11.  RFA request for admission No. 11 asked you to admit

25   that the City paid you for the time you spend doing the

**PAOLA FRENCH, ET AL. vs CITY OF LOS ANGELES, ET AL.**
**Salvador Sanchez on 03/10/2021**                                    Page 142

 1    walk-through with the City investigators during this

 2    incident.  And, again, some objections asserted by your

 3    counsel, but you admitted that, true?

 4       A.   Yes.

 5       Q.   And that's because you knew as a Department

 6    employee, if you were compelled to participate in a

 7    walk-through; that you would be compensated for the time you

 8    spent doing that walk-through, true?

 9       A.   Yes.

10       Q.   And you were paid, true?

11       A.   Yes.

12       Q.   All right.

13            MR. BRENTE:  Exhibit 6, if Ms. Masongsong could be

14    so gracious.  These are Mr. Sanchez's responses for the

15    City's for admissions.

16    BY MR. BRENTE:

17       Q.   This is our Exhibit No. 6.  These were your

18    responses to the City of Los Angeles request for admission.

19            MR. BRENTE:  Request for admission No. 1, please.

20    BY MR. BRENTE:

21       Q.   So request for admission No. 1 asked you to admit

22    that you were not acting in your capacity as a police officer

23    for the City of Los Angeles at the time of the incident.  And

24    there's some objections by your counsel, and you denied this

25    request for admission, true?

PAOLA FRENCH, ET AL. vs CITY OF LOS ANGELES, ET AL.
Salvador Sanchez on 03/10/2021                          Page 149

1      A.   Yes.

2           MR. BRENTE:  Object to the form of the question.

3           And I did ask him about that sentence, so.

4           MR. GALIPO:  Okay.  Going to Exhibit 2, please.

5    BY MR. GALIPO:

6      Q.   Okay.  Do you see in the second paragraph you quote

7    the same section, "Under California law off-duty officers

8    have peace officer authority to take action as to any public

9    offense committed in their presence and with respect to which

10   there is immediate danger to person or property or the escape

11   of the perpetrator of such offense."

12          Do you see that quoted in what you prepared?

13          MR. BRENTE:  So I'm just going to object because

14   that -- what is there is something that's in quotes, but it's

15   not verbatim what you just referred to in 230.10.  There's

16   words left out.

17          MR. GALIPO:  What's the legal objection?

18          MR. BRENTE:  You're misstating his testimony and

19   evidence.

20          MR. GALIPO:  Okay.

21   BY MR. GALIPO:

22     Q.   So do you see what you put in quotes in Exhibit 2?

23     A.   Yes.

24     Q.   All right.  And then you go on to as the document

25   continues, you go on -- if we can scroll down (reading):

**PAOLA FRENCH, ET AL. vs CITY OF LOS ANGELES, ET AL.**
Salvador Sanchez on 03/10/2021                                        **Page 150**

1              "Based upon the following facts I acted with peace

2    officer authority as an LAPD officer when I took action to

3    protect my life and my son's life."

4              And you state eight facts there; correct?

5        A.   Yes.

6        Q.   Okay --

7              MR. BRENTE:  Well, I'm going to object.  I don't

8    think -- you're mischaracterizing.  I don't think those are

9    facts, but --

10             MR. GALIPO:  Okay.

11   BY MR. GALIPO:

12       Q.   You state eight reasons why; correct?

13       A.   Yes.

14       Q.   All right.

15             MR. GALIPO:  And thank you.  We can take that off.

16   BY MR. GALIPO:

17       Q.   And, obviously, that document was prepared before

18   you responded to any written discovery, true?

19       A.   True.  Yes.

20       Q.   And it was prepared long before the deposition

21   that's taking place today; correct?

22       A.   Yes.

23       Q.   And do you still agree with those eight reasons you

24   put in that document as to why you were acting in your

25   official capacity as a police officer?

**PAOLA FRENCH, ET AL. vs CITY OF LOS ANGELES, ET AL.**
Salvador Sanchez on 03/10/2021                                         Page 151

1       A.    Yes.

2       Q.    And Mr. Brente asked you about some ID you had in

3    your wallet.

4            After the incident, so after the shooting while you

5    were still in Costco, did you at least show some people your

6    ID so that they knew you were a police officer?

7            MR. BRENTE:  So I'm going to object to the form of

8    the question; "some people so they would know."

9            MR. GALIPO:  Yes.

10   BY MR. GALIPO:

11      Q.    Responding paramedics or police officers.

12      A.    Yes.

13      Q.    Okay.  And I think you've already told us this, but

14   both your gun and ammunition were approved by the Department;

15   correct?

16      A.    Yes.

17      Q.    And the gun that you had, actually, you would use

18   often as a backup weapon when you were working on the clock;

19   is that correct?

20      A.    Yes.

21      Q.    And as far as the findings that Mr. Brente went

22   through, did you have any control as to what they were going

23   to find either for you or against you --

24           MR. BRENTE:  I'll object to the question as

25   phrased.

```
 1                 DECLARATION UNDER PENALTY OF PERJURY

 2

 3   Case Name:  Paola French, et al., vs. City of Los Angeles, et

 4   al.

 5   Date of Deposition:  March 10, 2021

 6   Job No.:  332601

 7

 8           I, _____, hereby certify

 9   under penalty of perjury under the laws of the State of

10   California that the foregoing is true and correct.

11           Executed this _____ day of _____,

12   20____, at _____, California.

13

14

15

16

17

18                      _____

19                          SALVADOR SANCHEZ

20

21

22

23

24

25
```

```
 1                          CERTIFICATE

 2                              OF

 3            CERTIFIED STENOGRAPHIC SHORTHAND REPORTER

 4

 5            I, JINNA GRACE KIM, CSR No. 14151, a Certified

 6    Stenographic Shorthand Reporter of the State of California,

 7    do hereby certify:

 8            That the foregoing proceedings were taken before me

 9    at the time and place herein set forth;

10            That any witnesses in the foregoing proceedings,

11    prior to testifying, were placed under oath;

12            That a verbatim record of the proceedings was made

13    by me, using machine shorthand, which was thereafter

14    transcribed under my direction;

15            Further, that the foregoing is an accurate

16    transcription thereof.

17            I further certify that I am neither financially

18    interested in the action, nor a relative or employee of any

19    attorney of any of the parties.

20

21            IN WITNESS WHEREOF, I have subscribed my name, this

22    date:  March 10, 2021.

23                          _____

24                          Jinna Grace Kim, CSR No. 14151

25
```