**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo, Esq. (Bar No. 144074)
dalekgalipo@yahoo.com
Eric Valenzuela, Esq. (Bar No. 284500)
evalenzuela@galipolaw.com
Renee V. Masongsong, Esq. (Bar No. 281819)
rvalentine@galipolaw.com
21800 Burbank Blvd., Suite 310
Woodland Hills, CA  91367
Tel: (818) 347-3333
Fax: (818) 347-4118

**LAW OFFICE OF JOHN FATTAHI**
John Fattahi, Esq. (Bar No. 247625)
jfattahi@gmail.com
21250 Hawthorne Boulevard, Suite 500
Torrance, CA 90503
Telephone:   (424) 999-5579
Facsimile:   (424) 675-2279

*Attorneys for Plaintiffs Paola French and Russell French*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAOLA FRENCH, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>CITY OF LOS ANGELES, et al.,<br><br>Defendants. | Case No. **5:20-cv-00416-JGB-SP**<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES ON APPEAL; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Declarations of Carol A. Sobel, Dale K. Galipo, John Fattahi, Eric Valenzuela, Renee Masongsong, and attached exhibits; and [Proposed] Order *filed concurrently herewith*<br><br>Date:      February 26, 2024<br>Time:      9:00 a.m.<br>Ctrm:      1 Riverside<br><br>*The Honorable Jesus G. Bernal* |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:**

**PLEASE TAKE NOTICE** that on February 26, 2024, at 9:00 a.m. in Courtroom 1, located at 3470 Twelfth Street in Riverside, California, Plaintiffs Paola French and Russell French ("Plaintiffs") will and hereby do move this Court for an Order awarding reasonable attorney's fees on appeal in the amount of $593,730, plus additional fees incurred after the filing of this motion, pursuant to 42 U.S.C. § 1988, California Civil Code § 52.1 *et seq.* and Federal Rule of Civil Procedure 54(d).

In addition to attorney's fees for time spent responding to the appeal filed by Defendant City of Los Angeles, Plaintiffs also seek fees for drafting this motion and supporting declarations, the anticipated reply brief, and any time spent preparing for and attending any hearings on the motion. This Motion is based on grounds that the Plaintiffs were prevailing parties on their civil rights claims and are entitled to statutory attorney's fees as a matter of law.

This Motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities, the concurrently filed declarations and attached exhibits, the pleadings on file herein including previously filed fee declarations, and such other oral and documentary evidence as may be presented at the time of the hearing.

**Statement of Local Rule 7-3 Compliance**: This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on various dates between December 27, 2023, and January 16, 2024. The parties were unable to resolve the matter.

DATED: January 18, 2024          LAW OFFICE OF JOHN FATTAHI

By_____/s/ John Fattahi_____
                    John Fattahi
                    *Attorney for Plaintiffs*

# TABLE OF CONTENTS

I.      INTRODUCTION .................................................................................................1

II.     LEGAL STANDARD .........................................................................................2

III.    ARGUMENT .......................................................................................................4

        A.      Plaintiffs Should Receive a Fully Compensatory Attorney's Fee
                for Obtaining Excellent Results .................................................................4

        B.      The Hourly Rates of Plaintiffs' Attorneys Are Reasonable in
                Light of Their Skill, Experience, and Reputation, Where
                Plaintiffs Completely Prevailed on Novel, Difficult Issues....................5

                1.      Hourly Rate for Dale K. Galipo.......................................................7

                2.      Hourly Rate for John Fattahi ..........................................................10

                3.      Hourly Rates for Eric Valenzuela and Renee Masongsong .......12

        C.      The Time Billed Was Reasonably Expended ........................................13

        D.      The Court Should Apply at Least Its Previously Determined 1.5x
                Multiplier................................................................................................16

        E.      Computation Table.................................................................................17

IV.     CONCLUSION ..................................................................................................17

WORD COUNT CERTIFICATION ...................................................................................18

# TABLE OF AUTHORITIES

## Cases

*Blum v. Stenson*,
465 U.S. 886 (1984) ...........................................................................2, 6

*Bouman v. Block*,
940 F.2d 1211 (9th Cir. 1991)...........................................................3

*Camacho v. Bridgeport Financial, Inc.*,
523 F.3d 973 (9th Cir. 2018)..........................................................2, 6

*Charlebois v. Angels Baseball LP*,
993 F. Supp. 2d 1109 (C.D. Cal. 2012).............................................6

*Clark v. City of Los Angeles*,
803 F.2d 987 (9th Cir. 1986)............................................................14

*Donastorg v. City of Ontario*,
2021 WL 6103545 (C.D. Cal. Sept. 23, 2021).....................................9

*Graham v. Daimler Chrysler Corp.*,
34 Cal. 4th 553 (2004)......................................................................4

*Hensley v. Eckerhart*,
461 U.S. 424 (1983) ...................................................................2, 5, 16

*Hiken v. Dep't of Def.*,
836 F.3d 1037 (9th Cir. 2016)....................................................2, 5, 6

*Kerr v. Screen Extras Guild, Inc.*,
526 F.2d 67 (9th Cir. 1975)...............................................................3

*Ketchum v. Moses*,
24 Cal. 4th 1122 (2001)...........................................................4, 14, 16

