# DECLARATION OF JOHN FATTAHI

I, JOHN FATTAHI, declare as follows:

1.     I am an attorney duly licensed to practice law in the State of California and in the United States District Court for the Central District of California.  I make this Declaration in support of Plaintiffs' Motion for Attorney's Fees on Appeal.  I have personal knowledge of the facts contained herein and could testify competently thereto if called.

2.     **Hours Reasonably Expended.**  I have reasonably expended 210.4 hours of billable time on this matter since the Reply in support of Plaintiffs' first fee motion.  Attached hereto as **Exhibit A** is a table of my contemporaneous line-item billing entries from February 18, 2022, through the present date.  I will submit a supplemental declaration for any further time expended on this matter after the filing of Plaintiffs' motion.

3.     I became involved in this matter in February 2020, at the request of Plaintiffs' lead counsel Dale K. Galipo.  I was asked to develop and oversee a successful legal strategy regarding the pivotal issue of course and scope of employment.  After the jury's verdict, I was asked to oversee Plaintiffs' legal strategy regarding post-trial motions and anticipated appellate proceedings.  I had primary responsibility for formulating strategy for, and drafting, Plaintiffs' answering brief and formulating any potential response to Defendants' petition for rehearing *en banc* before the Ninth Circuit.  I also provided substantial assistance to Mr. Galipo in preparing for oral argument before the panel, particularly on the legal issues and case law I anticipated that the panel would be interested in or that Defendants argued in their reply brief.  Throughout the appellate proceedings, I occasionally participated in conferences between co-counsel, which were invaluable and extremely productive.  I also was responsible for day-to-day management of the case on appeal, including preparing and opposing motions and stipulations.  Each of these tasks was critical to Plaintiffs' complete success on appeal, and each task was

a direct response to a position taken by Defendants—often for the first time on appeal. I contemporaneously tracked my time in tenth-of-an-hour increments, and exercised billing judgment by excluding time spent on unproductive or administrative tasks. All of my time was reasonably incurred and could have been billed to a private client. I have already excluded at least twenty hours of time spent on this matter, including approximately thirty percent of my time spent preparing the instant declaration and motion. I expect to incur additional time in connection with drafting Plaintiffs' reply in support of this Motion, and any appearance at the hearing, if necessary.

4. **Reasonable Hourly Rate.** A reasonable year 2024 fee for my professional services in this case is $975 per billable hour. As recently recognized by Judge Cormac J. Carney of this Court in *Valenzuela v. City of Anaheim*, 2023 WL 2249178 (C.D. Cal. Feb. 23, 2023), a reasonable year 2022 fee for my professional services in civil rights appellate litigation of similar complexity was $850 per billable hour. The *Valenzuela* fee order, Doc. No. 462, is attached hereto as **Exhibit B**. For another fee motion filed in May 2020 in *L.D. v. City of Los Angeles*, No. 2:16-cv-04626-PSG-SK (C.D. Cal.), Judge Gutierrez found that my reasonable hourly rate, which the City of Los Angeles did not oppose, was $725 per hour. The *L.D.* fee order, Doc. No. 217, is attached hereto as **Exhibit C**.

5. I have been practicing law since 2006, and have almost exclusively practiced federal civil rights litigation since 2008. I graduated from UCLA School of Law in 2006, where I was Senior Editor of the UCLA Law Review and spent one semester as a judicial extern to Judge Stephen Reinhardt of the U.S. Court of Appeals for the Ninth Circuit. After graduation, I took and passed the California Bar Exam, then served for one year as a law clerk to U.S. District Judge Virginia A. Phillips in the Central District of California, where I gained invaluable insight into federal litigation, including civil rights litigation. From October 2007 until February 2009, I was employed as a partnership-track litigation associate by one of the most

prestigious and selective law firms in the world, Quinn Emanuel Urquhart & Sullivan, LLP (formerly Quinn Emanuel Urquhart Oliver & Hedges, LLP) in Los Angeles, California. While at Quinn Emanuel, I litigated and tried to a plaintiff's verdict a prisoner lawsuit as a member of the Central District of California's pro bono civil rights panel. In February 2009, I joined the Law Offices of Dale K. Galipo, where I practiced plaintiff's civil rights litigation. In July 2011, I opened a solo practice that exclusively handles civil rights litigation. I have continued to work closely with Mr. Galipo on several matters on which we have achieved great success. Further, since fall 2022, I have taken on a new role as "of counsel" to Mr. Galipo's firm, which includes providing strategic direction, overseeing affirmative appeals, and training new associates.