*McCown v. City of Fontana*,
565 F.3d 1097 (9th Cir. 2009).........................................................15

*Moreno v. City of Sacramento*,
534 F.3d 1106 (9th Cir. 2008)....................................................3, 6, 16

*Nadarajah v. Holder*,
569 F.3d 906 (9th Cir. 2009)...........................................................5, 6

*Parker v. Vulcan Materials Co. Long Term Disability Plan*,
2012 WL 843623 (C.D. Cal. Feb. 16, 2012).......................................7

*Riverside v. Rivera*,
477 U.S. 561 (1986) ..........................................................................5

*Roberts v. City of Honolulu*,
    938 F.3d 1020 (9th Cir. 2019)................................................................................5

*Robinson v. City of Edmond*,
    160 F.3d 1275 (10th Cir. 1998)............................................................................15

*Rodriguez v. County of Los Angeles*,
    891 F.3d 776 (9th Cir. 2018)................................................................................3

*United Steelworkers of Am. v. Phelps Dodge Corp.*,
    896 F.2d 403 (9th Cir. 1990)................................................................................2

*Valenzuela v. City of Anaheim*,
    2023 WL 2249178 (C.D. Cal. Feb. 23, 2023)......................................................9

Statutes

42 U.S.C. § 1988.................................................................................................passim

CAL. CIV. CODE § 52.1................................................................................................i, 2, 3

Rules

FED. R. CIV. P. 54.........................................................................................................i

Case No. 5:20-cv-00416-JGB-SP
MOT. FOR FEES ON APPEAL

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.      INTRODUCTION

This civil rights action arose from the shooting of Plaintiffs Paola and Russell French, and their deceased son Kenneth French, by Defendant Salvador Sanchez, who was employed as a police officer by Defendant City of Los Angeles, on June 14, 2019. This motion is necessary to set the amount of Plaintiffs' reasonable attorney's fees that were incurred as a result of the City's appeal to the U.S. Court of Appeals for the Ninth Circuit.

At the 2021 jury trial, this Court granted Plaintiffs' motion under Federal Rule of Civil Procedure 50(a) that Sanchez's use of force was excessive and caused harm, thereby satisfying most elements of Plaintiffs' claims for battery, negligence, negligent infliction of emotional distress, and violation of the Bane Act.  The jury subsequently returned a verdict finding that Sanchez acted under color of state law and within the course and scope of his employment, and that Plaintiffs' compensatory damages totaled $17,002,000.  On May 10, 2022, the Court denied the City's post-trial motions for judgment as a matter of law or for a new trial, and granted in substantial part Plaintiff's motion for attorneys' fees, including a multiplier of at least 1.5x under California law.  Dkt. 165.

The City appealed the Judgment and the Court's denial of its post-trial motions to the Ninth Circuit.  The City asserted three grounds for reversal:  (1) the Court erroneously excluded Sanchez's live testimony at trial based on a blanket Fifth Amendment invocation, requiring a new trial; (2) the Court gave an erroneous instruction on course and scope of employment under California law, requiring a new trial; and (3) the Court erroneously denied the City's motion for judgment as a matter of law on course and scope of employment.

Plaintiffs' attorneys briefed and argued the appeal, resulting in a memorandum disposition rejecting all three of the City's asserted grounds for reversal and affirming the judgment in full.  The City filed a petition for panel rehearing or rehearing *en*

*banc*, which was denied. Under 42 U.S.C. § 1988 and California Civil Code § 52.1(i), Plaintiffs are entitled to recover a fully compensatory fee for their attorneys' work on the appeal this case.

The Court should grant the fee request, the reasonableness of which is supported by the concurrently filed declarations and exhibits, including by fee expert Carol Sobel and Plaintiff's billing attorneys.

## II.    LEGAL STANDARD

### A.    Attorney's Fees Under 42 U.S.C. § 1988

A prevailing plaintiff's fee award is presumptively reasonable under the lodestar method—"the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

"The established standard when determining a reasonable hourly rate is the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation. *Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973, 979 (9th Cir. 2018); *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). "[T]he district court should consider: experience, reputation, and ability of the attorney; the outcome of the results of the proceedings; the customary fees; and the novelty or the difficulty of the question presented." *Hiken v. Dep't of Def.*, 836 F.3d 1037, 1044 (9th Cir. 2016). "In general, '[a]ffidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate.'" *Id.* (quoting *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990)).

As the Supreme Court has held, "[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee," which "encompass[es] all hours reasonably expended on the litigation." *Id.* at 435. The relevant inquiry is

whether "the time could reasonably have been billed to a private client." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008). "By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker." *Id.* at 1112. "If opposing counsel cannot come up with specific reasons for reducing the fee request that the district court finds persuasive, it should normally grant the award in full, or with no more than a haircut." *Id.* at 1116.

After lodestar computation, courts then assess whether it is necessary to adjust the figure on the basis of the twelve *Kerr* factors. *Id.* (citations omitted). These twelve factors are:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).