6.     With regard to civil rights litigation in federal court, I have had primary responsibility for several civil rights appeals before the Ninth Circuit and U.S. Supreme Court, resulting in published decisions that have clearly established several constitutional principles. At the district court level, I have had primary responsibility for countless pleadings and motions, percipient, Rule 30(b)(6), and expert depositions, motions for summary judgment, pretrial documents, and post-trial motions. I have also tried more than ten federal civil rights jury trials, usually as second chair but occasionally as lead trial counsel, obtaining a favorable result approximately 80% of the time. In addition to my work on this case, I have obtained excellent results for my clients, including but not limited to the following since 2015:

- 2023: Obtained complete, unanimous reversal of summary judgment dismissing all claims arising from the use of deadly force, reviving § 1983 and state law claims in the district court. (*Ibarra v. Lee*, 10th Cir.)
- 2023: Opposed certiorari before the U.S. Supreme Court, after obtaining complete affirmance before the Ninth Circuit of $13.2 million jury verdict obtained by Mr. Galipo in fatal police chokehold case, including a published

opinion, 6 F.4th 1098 (9th Cir. 2021), which established the entitlement to "loss of life" damages in § 1983 death cases, and an unpublished memorandum affirming the denial of post-trial motions including qualified immunity. (*Valenzuela v. City of Anaheim*, C.D. Cal., 9th Cir., U.S.)

- 2022: Succeeded in obtaining Ninth Circuit affirmance on alternate grounds, which nullified district court's finding that restraint-related death was not the result of excessive force, thus permitting state tort and civil rights claims to be revived and litigated in state court. (*A.B. (Birtcher) v. County of San Diego*, 9th Cir.)

- 2020: Successfully opposed petition for a writ of certiorari to the U.S. Supreme Court challenging Ninth Circuit's denial of qualified immunity in fatal police restraint case. (*Deasey v. Slater*, U.S.)

- 2020: Successfully defended $4.5 million jury verdict obtained by Mr. Galipo in fatal police shooting case against post-trial motions for new trial and judgment as a matter of law, resulting in favorable settlement prior to appeal. (*L.D. (Frias) v. City of Los Angeles*, C.D. Cal.)

- 2019: Successfully defended $15.5 million jury verdict obtained by Mr. Galipo in fatal police shooting case against post-trial motions for new trial, remittitur, and judgment as a matter of law, resulting in settlement exceeding value of judgment prior to appeal. (*Archibald (Pickett) v. County of San Bernardino*, C.D. Cal.)

- 2018: Obtained $2.5 million jury verdict in McKinleyville, California, successfully opposed multiple post-trial motions, and negotiated $3.45 million settlement plus substantial policy and training reforms, in a federal civil rights action arising from jail officials' indifference to a schizophrenic arrestee's methamphetamine overdose.  There was no offer of settlement prior to disposition of the post-trial motions.  Before trial, I successfully advocated for the first application of an objective standard to a denial of a pretrial

detainee's medical care under the Fourteenth Amendment Due Process Clause, which the district judge, on behalf of the Ninth Circuit, adopted shortly thereafter in a published opinion in *Gordon v. County of Orange ("Gordon I")*, 888 F.3d 1118 (9th Cir. 2018). (*Borges v. County of Humboldt*, N.D. Cal.)