**B.      Attorney's Fees Under California Law**

California Civil Code "§ 52.1[i] authorizes attorney fee awards independently of 42 U.S.C. § 1988." *Rodriguez v. County of Los Angeles*, 891 F.3d 776, 808 (9th Cir. 2018); *see also Bouman v. Block*, 940 F.2d 1211, 1230, 1237 (9th Cir. 1991) (holding that the district court did not abuse its discretion in awarding fees under a California statute in excess of those allowed under federal law, where the plaintiff challenged the same unlawful conduct under state and federal law). California law recognizes that a fee enhancement, or multiplier, is appropriate where "the litigation

involved a contingent risk or required extraordinary legal skill justifying augmentation of the unadorned lodestar in order to approximate the fair market rate for such services." *Graham v. Daimler Chrysler Corp.*, 34 Cal. 4th 553, 579 (2004); *Ketchum v. Moses*, 24 Cal. 4th 1122, 1132-33 (2001) ("A lawyer who both bears the risk of not being paid and provides legal services is not receiving the fair market value of his work if he is paid only for the second of these functions.  If he is paid no more, competent counsel will be reluctant to accept fee award cases.").

## III.   ARGUMENT

### A.   Plaintiffs Should Receive a Fully Compensatory Attorney's Fee for Obtaining Excellent Results

This Court previously held that Plaintiffs were entitled to reasonable attorney's fees as prevailing parties, in connection with Plaintiffs' January 2022 fee motion, which this Court granted in May 2022.  Dkt. 145; Dkt. 165 at 22-30.  Since then, Plaintiffs have successfully defended the judgment in response to appellate proceedings initiated by the City, resulting in a Ninth Circuit memorandum disposition affirming the judgment in full.

In June 2022, the City appealed to the Ninth Circuit, where they challenged the judgment on three fronts.  The City's Opening Brief presented three questions, two of which were never raised at trial.  Plaintiffs' attorney John Fattahi had primary responsibility for preparing Plaintiffs' Answering Brief and supplemental excerpts. Answering Brief, Ninth Cir. No. 22-55571, Dkt. 28.  After oral argument by trial counsel Dale K. Galipo, the Ninth Circuit panel issued a unanimous decision rejecting all three of the City's arguments and affirming the judgment in its entirety. Memorandum, Ninth Cir. No. 22-55571.

The City filed a Petition for Panel Rehearing or Rehearing *En Banc*, which the Ninth Circuit denied on November 27, 2023.  Order, Ninth Cir. No. 22-55571.

Accordingly, Plaintiffs' counsel obtained excellent results on appeal, and the Court should award a fully compensatory fee for their efforts. *Hensley*, 461 U.S. at 435.

**B.      The Hourly Rates of Plaintiffs' Attorneys Are Reasonable in Light of Their Skill, Experience, and Reputation, Where Plaintiffs Completely Prevailed on Novel, Difficult Issues**

Plaintiffs seek 2024 rates as follows:  $1400 for Mr. Galipo, $975 for Mr. Fattahi, and $800 for Mr. Valenzuela and Ms. Masongsong.  The declarations of Plaintiffs' attorneys and fee expert Carol Sobel, and their supporting exhibits—including comparable billing rates and fee awards in the relevant community, and the Wolters Kluwer 2023 Real Rate Report ("Report")—establish that the requested hourly rates are reasonable in light of market rates in Los Angeles for attorneys of comparable skill, experience, and reputation performing similarly complex work. *Hiken*, 836 F.3d at 1044.

It is irrelevant that Plaintiffs' attorneys do not charge these rates upfront to their civil rights clients, who would be unable to pay them. *Nadarajah v. Holder*, 569 F.3d 906, 916 (9th Cir. 2009) ("Important public policy considerations dictate that the court should not punish an 'undercharging' civil rights attorney, but instead must award attorneys' fees based on prevailing market rates.") (cleaned up).  To fulfill the purposes of the fee-shifting statutes, the Court must examine whether the requested rates are in line with "the prevailing hourly rate in the local legal community for similar work by attorneys of comparable skill and experience." *Roberts v. City of Honolulu*, 938 F.3d 1020, 1025 (9th Cir. 2019).

"Congress made clear that it intended that the amount of fees awarded under § 1988 be governed by the same standards which prevail in other types of equally complex Federal litigation, such as antitrust cases." *Riverside v. Rivera*, 477 U.S. 561, 575 (1986) (cleaned up); *see Hensley*, 461 U.S. at 447 (noting that "judges awarding fees must make certain that attorneys are paid the full value that their efforts would receive on the open market in non-civil-rights cases") (Brennan, J., concurring in part

and dissenting in part). "In order to encourage able counsel to undertake [§ 1983] cases, as congress intended, it is necessary that counsel be awarded fees commensurate with those which they could obtain by taking other types of cases." *Camacho*, 523 F.3d at 981. Thus, the Ninth Circuit has used billing rates at large firms such as Skadden, Arps, Slate, Meagher & Flom LLP as comparators when setting rates for ACLU attorneys litigating similarly complex constitutional issues in this district. *See, e.g., Nadarajah*, 569 F.3d at 916-18.