- 2018: Obtained complete affirmance of both the verdict and attorney fee award before the Ninth Circuit, after obtaining a $1.05 million jury verdict for Fourteenth Amendment familial interference claims arising from the fatal police shooting of the plaintiffs' son. (*Woods v. Fagan*, C.D. Cal., 9th Cir.)
- 2017: Obtained $1.67 million settlement arising from the fatal police shooting of an unarmed homeless man. (*J.M. v. City of Santa Ana*, C.D. Cal.)
- 2016: Obtained $1.9 million settlement arising from the fatal police shooting of an unarmed man wanted for an armed robbery during a lengthy foot pursuit. (*N.W. v. City of Long Beach*, C.D. Cal.)
- 2016: Obtained $3.7 million settlement arising from the fatal police shooting of an unarmed man following a pursuit of a stolen vehicle. (*Hallstrom v. City of Santa Ana*, C.D. Cal.)
- 2016: Obtained complete affirmance of $7.9 million judgment on jury verdict obtained by Mr. Galipo in fatal police shooting case on appeal to the Ninth Circuit. (*Zerby v. City of Long Beach*, 9th Cir.)
- 2015: Obtained complete affirmance of $3.7 million judgment on jury verdict obtained by Mr. Galipo in fatal police beating case on appeal to the Ninth Circuit. (*P.C. v. City of Los Angeles*, 9th Cir.)
- 2015: Obtained complete affirmance of $6.6 million judgment on jury verdict obtained by Mr. Galipo in quadriplegic police shooting case in post-trial motions, on appeal, and in opposition to certiorari to the U.S. Supreme Court. (*Contreras v. City of Los Angeles*, C.D. Cal., 9th Cir., U.S.)

7.      I was selected to the Super Lawyers Rising Stars Southern California list each year between 2015 and 2019, reflecting my reputation among my peers. Each year, no more than 2.5 percent of the lawyers in the state are selected to receive this honor.  I am also frequently asked to give presentations on civil rights litigation to law students, fellow attorneys, and judges, including at national conferences and symposia.

8.      In addition to my firm's own case load, I am frequently asked to associate with co-counsel on pending or anticipated federal civil rights matters.  In particular, Mr. Galipo and other attorneys have sought my counsel and services to oppose post-trial motions and defend appeals in numerous cases such as this involving the largest civil rights verdicts.  These high stakes opportunities, which would certainly include the case at bar, typically present themselves on short notice, demand substantial attention precluding other opportunities, attract exceptionally zealous and skilled advocacy from adverse parties, carry a high degree of risk, and come with no guarantee of any compensation.  Substantial plaintiff's verdicts are not infrequently negated by a successful motion for judgment as a matter of law or new trial.  Even if a plaintiff's verdict manages to survive post-trial motions, about half (48 percent) of verdicts of over $1 million in large counties were reversed or modified on appeal from 2001 to 2005, as opposed to 35 percent of those under $100,000.  *See* U.S. Department of Justice Bureau of Justice Statistics, Special Report: Appeals from General Civil Trials in 46 Large Counties, 2001–2005, at 6, *available at* https://www.bjs.gov/content/pub/pdf/agctlc05.pdf (June 2006).  I believe that the reversal rate for large civil rights verdicts is likely higher, particularly in light of the Supreme Court's recent "beyond debate" formulation of the "clearly established" prong of qualified immunity.  Typically, as in this case, my only compensation is the potential statutory fee awarded for my work by the Court and paid if and when a defendant has exhausted all appellate options and the judgment is enforceable.  My representation of Plaintiffs in this case involves

significant risk and extremely high stakes, and was undertaken in early 2020, a difficult and unprecedented time.  This matter also involved the unusual and substantial risk of being unable to obtain an enforceable judgment, because the officer was off duty and in a different county, and the City of Los Angeles has often successfully avoided indemnifying officers for using excessive force, even when they were in uniform and on duty, as in the recent case of *Garza v. City of Los Angeles*.  Nearly all of the clients I have represented in civil rights litigation have been indigent, many have been minors, and all have been unable to afford my services on a paid basis and therefore I routinely accept representations on a contingency basis and advance litigation costs.  If statutory attorneys' fees in line with prevailing market rates for similarly complex work were not available in cases such as this, I would not be able to represent clients such as Plaintiffs in pursuit of remedies for violations of fundamental constitutional rights.  Based on my experience and qualifications to practice federal civil rights litigation, my reputation, and the quality of my work product as demonstrated by the results obtained in this case and others, a reasonable 2024 rate for my professional services in this case is $975 per billable hour.

9.     A true and correct copy of the City's letter to the Judicial Council of California regarding CACI 3720 is attached hereto as **Exhibit D.**

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct, and that this was executed on January 18, 2024, at Torrance, California.

*/s/ John Fattahi*
John Fattahi