In *Charlebois v. Angels Baseball LP*, 993 F. Supp. 2d 1109 (C.D. Cal. 2012), Judge Carter rejected the argument that rates at large, prestigious firms were invalid comparators. 993 F. Supp. 2d at 1119-20. "First, the Supreme Court and Ninth Circuit have expressly endorsed comparisons to '*lawyers* of reasonably comparable skill, experience, and reputation' and have never required prevailing party's counsel to *also* prove that their *firm* is the same size or has the same level of prestige as that of comparator attorneys." *Id.* at 1120 (citing *Blum*, 465 U.S. at 896 n.11). "Second, attorneys at large, prestigious law firms are valid comparators because they do, in fact, sometimes litigate civil rights cases." *Id.* at 1121. Indeed, Mr. Fattahi previously litigated civil rights cases while working at Quinn Emanuel.

In connection with Plaintiffs' January 2022 fee motion, this Court set hourly rates of $1100 for Mr. Galipo, $785 for Mr. Fattahi, $700 for Mr. Valenzuela, and $600 for Ms. Masongsong. The rates sought in this Court when Plaintiffs' attorneys had two years' less experience and performed dissimilar tasks are of limited value for purposes of determining their reasonable 2024 rates for these appellate proceedings. The Ninth Circuit has repeatedly held that "in determining the prevailing market rate a district court abuses its discretion to the extent it relies on cases decided years before the attorneys actually rendered their services." *Camacho*, 523 F.3d at 981; *Hiken*, 836 F.3d at 1045 (reversing because "the court simply re-invoked the 2015 rates and added a $30 enhancement, without discussion of why the 2015 rates are an appropriate anchor or why an increase in $30 is reasonable"); *Moreno*, 534 F.3d at 1115 ("If the

lodestar leads to an hourly rate that is higher than past practice, the court must award that rate . . . ."); *Roberts*, 938 F.3d at 1024-25 ("Examining prior fee awards to Holcomb and Beck in the district was not an acceptable substitute for considering the declarations submitted by Holcomb, and explaining why those declarations did or did not establish the prevailing hourly rate in the district.").

Courts appropriately recognize that rates, and inflation, increase over time. *Parker v. Vulcan Materials Co. Long Term Disability Plan*, No. EDCV 07–1512 ABC (OPx), 2012 WL 843623, at *7 (C.D. Cal. Feb. 16, 2012) (approving as reasonable an approximate 10 percent increase between 2011 rates and 2012 rates because "[i]t is common practice for attorneys to periodically increase their rates for various reasons, such as to account for expertise gained over time, or to keep up with the increasing cost of maintaining a practice"). According to Ms. Sobel, whose fee declarations are routinely cited by courts as evidence of reasonable market rates in civil rights cases, particularly in the Los Angeles legal market, billing rates in Los Angeles have increased annually at more than the cost-of-living rate to reflect both increased experience and increases in the base rates. Sobel Decl. ¶¶ 11, 24-25. Moreover, in the past two years, the rate of inflation has exceeded the historical pre-pandemic annual increase of 3.1 percent, and hourly rates for firms engaged in complex litigation in the Los Angeles legal market have increased by more than five percent annually. *Id.* ¶ 24. The 2022 and 2023 Real Rate Reports reflect rate increases for litigation partners in the Los Angeles market of 17.3% from 2021 to 2023, with increases of over 10% from just 2022 to 2023. *Id.* ¶¶ 30-32.

1.    <u>Hourly Rate for Dale K. Galipo</u>

With 34 years of experience, the majority of which was spent litigating civil rights cases, Mr. Galipo's 2024 hourly rate of $1400 is reasonable for comparably skilled and experienced attorneys in Los Angeles. Galipo Decl. ¶¶ 3-20; Sobel Decl. ¶ 58. The declaration of Ms. Sobel, who knows Mr. Galipo personally and is familiar with his skill, experience and reputation, provides support for Mr. Galipo's 2024 rate

of $1400.  Sobel Decl. ¶¶ 29-45.  Based on her discussions with other civil rights attorneys in California, Ms. Sobel believes that many highly skilled civil rights lawyers share her view that he is exceptionally experienced and skilled, and is one of the premier trial attorneys in the nation.  *Id.*

Ms. Sobel compared Mr. Galipo's requested rate to recent fee awards and billing rates, including the median and third quartiles $(Q_3)$[1] set forth in the Report, which demonstrate that it is in line with prevailing market rates.  Sobel Decl. ¶¶ 29-45 & Exs. B-S (assessing the reasonableness of 2024 rate of $1400 for Mr. Galipo in comparison to the third-quartile rate for Los Angeles partners with at least 21 years of experience, as well as: Alan Greenberg '88 at $1400 for 2022; Wayne Gross '88 at $1400 for 2022; Darren Robbins '93 at $1325 for 2022; Carney Shegerian '90 at $1300 for 2021 and $1350 for 2023; Eric Rowen '82 at $1380 for 2021; Scott Fogelman '92 at $1265 for 2020; Kirstin Linley '88 at $1440 for 2022; Austin Schwing '00 at $1310 for 2022; Theodore Boutrous '87 at $1525 for 2020; Scott Edelman '84 at $1395 for 2020; Anne Champion '05 at $1295 for 2020 and at $1430 for 2021; Donald Verrilli '83 at $1400 for 2020; Henry Weissmann '87 at $1400 for 2020; Michael Doyen '82 at $1320 for 2020; and Luis Li '91 at $1400 for 2020).  Moreover, Mr. Galipo was awarded a 2022 hourly rate of $1200 by Judge Carney in *Craig* and *Valenzuela*, and $1100 per hour by Judge Gutierrez in April 2020.  Galipo Decl. ¶¶ 17-19 & Exs. A-C.

Mr. Galipo graduated with a B.B.A. from the University of Michigan in 1981.  He attended law school at UCLA from 1981 to 1984.  Galipo Decl. ¶ 3.  Since 1991, he has managed his own law firm specializing in major personal injury and wrongful death cases and criminal defense.  His practice grew to specialize in serious police excessive force resulting in serious injury and death.  *Id.* ¶ 4.

---

[1] The third quartile $(Q_3)$ is the middle value between the median and the maximum value—in other words, 75% of rates are below it, and 25% of rates are above it.  Sobel Decl. ¶ 30.

In 2012, Mr. Galipo received the Defender of the Constitution Award from the Inland Empire Chamber of the Federal Bar Association. *Id.* ¶ 5. From 2017 to 2023, Mr. Galipo prevailed in twenty-eight (28) jury trials, nearly all of which were civil rights cases. *Id.* ¶ 12. In approximately the last twelve years, Mr. Galipo has had approximately fifteen published opinions in civil rights cases, and has argued numerous appellate cases before the Ninth Circuit. *Id.* ¶ 14. In 2019, Mr. Galipo was elected to the American College of Trial Lawyers. *Id.* ¶ 10. He was also selected to the Inner Circle of Advocates, which is limited to one hundred members nationwide, representing some of the top plaintiff's attorneys in the country. *Id.* ¶ 9. Further in 2019, Mr. Galipo was honored by UCLA to give a lecture to students and faculty for the Irving H. Green Memorial Lecture. Past recipients of the award included Johnnie Cochran, Jr. *Id.* ¶ 11. Mr. Galipo has also been invited to speak to the law students at UC Irvine and UCLA on several occasions. *Id.* In 2020, Mr. Galipo was recognized both as CAALA Trial Lawyer of the Year and CAOC Consumer Attorney of the Year. *Id.* ¶¶ 7-8.

Courts within this district have consistently recognized Mr. Galipo as one of the top civil rights attorneys in the area of police misconduct in Los Angeles. *See, e.g., Valenzuela v. City of Anaheim*, 2023 WL 2249178, at *3 (C.D. Cal. Feb. 23, 2023) (adopting prior finding in *Craig* that a 2022 rate of $1200 "was reasonable for Mr. Galipo's work over the past three years, pointing to Mr. Galipo's strong reputation with the legal community, his continued consistent record of success with over $85 million in recovery in civil rights cases since 2019, and multiple courts that awarded him $1,100 hourly rates as early as 2020."); *Craig v. County of Orange*, Case No. SACV 17-00491-CJC (KESx), Dkt. 280, at 5-6 (awarding Mr. Galipo an hourly rate of $1,200 because "[w]hen it comes to police excessive force cases, Mr. Galipo continues to be without question at the top of his field."); *Donastorg v. City of Ontario*, 2021 WL 6103545, at *8 (C.D. Cal. Sept. 23, 2021) ("The Court agrees with the courts that have recognized that, when it comes to police excessive force cases in

Los Angeles, Mr. Galipo is without question at the top of his field.") (cleaned up). Accordingly, Mr. Galipo's requested hourly rate of $1400 is reasonable for an attorney with his experience, skill, expertise, and reputation. Galipo Decl. ¶ 20; Sobel Decl. ¶ 58.

### 2.    Hourly Rate for John Fattahi

John Fattahi is a sole practitioner with over 17 years of trial and appellate experience, including over 15 years litigating police civil rights cases almost exclusively.  Fattahi Decl. ¶ 4.  The declaration of Ms. Sobel, who knows Mr. Fattahi personally and is familiar with his skill, experience and reputation, provides support for Mr. Fattahi's reasonable 2024 rate of $975.  Sobel Decl. ¶ 46.  Ms. Sobel first met Mr. Fattahi when he was preparing for his first appellate argument, shortly after completing his clerkship.  *Id.*  Based on her discussions with other civil rights attorneys in California, she believes that many highly skilled civil rights lawyers share her view that he is exceptionally experienced and skilled.  *Id.*

As demonstrated by the declarations of Mr. Fattahi and Ms. Sobel, Mr. Fattahi's hourly rate of $975 is reasonable for comparably skilled and experienced attorneys in Los Angeles.  Fattahi Decl. ¶ 4-5; Sobel Decl. ¶ 58.  Ms. Sobel compared Mr. Fattahi's requested rate to recent fee awards and billing rates, which demonstrate that it is in line with prevailing market rates.  Sobel Decl. ¶¶ 46-51 & Exs. B-S (comparing the 2024 rate of Mr. Fattahi '06 at $975 to the 2023 Report's rate data for Los Angeles litigation partners,[2] as well as rates for Randolph Gaw '02 at $1045 in 2022; Mark Poe '02 at $1045 in 2022; Victor Nguyen '08 at $900 for 2021 and at $1100 for 2023; Matthew Gershman '07 at $935 in 2021; Shannon Mader '04 at $915 in 2020; Anne

---

[2] As this Court's prior fee order noted, rates for partners provide a more appropriate measure for Mr. Fattahi's compensation than rates for associates.  Dkt. 165 at 24.  Based on the 2021 Report, this Court previously found that Mr. Fattahi's reasonable rate was between the median and third quartile rate for litigation partners in Los Angeles.  *Id.*  For the 2023 Report, those rates are $840 and $1159, which likewise supports Mr. Fattahi's 2024 rate of $975.  *See* Sobel Decl. Ex. B at 16.

Champion '05 at $1295 in 2020 and at $1430 in 2021; Jeffrey Wu '07 at $920 in 2020; Kimberly Chi '06 at $920 in 2020; Matthew McDonald '08 at $950 in 2020). Moreover, Mr. Fattahi was awarded a 2022 rate of $850 per hour by Judge Carney in *Valenzuela*, and $725 per hour by Judge Gutierrez for a fee motion filed in May 2020. Fattahi Decl. ¶ 4 & Exs. B-C; *Valenzuela*, 2023 WL 2249178.  As Judge Carney noted, Mr. Fattahi's 2022 rate of $850 "reflect[ed] Mr. Fattahi's substantial and increased experience over the last few years, his continued strong reputation within the field, and the skill required to succeed on appeal and the novelty and difficulty of the issues presented on appeal," and was consistent with prevailing rates as set forth in Ms. Sobel's declaration and exhibits in *Valenzuela*.  Fattahi Decl. Ex. B at 8; *Valenzuela*, 2023 WL 2249178.

Mr. Fattahi graduated from UCLA School of Law in 2006, where he was Senior Editor of the UCLA Law Review and spent one semester as a judicial extern to Judge Stephen Reinhardt of the U.S. Court of Appeals for the Ninth Circuit.  Fattahi Decl. ¶ 5.  After graduation, Mr. Fattahi served for one year as a law clerk to U.S. District Judge Virginia A. Phillips in the Central District of California.  *Id.*  From 2007-09, he was employed as a litigation associate at Quinn Emanuel Urquhart & Sullivan, LLP, in Los Angeles.  *Id.*  While at Quinn Emanuel, Mr. Fattahi litigated and eventually tried to plaintiff's verdict a prisoner lawsuit as a member of the Central District's pro bono civil rights panel.  *Id.*  From 2009-11, Mr. Fattahi practiced civil rights litigation at Mr. Galipo's office.  *Id.*  Mr. Fattahi opened his solo practice in 2011, but has continued to work closely with Mr. Galipo on several matters and serves as "of counsel" at his firm.  *Id.*

Mr. Fattahi has had primary responsibility for many civil rights appeals before the Ninth Circuit, resulting in published decisions that have clearly established several constitutional principles.  Fattahi Decl. ¶ 6.  Mr. Galipo and other attorneys have sought Mr. Fattahi's counsel and services to oppose post-trial motions and defend appeals in numerous cases such as this involving the largest civil rights verdicts.  *Id.*

¶¶ 6, 8. Mr. Fattahi is also frequently asked to give presentations to groups of law students, fellow attorneys, and judges. *Id.* ¶ 7. Mr. Galipo's declaration provides further support for Mr. Fattahi's reasonable 2024 rate of $975, explaining that on all his major jury verdicts he has Mr. Fattahi directly involved in opposing post-trial motions and defending appeals, and he trusts Mr. Fattahi with that work because of his outstanding skills and abilities. Galipo Decl. ¶ 21.

### 3. Hourly Rates for Eric Valenzuela and Renee Masongsong

The declarations of Mr. Valenzuela, Ms. Masongsong, and Ms. Sobel demonstrate that a 2024 hourly rate of $800 for both Mr. Valenzuela and Ms. Masongsong is well within the range of market rates for similarly experienced and skilled attorneys in Los Angeles. Valenzuela Decl. ¶ 7; Masongsong Decl. ¶ 5; Galipo Decl. ¶¶ 22-23; Sobel Decl. at ¶¶ 52-56 & Exs. B-S (concluding the 2024 rate of $800 for Mr. Valenzuela '10 and Ms. Masongsong '11 is reasonable when compared to the 2023 Report's rate data for Los Angeles litigation associates, as well as rates for Matthew Gershman '07 at $890 in 2019 and at $935 in 2021; Nicholas Fram '12 at $860 in 2020; Jennifer Broder '11 at $860 in 2020; Erin Cox '09 at $95 in 2020; Jeremy Lawrence '10 at $920 in 2020; fifth year attorneys Andre Brewster and Graham Cole at $820 in 2020; Angel Lau '12 at $760 in 2021; Katarzyna Ryzewska '13 at $815 in 2020; Meredith Simons '17 at $740 in 2020 and $845 in 2021 and $960 in 2022).

As the Court noted in its prior fee order setting a reasonable 2022 hourly rate of $700 for his services in this case, Mr. Valenzuela is a senior associate attorney at the Law Offices of Dale K. Galipo who has now practiced for over eleven years and litigates police excessive force cases almost exclusively. Dkt. 165 at 25. Ms. Masongsong also is a senior associate attorney, who has now practiced for twelve years and worked almost exclusively on civil rights litigation for the past eleven years. *Id.* Taking into account Mr. Valenzuela's and Ms. Masongsong's additional gained experience since 2022, the requested hourly rate of $800 is a reasonable rate for

attorneys with their experience, skill, and expertise.  Valenzuela Decl. ¶ 7; Masongsong Decl. ¶ 5; Galipo Decl. ¶¶ 22-23; Sobel Decl. ¶¶ 52-56, 58.

###### C.    The Time Billed Was Reasonably Expended

As set forth in the various declarations of counsel, and as is evident from the briefs and argument before the Ninth Circuit, the appellate proceedings in this case were complex and time-consuming.  Plaintiffs' attorneys' hours were reasonably expended because they could have been billed to a private client.  *See* Galipo Decl. ¶¶ 2, 25, 27; Fattahi Decl. ¶¶ 2-3; Valenzuela Decl. ¶¶ 3-4; Masongsong Decl. ¶ 2. Further, Plaintiffs' attorneys contemporaneously tracked their time, exercised billing judgment, and did not include time that was inefficient, redundant, or would not be charged to a private client.  *Id.*

The City litigated the appeal vigorously and creatively, attaching an appellate specialist and mustering its substantial resources to fight on multiple fronts.  It cited 61 cases and 23 statutes or rules in its Opening Brief, repeatedly requested that the Ninth Circuit certify legal questions to the California Supreme Court, and filed a letter with the Judicial Council of California echoing its opening brief's objections to CACI 3720 hoping to bolster its appellate position.  Opening Brief, Ninth Cir. No. 22-55571, Dkt. 16, at 63 n.3; Reply Brief, Ninth Cir. No. 22-55571, Dkt. 45, at 18 n.2; Fattahi Decl. Ex. D (City Letter re CACI 3720).  The City "cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response."  *Serrano v. Unruh*, 32 Cal. 3d 621, 633 (1982).

The City presented three independent questions in its appeal, all of which included multiple factual and legal assertions that required a comprehensive analysis of the trial record and applicable law.  Opening Brief, Ninth Cir. No. 22-55571, Dkt. 16.  First, the City contended that it was entitled to a new trial because Sanchez could not make a blanket invocation of the Fifth Amendment privilege against self-incrimination, and thus the Court should not have excluded him from testifying.  *Id.* at 29, 31-44.  Next, the City sought a new trial for the additional reason that the Court's

jury instruction on course and scope of employment was overbroad and misstated the "nexus" test under California law.  *Id.* at 30, 45-62.  Finally, the City sought judgment as a matter of law on the basis that there was insufficient evidence at trial that Sanchez acted in the course and scope of his City employment when he shot the Frenches.  *Id.* at 30, 62-79.

Plaintiffs' counsel staffed the appeal in an extremely efficient manner, with no additional attorneys and no duplication of effort.  Mr. Fattahi had primary responsibility for preparing the Answering Brief and presenting the factual and legal issues in persuasive written form—conducting legal research, outlining, drafting, revising, and preparing for filing.  Answering Brief, Ninth Cir. No. 22-55571, Dkt. 28; Fattahi Decl. ¶ 3.  Mr. Fattahi also prepared and opposed various ancillary motions and stipulations before the Ninth Circuit and this Court, and prepared this fee motion.  Fattahi Decl. ¶ 3; *Clark v. City of Los Angeles*, 803 F.2d 987, 992 (9th Cir. 1986) ("We, like every other court that has considered the question, have held that the time spent in establishing entitlement to an amount of fees awardable under section 1988 is compensable."); *Ketchum*, 24 Cal. 4th at 1133 (same under California law).  Mr. Fattahi identified beneficial legal precedent and distinguished authorities on which the City relied, including on the particularly complex and challenging issues of whether a witness may make a blanket Fifth Amendment invocation at a civil jury trial, and the proper legal standard for course and scope of employment under California law.  Answering Brief, Ninth Cir. No. 22-55571, Dkt. 28; Fattahi Decl. ¶ 3 & Ex. A.  Likewise, Mr. Fattahi conducted a thorough review of the trial record, including video recordings not submitted by the City, to present the trial evidence in the light most favorable to Plaintiffs under Rule 50(b) and demonstrate that none of the alleged errors were prejudicial, and scoured the record to show that the City's first two arguments on appeal were waived, forfeited, or otherwise undermined by its litigation conduct before this Court.  *See* Answering Brief, Ninth Cir. No. 22-55571, Dkt. 28.  At various stages of the Answering Brief's preparation, Mr. Galipo, Mr. Valenzuela,

and Ms. Masongsong provided valuable assistance regarding the trial record and feedback on the brief.  Fattahi Decl. ¶ 3.  In response to Plaintiffs' Answering Brief, the City found it was necessary to file a Reply Brief containing 9,983 words—well in excess of the standard limit of 7,000 words.  Reply Brief, Ninth Cir. No. 22-55571, Dkt. 45.

Mr. Galipo had primary responsibility for preparing for and delivering oral argument before the Ninth Circuit panel, which included reviewing the record and anticipating likely questions and potential responses.  Galipo Decl. ¶ 20; Fattahi Decl. ¶ 3.  Mr. Fattahi, Mr. Valenzuela, and Ms. Masongsong provided valuable assistance regarding oral argument preparation.  Galipo Decl. ¶ 21; Fattahi Decl. ¶ 3.  Although at oral argument the panel focused on the Fifth Amendment question, it was necessary to prepare to effectively and efficiently present argument on multiple issues, each requiring the distillation of complex factual and legal analyses.  Galipo Decl. ¶ 20.  The efforts by Plaintiffs' counsel on appeal resulted in a complete affirmance, and the rejection of all of the City's contentions, in a unanimous memorandum disposition that effectively foreclosed any possibility of further appellate review.

Each of the tasks performed by Plaintiffs' attorneys was reasonably performed in furtherance of the outstanding result on appeal.  Galipo Decl. ¶¶ 2, 25, 27; Fattahi Decl. ¶¶ 2-3; Valenzuela Decl. ¶¶ 3-4; Masongsong Decl. ¶ 2; *McCown v. City of Fontana*, 565 F.3d 1097, 1105 (9th Cir. 2009) ("The district court may also consider the public benefit of deterring unconstitutional conduct by law enforcement officials in determining the appropriate fee.").  Further, all or nearly all of these tasks were performed as a direct response to ultimately unsuccessful positions taken by the City—often for the first time on appeal.  Fattahi Decl. ¶ 3; *see Robinson v. City of Edmond*, 160 F.3d 1275, 1284 (10th Cir. 1998) ("[O]ne of the factors useful in evaluating the reasonableness of the number of attorney hours in a fee request is the responses necessitated by the maneuvering of the other side.").  By and large, the court should defer to the winning lawyer's professional judgment as to how much

time he was required to spend on the case; after all, [they] won, and might not have, had [they] been more of a slacker." *Moreno*, 534 F.3d at 1112. Accordingly, the hours could have been billed to a private client, and were reasonably expended in light of Plaintiffs' absolute success on appeal. *Id.* at 1111; *Hensley*, 461 U.S. at 435. After completing their Reply memorandum, Plaintiffs will file supplemental declarations setting forth any additional time reasonably expended after the filing of this Motion.

**D.     The Court Should Apply at Least Its Previously Determined 1.5x Multiplier**

Plaintiffs prevailed on their Bane Act claim, which supports the granting of a multiplier under state law. As this Court previously found in connection with Plaintiffs' January 2022 fee motion, the application of a 1.5 lodestar enhancement is justified by the risk counsel took that their extraordinary efforts and expenditures would result in no compensation. Dkt. 165 at 29; *Ketchum*, 24 Cal. 4th at 1132. To determine whether a state-law multiplier should be applied, courts consider: "(1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, [and] (4) the contingent nature of the fee award." *Ketchum*, 24 Cal. 4th at 1132.

Here, all four factors favor the application of at least the 1.5x fee multiplier previously set by the Court in its prior fee order. The appeal presented novel and difficult legal issues, as reflected by the City's repeated requests for certification to the California Supreme Court and petition for rehearing *en banc*. As a further example, the City emphasized one California Court of Appeal's statement that there were at least four different tests for course and scope of employment, while contending that none of them resembled the Court's instruction. Opening Brief, Ninth Cir. No. 22-55571, Dkt. 16, at 49-57. Achieving a unanimous affirmance and winning on all three issues raised by the City—two of which it had not presented at trial—involved a high degree of skill, which is reflected in Plaintiffs' Answering Brief and oral argument

presentation.  Finally, and perhaps most importantly, Plaintiffs' counsel took this representation on a contingent basis with a high degree of risk and no interim payments, and the representation precluded other employment opportunities for their firms.  Galipo Decl. ¶ 24; Fattahi Decl. ¶ 8.

### E. Computation Table

A reasonable total fee, determined by multiplying the number of hours reasonably expended by the reasonable hourly rates to determine a lodestar fee, then applying a 1.5x multiplier, is as follows:

| Attorney | Rate | Hours | Total |
|---|---|---|---|
| Dale K. Galipo | $ 1,400 | 71.0 | $ 99,400 |
| John Fattahi | 975 | 210.4 | 205,140 |
| Eric Valenzuela | 800 | 44.0 | 35,200 |
| Renee Masongsong | 800 | 70.1 | 56,080 |
| SUBTOTAL | | 395.5 | $ 395,820 |
| 1.5 Multiplier | | | 197,910 |
| TOTAL | | | $ 593,730 |

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court grant the Motion and award attorney's fees in the amount of $593,730, plus any future time reasonably expended in connection with Plaintiffs' Reply and any motion hearing.

DATED:  January 18, 2024          LAW OFFICE OF JOHN FATTAHI

By _____ /s/ John Fattahi
           John Fattahi
           jfattahi@gmail.com

*Attorney for Plaintiffs*

-17-                          Case No. 5:20-cv-00416-JGB-SP

## <u>WORD COUNT CERTIFICATION</u>

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 5,706 words, which complies with the word limit of L.R. 11-6.1.

DATED:  January 18, 2024          LAW OFFICE OF JOHN FATTAHI

By_____/s/ John Fattahi_____
      John Fattahi
      jfattahi@gmail.com

*Attorney for Plaintiffs*